**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INVENTIO AG, )<br><br>Plaintiff, )<br><br>v. )<br><br>THYSSENKRUPP ELEVATOR AMERICAS )<br>CORPORATION; )<br>THYSSENKRUPP ELEVATOR )<br>CORPORATION, and; THYSSENKRUPP )<br>ELEVATOR MANUFACTURING )<br>INCORPORATED, )<br><br>Defendants. )<br>_____ ) | C.A.  No. 08-874-ER<br><br>**JURY TRIAL DEMANDED** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
ANSWERS TO INTERROGATORY NO. 7 AND DOCUMENT REQUESTS NOS. 2, 50
AND 51**

July 2, 2009

**WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC**
James M. Lennon (#4570)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel: (302) 252-4320
kbaird@wcsr.com

**FROST BROWN TODD LLC**
David E. Schmit (admitted pro hac vice)
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
dschmit@fbtlaw.com
Tel:    (513) 651 6985
*Attorneys for Defendants*

## TABLE OF CONTENTS

I.   STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ........................ 1

II.  SUMMARY OF THE ARGUMENT ............................................................. 1

III. ARGUMENT ........................................................................................ 1

   A.   INTERROGATORY NO. 7. ................................................................ 2

   B.   DEFENDANTS' DOCUMENT REQUESTS NOS. 50 AND 51 .................................. 7

   C.   DEFENDANTS' DOCUMENT REQUEST NO. 2 ...................................... 13

   D.   DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES AND EXPENSES
   INCURRED IN BRINGING THE PRESENT MOTION ................................... 15

IV.  CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*General Electric Co. v. DR Systems, Inc.,* 2007 U.S. Dist. LEXIS 38382 (E.D.N.Y. 2007) ......... 5

*In re ML-LEE Acquisition Fund II,* 51 F.R.D. 37 (D. Del. 1993) .................................................. 8

*Innovention Toys, LLC v. MGA Entertainment, Inc.,* 2009 U.S. Dist. LEXIS 12691 (E.D. La. 2009) ........................................................................................................................................... 5

*Liposome Co. v. Vestar, Inc.,* 1994 WL 738952 (D. Del. 1994) ................................................. 15

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996) ............................................................................. 3

*Merck & Co., Inc. v. Mylan Pharm., Inc.,* 19 F. Supp. 2d 334 (E.D. Pa. 1998) .......................... 15

*Michilin Prosperity Company, Ltd. v. Fellowes Manufacturing Company,* 2006 U.S. Dist. LEXIS 32064 (D.D.C. 2006) .................................................................................................... 6

*Omega Patents LLC v. Leer Corporation,* 2008 U.S. Dist. LEXIS 21274 (M.D. Fla. 2008) ........ 5

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978) ........................................................... 9

*Pacitti v. Macy's,* 193 F.3d 766 (3rd Cir. 1999) ......................................................................... 8

*Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) ............... 16

*Rates Technology, Inc. v. Mediatrix Telcom, Inc.,* 2007 U.S. Dist. LEXIS 65637 (E.D.N.Y. 2007) ......................................................................................................................................... 4, 5

*S.S. White Burs, Inc. v. Neo-Flo, Inc.,* 2003 U.S. Dist. LEXIS 7718 (E.D. Pa. 2003) ............ 3, 15

*Scovill Manufacturing Co. v. Sunbeam Corp.,* 61 F.R.D. 598 (D. Del. 1973) .............................. 8

*Suncast Technologies, LLC v. Patrician Products, Inc.,* 2008 U.S. Dist. LEXIS 5072 (S.D. Fla. 2008) ........................................................................................................................................... 5

*Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n,* 109 F.3d 726 (Fed. Cir. 1997) ....................... 15

*Whitserve LLC v. Computer Patent Annuities North America, LLC,* 2006 U.S. Dist. LEXIS 27048 (D. Conn. 2006) ...................................................................................................... passim

## Statutes

Fed. R. Civ. P. 30(b)(6) .............................................................................................................. 10

Fed. R. Civ. P. 33(b)(3) ................................................................................................................ 2

Fed. R. Civ. P. 37(a)(3)(B) ........................................................................................................... 1

Fed. R. Civ. P. 37(a)(5) .......................................................................................................... 1, 15

## I.   STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

This is an action for infringement of two U.S. Patents. The case is still in its initial stages. No trial date has been set. *Markman* proceedings are scheduled for fall 2009.

## II.   SUMMARY OF THE ARGUMENT

1. Plaintiff has not fully responded to discovery propounded by Defendants, specifically Defendants' Interrogatory No. 7, and Document Request Nos. 2, 50 and 51, despite good faith attempts by Defendants' counsel to obtain such responses.

2. Defendants are entitled to complete responses to this discovery, and seek an order pursuant to Fed. R. Civ. P. 37(a)(3)(B) compelling Plaintiff to fully respond.

3. Since Plaintiff's refusal to comply with its discovery obligations was not substantially justified, Defendants are entitled to an award of their fees and expenses incurred, pursuant to Fed. R. Civ. P. 37(a)(5) and this Court's Pretrial Procedures, in being forced to bring this Motion.

## III.   ARGUMENT[1]

Defendants respectfully move this Court for an order pursuant to Fed. R. Civ. P. 37(a)(3)(B) compelling Plaintiff to respond to Interrogatory No. 7 and Document Requests Nos. 2, 50 and 51.   The grounds for this Motion are set forth below.   As documented hereafter, Defendants' counsel certifies that a reasonable effort has been made to reach agreement on the issues raised herein with opposing counsel, but the parties have been unable to resolve these disputes.

---

[1] Defendants have included the statement of facts germane to this motion within the argument section to make the presentation easier to follow.

## A.      INTERROGATORY NO. 7.

Defendants' Interrogatory No. 7 was served on Plaintiff on March 31, 2009, reading as

follows:

> For each element of any claim that Plaintiff contends is infringed
> by Defendants, provide a detailed construction of each such claim
> term, including the evidence upon which Plaintiff relies to support
> such contention. Appx. 2.[2]

Plaintiff responded:

> Inventio incorporates its General Objections as if fully stated herein.
> Inventio further specifically objects to this interrogatory on the ground that
> it is premature. The Scheduling order entered in this case provides the
> parties until September 21, 2009 to file their Markman briefs.  If Inventio
> believes that any claim terms need to be defined outside of their ordinary
> meaning, Inventio will supplement its response to this interrogatory in a
> timely fashion.  Appx. 2.[3]

Subsequently, Defendants attempted to obtain a responsive answer to this interrogatory.  Appx.

7-8.  Initially, Plaintiff responded:

> We are in the process of reviewing the claims and identifying "relevant"
> claim terms that require the detailed construction sought in Defendants'
> Interrogatory No. 7.  I suggest, however, that defendants provide a list of
> claim terms which they believe require a detailed construction in order to
> maximize the efficiency of this exercise and prevent additional rounds of
> supplemental responses to this interrogatory.  Appx. 11-12.

Defendants then responded:  "[i]n response to your request, the claim terms which we

believe require a detailed construction in order to maximize the efficiency of the exchange of

claim construction information and prevent additional rounds of supplemental responses to our

---

[2] "Appx. –" refers to the cited pages of the Appendix filed with this motion.
[3] The interrogatory answer was not made under oath as required by Fed. R. Civ. P. 33(b)(3).

Interrogatory No. 7 are contained in Defendants' Responses to Plaintiff's Interrogatory No. 1." Appx. 15-16.[4]

After additional unsuccessful attempts by Defendants to persuade Plaintiff to provide a responsive answer to Interrogatory 7, on June 15, 2009 Plaintiff continued its refusal to answer the interrogatory, stating: "[w]e will provide claim constructions in due course as required by the Scheduling Order in this case." Appx. 81.

Accordingly, Plaintiff has refused to provide a response to Interrogatory 7, taking the position that it will only provide its claim construction in connection with the Markman proceedings this fall.[5]  For the reasons discussed below, Plaintiff's refusal to answer Interrogatory 7 is improper, and Plaintiff should be compelled to respond to this interrogatory.

Patent infringement litigation is a two-step process.  During the first phase, the court determines how the patent claims are to be interpreted.  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

Thus, "because of the central role claim interpretation plays in patent litigation, parties will often seek discovery to uncover how their opposition is interpreting the patent claims.  Such an inquiry is clearly relevant."  *Whitserve LLC v. Computer Patent Annuities North America, LLC*, 2006 U.S. Dist. LEXIS 27048, *6-7 (D. Conn. 2006).

In *S.S. White Burs, Inc. v. Neo-Flo, Inc.,* 2003 U.S. Dist. LEXIS 7718, *7-8 (E.D. Pa. 2003), the plaintiff, like Plaintiff in the present case, argued that it should not have to reveal its

---

[4] In response to Plaintiff's interrogatory seeking Defendants' construction of the claim terms at issue, Defendants had earlier provided a comprehensive explanation of its claim construction position, with supporting evidence.  *See, e.g.,* Appx. 25-59.
[5] The Scheduling Order in this case calls for Markman briefs to be filed on September 21, and a hearing to be held on October 21.

claim construction position until after discovery had ended and it submitted its Markman brief. The court rejected that argument, stating "Markman hearings are scheduled at the end of discovery so that the parties have enough time to exchange the information which will make the hearing meaningful." *Id.*

This approach makes complete sense. "If at some point the parties will be required to present their interpretation of the claims in a Markman hearing, the court sees no reason why [plaintiff] should not provide its claim construction to [defendant] now.  It is [plaintiff] and not [defendant] who is the plaintiff in this action and thus asserting that the patent claims are being infringed.  Basic fairness suggests that [plaintiff] provide meaning to the words [defendant's] product has allegedly infringed." *Whitserve, LLC* at *9.

Exchange of the parties' claim construction positions during discovery will reveal those claim term meanings that are not in dispute and which the Court need not spend time construing. Plaintiff's approach burdens this Court with unnecessary issues, which could be eliminated during discovery. As the court noted in *Whitserve,* "[t]he court finds that the best way to determine which claims are in dispute is to have the party asserting infringement provide their interpretations to the alleged infringers so that the defendant can determine which terms they agree on and which they do not. *Whitserve, LLC* at *10. This is standard practice in patent cases. *See Rates Technology, Inc. v. Mediatrix Telcom, Inc.,* 2007 U.S. Dist. LEXIS 65637, *12 (E.D.N.Y. 2007) ("It is routine practice in patent infringement actions to require a plaintiff to provide defendant with its claim construction.")

In both *White Burs* and *Whitserve*, the opposing party objected to answering an interrogatory seeking that party's claim interpretation on the same grounds asserted by Plaintiff in the present case.  In each case, the court required the party to fully respond to the

–4–

interrogatory. Other courts have found similarly. *See, e.g., Suncast Technologies, LLC v. Patrician Products, Inc.,* 2008 U.S. Dist. LEXIS 5072, *36 (S.D. Fla. 2008) (interrogatories seeking plaintiff's claim construction permissible and appropriate: "[i]t is not surprising that many courts have allowed claim construction interrogatories."); *Rates Technology, Inc.* at *14 ("I find the best way to determine which claims are in dispute here is to have the party asserting infringement provide their interpretations to the alleged infringer so that the defendant can determine which terms they agree on and which they do not."); *General Electric Co. v. DR Systems, Inc.,* 2007 U.S. Dist. LEXIS 38382 (E.D.N.Y. 2007) (compelling answer to claim construction interrogatory); *Omega Patents LLC v. Leer Corporation,* 2008 U.S. Dist. LEXIS 21274 (M.D. Fla. 2008)(compelling answers to claim construction interrogatories.)

In addition, Plaintiff cannot have it both ways. Plaintiff submitted its interrogatory to Defendants requesting Defendants' interpretation of relevant claim terms. Defendants completely responded to that interrogatory with their claim meanings, and supporting evidence. Appx 25-59. "As the party asserting infringement, the plaintiff cannot fairly demand that the defendants construe the meanings of the disputed claim terms when the plaintiff itself has failed to do so." *Innovention Toys, LLC v. MGA Entertainment, Inc.,* 2009 U.S. Dist. LEXIS 12691, *14 (E.D. La. 2009).

In addition, there is nothing in this Court's scheduling order to suggest that Plaintiff can delay providing Defendants with its claim interpretation until the Markman proceedings. In fact, this Court set the Markman briefing schedule <u>after</u> the close of discovery, indicating that discovery is not controlled by the Markman briefing schedule. There is nothing in this Court's scheduling order to suggest that the Court intended for the parties' claim construction to be reserved exclusively for their opening briefs in preparation for the Markman hearing. In *Michilin*

*Prosperity Company, Ltd. v. Fellowes Manufacturing Company,* 2006 U.S. Dist. LEXIS 32064, *4 (D.D.C. 2006) the court, in ordering a response to an interrogatory seeking the opposing party's claim construction, rejected the same type of approach asserted by Plaintiff Inventio in the present case:

> I am not persuaded by Michilin's argument that the articulation of its proposed claim construction was intended by Judge Roberts to be reserved for the *Markman* hearing opening briefs. I see nothing on the face of Judge Roberts' *Supplemental Scheduling Order* to suggest that Judge Roberts intended for the parties' claim construction to be reserved exclusively for their opening briefs in preparation of the *Markman* hearing. Michilin's claim construction is undeniably relevant and Fellowes' interrogatory complies with Rule 33.

Thus Plaintiff cannot demand that Defendants provide relevant claim constructions (which Defendants did in great detail) while hiding behind the court's *Markman* briefing schedule to refuse Defendants the same information.

Plaintiff initially attempted to take the position that its claim terms had their "ordinary meaning." Appx. 3. This description is meaningless, since Defendants cannot know what "ordinary meaning" Plaintiff is applying to any particular claim term. As the court in W*hitserve* noted:

> Finally, WhitServe has made clear that if compelled to provide an answer to interrogatory 16 that its answer would simply state that the terms are to be given their ordinary meanings. Such a declaration does not fully answer the interrogatory as required by Fed. R. Civ. P. 33(b)(1). Interrogatory 16 properly asks WhitServe to provide support for its asserted definitions. Thus, if WhitServe is claiming that the terms are to be construed using their ordinary meaning then they should cite to a general or technical dictionary or any other source on which they are comfortable in relying for the "ordinary" meaning.

2006 U.S. LEXIS 27048 at *10.

Finally, in order to legitimately file the present action and meet the requirements of Rule 11, Plaintiff must have had meanings for each of the patent claim terms involved, otherwise it could not have had a basis for making its infringement charge.[6]

In the present case, Plaintiff, as the party resisting discovery, bears the burden of showing why it should not answer the interrogatory at issue. *Whitserve, LLC* at *4-5. Plaintiff cannot carry that burden. Accordingly, Plaintiff should be compelled to respond fully to Defendants' Interrogatory No. 7.

### B.    DEFENDANTS' DOCUMENT REQUESTS NOS. 50 AND 51

On March 31, 2009, Defendants served Plaintiff with Document Request Nos. 50 and 51, requesting the following:

> 50. All letters (including attachments or exhibits) sent to the Court or opposing counsel that concern Paul Friedli in the case of *Schindler Elevator Corporation and Inventio AG*, Case No. 06-cv-05377 (CM) (THK) previously pending in the United States District Court for the Southern District of New York.[7]
>
> 51. A copy of the following deposition transcripts, and accompanying exhibits taken in the *Schindler Elevator Corporation and Inventio AG*, Case No. 06-cv-05377 (CM) (THK) previously pending in the United States District Court for the Southern District of New York:  Paul Friedli, Hans Bloechle, Sula Moudakis, Edward Nowel, Nicole Saloio, any other deposition that mentions Paul Friedli, and Dr. Andreas Gaussmann. Appx. 102-103.

To each Request, Plaintiff responded:

> Inventio incorporates its general objections by reference as if fully stated herein.  Inventio further specifically objects to this request on the ground that it calls for the production of documents that are neither relevant, nor likely to lead to admissible evidence.  The referenced lawsuit does not concern the patents or technology at issue in this lawsuit, and thus there is

---

[6]In addition, Plaintiff could not have responded to Defendants' interrogatories requesting an element-by-element analysis of Plaintiff's infringement position without knowing what its claim terms meant. *See* Appx.87-96.

[7] (footnote added) Communications to and from the Court in the New York action indicate these documents exist; however they are not referenced on the Court's docket. *See* footnote 7 below.

> no nexus between this request and the claims and defenses in this lawsuit. Inventio further specifically objects to this request to the extent that it calls for the production of documents that are subject to a confidentiality order entered into the referenced lawsuit.  Inventio intends to act in accordance with the terms of the confidentiality order entered in the referenced lawsuit. Appx. 102-104.

In response to Request 50, Plaintiff added "Inventio further specifically objects to the extent that the requested documents were equally accessible to the Defendants." Appx. 103.[8]

Defendants attempted to persuade Plaintiff to change its position and produce the requested documents.  Appx. 8-9.   Plaintiff maintained its refusal to produce the documents on the basis of relevance.   Appx.12-13.   Once again, Defendants attempted to resolve the issue extra-judicially.   Appx. 16.   On June 15, Plaintiff finally stated it would not produce the requested documents.  Appx. 81.

The basis for Plaintiff's relevancy objection, that there is no "substantial overlap" between the technology involved in the New York case and the present one, or that "there is no nexus between this request and the claims and defenses in this lawsuit," are not the proper standard for determining relevancy. In the Third Circuit, it is well recognized that the Federal Rules allow broad and liberal discovery.  *Pacitti v. Macy's,* 193 F.3d 766, 777-78 (3rd Cir. 1999); *Scovill Manufacturing Co. v. Sunbeam Corp.*, 61 F.R.D. 598-602 (D. Del. 1973) ("Connotation of 'relevancy' is extremely liberal with respect to pretrial discovery.") Consequently, this Court has recognized that "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action."  *In re ML-LEE Acquisition Fund II,* 51 F.R.D. 37, 39 (D. Del. 1993).  Thus, relevancy "has been construed broadly to encompass any matter that bears on,

---

[8] Not only are these improper bases of objection to the Requests, but Plaintiff's counsel previously represented that it was not withholding any documents because they were equally available to Defendants.  Appx. 108.

or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

As demonstrated below, the information sought by Defendants through document Requests 50 and 51 is reasonably calculated to lead to the discovery of admissible evidence relevant to several issues directly related to the patents at issue in this case.

With respect to Request 50, the documents requested from the New York case all concern Paul Friedli.  The documents sought by this request are relevant for the following reasons:

1. Mr. Friedli is the sole named inventor of the two patents involved in the present litigation.  Complaint, Exhibit A, first page; Exhibit B, first page; Appx. 142, 152.

2. Plaintiff has conceded that Mr. Friedli has information relevant to issues in this case relating to "conception, development, and design of  the subject matter of the Patents-in-suit;" "implementation of the subject matter of the Patents-in-Suit;" "infringing products and/or services;" the factual matters stated in the Complaint; specific components of the two patents in suit; and the assignment of the patents in suit to Plaintiff. Appx. 2, 14, 111, 116-119, 191, 192, 194.

3. U.S. Patent No. 5,689,094 [the "'094 patent"] (owned by Plaintiff Inventio) is involved in the New York action. Appx. 121 Mr. Friedli is an inventor named in that patent. Appx. 135. The '094 patent is the U.S. equivalent of European Patent EP0699617. Appx. 12, 269. The patents in the present case reference the '094 patent in connection with "identification codes": "[t]he recognition of an identification code….is known from the document EP0699617." Appx. 148 col.6, lines 12-14; Appx. 158 col. 6, lines 12-14.  All of the claims of the '465 Patent asserted by Plaintiff in the present action specifically require this same "recognition of identification codes." Appx. 161. Similarly, claim 11 of the '861 Patent asserted by Plaintiff in the present action also requires "recognition of identification codes." Appx. 151. These "identification codes" are also among the patent claim terms to be construed. Appx. 34, 53. In appealing the final judgment in the New York action, Plaintiff Inventio told the Appellate Court that "[t]he '094 Patent relates to a method for efficiently dispatching elevators." Appx. 254. Likewise, the two patents in the present action state "[a] first object of the present invention is to provide a device and a system in order to increase the efficiency of the elevator installation…." '861 Patent, column 1, lines 63-65, Appx. 146; '465 Patent, column 1, lines 64-66, Appx. 156. Finally, the

'094 Patent "relates to a specific type of destination dispatching system." Appx. 122  The two patents in the present case also involve a specific type of destination dispatching system called a "destination call control." Appx. 146, col. 2, lines 4-8; Appx. 156, col. 2, lines 6-9. Accordingly, the technology involved in the New York action is directly relevant to the subject matter being asserted in the patents by Plaintiff in the present case; and Paul Friedli is central to that technology.

4.   Since Paul Friedli is the inventor of the patents in the present case, and since he has been designated by Plaintiff as having knowledge of specific information, documents submitted to the New York court may be relevant to such issues as Mr. Friedli's background, and his connection (contractual or otherwise) with Plaintiff Inventio, (a plaintiff in both lawsuits).[9]

5.   Statements made by or about Mr. Friedli in the New York action could have a bearing on issues in the present case, for example claim term meaning and infringement, among others.[10]  Thus even if that information may not be directly relevant to issues in the present case, it may lead to relevant information.

Clearly, Mr. Friedli is not some unrelated third party, but central to the technology and issues involved in this case.  Accordingly, information about him involving closely related technology in the New York action is discoverable.

Plaintiff has also objected to document Requests Nos. 50 and 51 on the basis that the documents sought are subject to a confidentiality order in the New York lawsuit.  There is no evidence that any of the requested documents are subject to such a confidentiality order.[11]  Even if there were such an order, these are <u>Plaintiff Inventio's</u> documents, not some third party's.

---

[9] The New York court has already determined that Mr. Friedli is a managing agent of Plaintiff. Appx. 179. Accordingly, information in the New York lawsuit concerning Mr. Friedli is relevant to assessing his ability to bind Plaintiff with deposition testimony.  *See* Fed. R. Civ. P. 30(b)(6). There are also consulting agreements between Mr. Friedli and Plaintiff ) Appx. 163, n. 3. Plaintiff has recognized the relevance of this information by agreeing to produce the agreements. Appx. 81.

[10] *See, e.g.,* letters sent to the court or opposing counsel in the New York action specifically referenced in that court's decision involving the close relationship between Mr. Friedli and Plaintiff involving technical development matters: letter from Allen Littman, (addressing whether Mr. Friedli's documents are within the possession, custody or control of Plaintiff ) Appx. 163; letter from Andrew Back, (involving Mr. Friedli's consulting agreements with Plaintiff) Appx. 163; letter from Charles Bruton (concerning Mr. Friedli's relationship to Plaintiff) Appx. 164; letter from Allen Littman (addressing Mr. Friedli's role as the inventor of the identification code technology, technology also critical to the instant case) Appx. 168-70; letter from Charles Bruton (addressing whether Mr. Friedli has authority to make decisions on behalf of Plaintiff) and that Mr. Friedli "gets orders to develop specific products or properties of products and then he delivers this work to Inventio.") Appx. 170.

[11] The court's opinion referencing or quoting from the documents was not filed under seal, and there is no indication in the opinion that any of the information contained in the documents is confidential of subject to a protective order.

There is a similar protective order in the present case that would clearly protect any alleged confidential information. Further, Plaintiff also objected to Request No. 50 because "the requested documents were equally accessible to the Defendants." Appx. 103. This belies any claim that the requested documents are subject to a confidentiality order. Plaintiff fails to state any valid basis for withholding the documents sought by Request No. 50.

Similarly, Document Request No. 51 seeks deposition transcripts taken in the New York action that involve Mr. Friedli.  This information is relevant for the same reasons stated above. Since Mr. Friedli is the inventor of the patents in the present litigation, and has been designated by Plaintiff as having knowledge relevant to this lawsuit, his prior deposition testimony and associated exhibits are certainly relevant.  That deposition testimony may reveal his background, his association with Plaintiff, his work involving the identification codes (which are part of the patent claims in the present case), terminology relevant to claim construction in this case, etc.

Document Request No. 51 lso seeks the deposition transcripts of Nicole Saloio and Andreas Gaussman from the New York action. Plaintiff has designated Ms. Saloio[12] as knowledgeable concerning products and services that embody the patents involved in this action. Appx. 109, 189, 190. Plaintiff intends to use such information to show commercial success of commercial embodiments of the alleged inventions of the patents in suit to rebut Defendants' obviousness defense. Appx.189-90. Ms. Saloio also sent e-mails evidencing Mr. Friedli's expertise and relationship with Plaintiff. Appx. 174.

Plaintiff has designated Mr. Gaussman[13] as most knowledgeable concerning implementation of the subject matter of the patents in suit; the factual basis for the allegations in

---

[12] Ms. Saloio is sales manager for all elevator modernization products at Schindler Elevator Corporation. http://www.fmlink.com/ProfResources/Magazines/article.cgi?BOMA:boma120507b.html.  The patents in suit are directed toward elevator modernization. Schindler Elevator is a sister corporation of Plaintiff Inventio.
[13] Mr. Gaussman is the Vice director of Plaintiff. Appx. 110.

the Complaint; Plaintiff's corporate structure; infringing products and/or services; prosecution of the patents-in-suit and related counterpart patents; and certain critical components of the patent-in-suit. Appx. 2, 111, 117, 118, 119, 191, 192, 194. In addition, Mr. Gaussman has sworn that he has personal knowledge of all of the information set forth in answer to all of Defendants' interrogatories. Appx. 197, 199, 201.

Accordingly, these designations make these individuals' prior deposition transcripts and associated exhibits highly relevant as well, since those depositions may reveal information about these individuals, their association with Plaintiff, the technology at issue in the present case, etc.[14]

Finally, the prior deposition transcripts in the New York case of Mr. Bloechle, Sula Moudakis and Edward Nowel are all relevant to the close relationship of Dr. Friedli to Plaintiff and his consulting arrangements involving elevator controls and systems with Plaintiff. *See* Appx,. 9, 10 (Friedli plays a role in marketing and sales activities; Friedli "gets orders to develop specific products or properties of products and then he delivers this work to Inventio"); Appx. 12 (Friedli has access to Plaintiff Inventio's confidential documents); and Appx. 13, 14, 15 (Friedli's involvement in sales and marketing). These depositions may also yield relevant information about Mr. Friedli or Plaintiff Inventio.

While Plaintiff has objected to the production of this information on the basis that it may be subject to a confidentiality order, there is no evidence that any of the requested deposition testimony or exhibits are subject to such an order.[15]   Even if they were, these are <u>Plaintiff</u>

---

[14] As demonstrated by the opinion in the New York case, these depositions were used to further prove the close association between Mr. Friedli and Plaintiff Inventio, also relevant to the present case.

[15] The court's opinion referencing or quoting from the documents was not filed under seal, and there is no indication in the opinion that any of the information contained in the documents is confidential of subject to a protective order.

<u>Inventio's</u> witnesses and documents and not some third party's, and can be equally well protected under the protective order in the present case.

For the foregoing reasons, it is respectfully requested that the Court order production of the requested documents.

## C.    DEFENDANTS' DOCUMENT REQUEST NO. 2

On March 31, 2009, Defendants served Plaintiff with Document Request No. 2, requesting:

> 2.    All documents contained in the files relating to the patent applications for the Inventio patents and patent applications,[16] including all prosecution histories and prior art. Appx. 206, 224.

Plaintiff initially responded to this Request (incorporating a multitude of "General Objections"):

> Subject to the General Objections, Inventio will produce relevant, non-privileged documents in its possession, custody or control, to the extent they exist. Appx. 206.

Plaintiff finally responded to this request with a few documents on April 17, 2009. Appx. 249. The foreign patent application files sought by the Request were either incomplete, or missing entirely. Appx. 250. The prosecution histories for the patents-in-suit were not from

---

[16] (footnote added). "Inventio patents and patent applications" was defined in the Request as "European patent application 01811233 filed December 17 2001 and European patent application 01811234 filed December 11, 2002, and any patent application or patent asserting priority from such European patent applications, as well as any continuation, continuation-in-part, divisional, or any other patent or patent application (including rejected, abandoned, or pending applications) derived in whole or in part from any of the foregoing applications, and all foreign counterpart patents or patent applications to any such patent or patent applications (including rejected, abandoned, or pending applications)" Appx. 223, 243 ¶ 13.

Plaintiff's files as requested, but apparently downloaded from the U.S. Patent Office website.[17]

Appx. 250.

> In response to Defendants' request to cure these deficiencies, Plaintiff wrote:

> We believe our production of file histories [prosecution histories] from the Patent Office was sufficient to satisfy Document request no. 2. With regard to the corresponding foreign patent applications, many of the documents are confidential and will be produced after the entry of the protective order in this case.[18] Appx. 13.

In an attempt to resolve the dispute, Defendants responded:

> In response to Document Request No. 2, we believe Inventio is obligated to produce the U.S. patent application files from its own records, not those from the Patent Office, since, among other reasons, some of the Patent Office files are inaccurate. Further, we also believe that Inventio is obligated to produce any non-confidential documents relating to the corresponding foreign patent application files. Will Inventio produce these documents, and if so, when?  Appx. 16.

Over a month later, Plaintiff finally responded:

> We maintain our position that our production of file histories from the Patent Office was sufficient to satisfy Document Request No. 2, as stated in our letter of May 6, 2009. With regard to the foreign patent application files, we will produce relevant, non-privileged[19] documents shortly, subject to the protective order. Appx. 52.

Since that time, Plaintiff has not produced any documents responsive to Request 2, including those it said it would produce "shortly," or after the protective order was entered nearly 2 months ago.

Plaintiff's position that it has complied with this Request by producing copies of documents from some source other than its own files is improper. Plaintiff's file copies of its U.S. prosecution histories may contain additional information not in the Patent Office files, or

---

[17] This is apparent from the prosecution histories produced by Plaintiff, which contain a  lengthy extraneous, totally unrelated document that would not have existed in Plaintiff's files.

[18] (footnote added) The protective order was entered on May 5, 2009.

[19] (footnote added) Plaintiff has not produced a privilege log showing withheld "privileged" documents.

may contain notes or other relevant material.[20] Plaintiff's failure to produce the foreign prosecution files is simply evasive and non-responsive, since this information is clearly relevant. *See, e.g., see Liposome Co. v. Vestar, Inc.*, 1994 WL 738952, at *9-*10 (D. Del. 1994) ( allowing use of representations made to a foreign patent office for claim construction); *Merck & Co., Inc. v. Mylan Pharm., Inc.*, 19 F. Supp. 2d 334, 344 n.17 (E.D. Pa. 1998) ( instructions given New Zealand Patent Office during prosecution of a foreign counterpart patent relevant to infringement issues); *Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*, 109 F.3d 726, 727 (Fed. Cir. 1997) (representations to foreign patent offices relevant to infringement.)

Plaintiff should be compelled to produce the requested documents.

### D.    DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES AND EXPENSES INCURRED IN BRINGING THE PRESENT MOTION

Defendants are entitled to recover their fees and expenses in bringing the present motion. According to this Court's pretrial procedures, "[t]he Court customarily imposes sanctions upon the non-prevailing party unless the position of the non-prevailing party is found to have been substantially justified." *See also*, Fed. R. Civ. P. 37(a)(5).

There is no substantial justification for Plaintiff's refusal to respond to the discovery discussed above.  Defendants May 5, 2009 letter (Appx. 7-8) noted the lack of justification for Plaintiff's refusal to provide its claim constructions, and specifically cited the *White Burs* and *Whitserve* cases, prior decisions on all-fours with the issues raised in this motion.  With those cases in hand, Plaintiff was not justified in continuing to refuse to fully respond to Interrogatory No. 7.

---

[20] Note Defendants' discovery instruction that "[a] draft or non-identical copy is a separate document within the meaning of [the term "Document".] Appx. 242.

Likewise, in that same letter, Defendants raised many of the same arguments noted above relating to the documents involving Mr. Friedli.  (Appx. 7-9)  Again, given the high relevance of documents relating to Mr. Friedli, the inventor of the patents involved in the present action, and the other individuals identified in Defendants' Document Request No. 51, Plaintiff was not justified in refusing to withhold the requested documents.

Finally, Plaintiff was not justified in withholding the highly relevant prosecution histories.

The Supreme Court has noted that "substantially justified" means that there must be a "genuine dispute" or that "reasonable people could differ as to the appropriateness of the contested action."  *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988).  Here there is not a "genuine dispute" and reasonable people could not differ as to the appropriateness of Plaintiff's refusal to answer the interrogatory and respond to the document requests.

For these reasons, defendants should be awarded their fees and expenses incurred in being forced to bring this Motion.

## IV.    CONCLUSION

In view of the above, Defendants are entitled to an order compelling Plaintiff to fully respond to Interrogatory 7, and Document Request Nos. 2, 50 and 51, and recovery of their fees and expenses incurred in bringing this Motion.

Respectfully submitted,

July 2, 2009                **WOMBLE CARLYLE SANDRIDGE &
                            RICE, PLLC**

                            /s/ James M. Lennon
                            James M. Lennon (#4570)
                            222 Delaware Avenue, Suite 1501
                            Wilmington, DE 19801
                            Tel: (302) 252-4320
                            kbaird@wcsr.com

                    **FROST BROWN TODD LLC**
                            David E. Schmit (admitted pro hac vice)
                            2200 PNC Center
                            201 East Fifth Street
                            Cincinnati, OH 45202
                            dschmit@fbtlaw.com
                            Tel:    (513) 651 6985
                            *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

This is to certify that on this 2nd day of July, 2009, the foregoing was filed with the clerk of the court by using the CM/ECF system and that a true and correct copy of the foregoing will be served on the following counsel for Plaintiff through the CM/ECF system:

Donald E. Reid
**MORRIS, NICHOLS, ARSHT &**
**TUNNELL LLP**
Chase Manhattan Centre
1201 North Market St., P.O. Box 1347
Wilmington, DE 19899-1347
Tel: (302) 685-9200
rsmith@mnat.com

Pierre R. Yanney
**DARBY & DARBY P.C.**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 527-7769
Pyanney@Darbylaw.com

/s/ James M. Lennon
James M. Lennon (#4570)

CINLibrary 0106162.0563706 1982314v2

–18–