**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------------
INVENTIO AG,                   )
                                      )
                                      )
        Plaintiff        )
                                      )     Civil Action No. 1:08-cv-00874-ER
v.                                   )
                                      )
THYSSENKRUPP ELEVATOR AMERICAS  )
CORPORATION;                    )
THYSSENKRUPP ELEVATOR CORPORATION, )
and;                                   )
THYSSENKRUPP ELEVATOR         )
MANUFACTURING INCORPORATED     )
                                      )
        Defendants.     )
-----------------------------------------------------------------

**APPENDIX TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL ANSWERS TO INTERROGATORY NO. 7 AND DOCUMENT**
**REQUEST NOS. 2, 50 AND 51**

*Of Counsel:*

Pierre R. Yanney                         Donald E. Reid (Bar I.D. # 1058)
DARBY & DARBY P.C.                 MORRIS, NICHOLS, ARSHT & TUNNELL
7 World Trade Center                 LLP
250 Greenwich Street                 1201 N. Market Street
New York, NY 10007-0042            P.O. Box 1347
Tel: (212) 527-7700                   Wilmington, DE  19899-1347
Fax: (212) 527-7701                  (302) 658-9200
Email: pyanney@darbylaw.com        Email:  dreid@mnat.com

                                         *Attorneys for Plaintiff*
                                         *INVENTIO AG*

## INDEX TO THE APPENDIX

U.S. Patent No. 5,689,094                                                1-7

December 12, 2006 Stipulated Protective Order                            8-27

U.S. Patent Office Search Results                                        28-29

## CERTIFICATE OF SERVICE

I, Donald E. Reid, hereby certify that on July 20, 2009, the foregoing was filed with the

Clerk of the Court using CM/ECF system and that a true and correct copy of the foregoing was

served electronically via CM/ECF on the following counsel for Defendants:

> James M. Lennon, Esq.
> WOMBLE CARLYLE SANDRIDGE & RICE PLLC
> 222 Delaware Avenue, Suite 1501
> Wilmington, DE 19801
> Tel: (302) 252-4326
> Fax: (302) 661-7726
> Email: jlennon@wcsr.com

> David E. Schmit, Esq.
> FROST BROWN TODD LLC
> 2200 PNC Center
> 201 E. 5th Street
> Cincinnati, OH 45202
> Tel: (513) 651-6800
> Fax: (513) 651-6981
> Email: dschmit@fbtlaw.com

> /s/ Donald E. Reid
> Donald E. Reid (#1058)



US005689094A

# United States Patent [19]

## Friedli et al.

| [11] | Patent Number: | **5,689,094** |
|---|---|---|
| [45] | Date of Patent: | **Nov. 18, 1997** |

[54] **ELEVATOR INSTALLATION**

[75] Inventors: **Paul Friedli**, Remetschwil; **Karl Schneeberger**, Root; **Hans Peter Bornhauser**, Buchrain, all of Switzerland

[73] Assignee: **Inventio AG**, Hergiswil, Switzerland

[21] Appl. No.: **519,787**

[22] Filed: **Aug. 28, 1995**

[30] **Foreign Application Priority Data**

Aug. 30, 1994 [CH] Switzerland ..................... 026*5/94

[51] Int. Cl.$^6$ .......................................... **B66B 1/20**
[52] U.S. Cl. ................................ **187/384**; 187/392
[58] Field of Search ........................ 187/392, 384, 187/387, 388, 389

[56] **References Cited**

U.S. PATENT DOCUMENTS

| 4,685,538 | 8/1987 | Kamaike | ....................... | 187/121 |
|---|---|---|---|---|
| 4,979,594 | 12/1990 | Begle et al. | ....................... | 187/121 |
| 5,304,752 | 4/1994 | Hayashi | ....................... | 187/126 |

FOREIGN PATENT DOCUMENTS

| 246395 | 11/1987 | European Pat. Off. | ......... | B66B 1/20 |
|---|---|---|---|---|
| 341381 | 11/1989 | European Pat. Off. | ......... | B66B 1/46 |

| 1-226681 | 9/1989 | Japan | ....................... | 187/384 |
|---|---|---|---|---|
| 1-247378 | 10/1989 | Japan | ....................... | 187/384 |
| 2-43185 | 2/1990 | Japan | ....................... | 187/384 |
| 3-272977 | 12/1991 | Japan | ....................... | 187/127 |

*Primary Examiner*—Robert Nappi
*Attorney, Agent, or Firm*—Greenblum & Bernstein, P.L.C.

[57] **ABSTRACT**

Elevator installation. This device enables an implicit input of destination calls in elevator installations, with an information transmitter, after a corresponding enquiry, sending data to a recognition device, wherein the data can contain direct information about the desired destination floor or serve for the identification of the elevator user and thus enable access to the information, filed in a storage device, about the destination floor, with the storage device being accommodated in a processing unit of an elevator control. The communication between the recognition device and the information transmitter takes place via radio frequencies and with the aid of the obtained data, the destination floor is determined in the processing unit and conveyed to the lift control, with the allocation being communicated to the passenger on a display device, with the process of the call entry taking place automatically, contactless and independent of the orientation of the information transmitter, i.e. it need not be visible for the recognition device, with an input device being provided for changing the floor that is proposed by the processing unit.

**14 Claims, 2 Drawing Sheets**



Mr. Muster - 5.$^{th}$ Floor - Elevator A

1



Fig. 1

# Fig. 2



5,689,094

1

# ELEVATOR INSTALLATION

## CROSS REFERENCE TO RELATED APPLICATIONS

This application claims the priority of Swiss Application No. CH 02 645/94-3, filed Aug. 30, 1994, the disclosure of which is incorporated herein by reference in its entirety.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The invention pertains to an elevator installation having a recognition device for the recognition of calls entered at floors, wherein the recognition device forwards the received calls to the elevator control.

### 2. Discussion of the Background of the Invention and Material Information

European Patent Publication EP 341 381 sets forth a method and a device for the secured and convenient entry of control commands, particularly for elevator installations, in which control commands can be sent to the elevator control by means of a portable wireless transmitter. The portable transmitting unit or device has two different modes of operation, "manual, upon button pressure" and "automatically, permanent". The desired mode of operation can be set by way of an operating mode selector on the transmitting unit. In the mode of operation "manual, upon button pressure", the desired destination can be entered directly by means of a ten key keyboard mounted on the transmitting unit and thus communicated to the elevator control. In the mode of operation "automatically, permanent", the transmitting unit sends the desired destination information on to the elevator control at certain time intervals. The acknowledgement or signalling takes place on a display device mounted on the transmitting unit. The user is thus informed that his destination call has been registered and which elevator he has to use.

In the previously described method, the portable transmitting device is provided with diverse function keys and a display, which means that the transmitter must, in every instance, be taken in hand for the determination of the desired mode of operation. This is impractical when a passenger has no free hand to operate the transmitter. Moreover, in both modes of operation, the entry acknowledgement and the allocated car are indicated only on the display of the transmitter, which must therefore be taken out of the pocket, each time, in order to view the display. Beyond that, the dimensions thereof are too large due to the function keys and the display, to allow convenient carrying of the transmitter. Finally, the requirement of a keyboard and a display results in considerable manufacturing expense.

The invention has the task or object of providing a recognition device for elevator installations which, for the recognition of calls entered at floors, of the type initially described, does not include the noted disadvantages and which offers greater operating convenience to the passenger.

## SUMMARY OF THE INVENTION

This task or object is achieved by the invention in the manner set forth in the appended claims.

Specifically, this invention pertains to an elevator installation having a plurality of elevators and a recognition device for the recognition of calls entered at floors, wherein the entry location of a call is the starting floor of the journey, with the call being fed to a control device and allocated to an elevator via an allocating algorithm and wherein the call

2

is acknowledged and a proposed destination floor communicated to an elevator user via one of a display device and an acoustic device, wherein the recognition device, mounted in an access area in the vicinity of the elevators and spatially located away from elevator doors the floors, independently reads data from information transmitters carried by an elevator user and transmits the data via a storage device into the control device or, after the recognition of individual features of the lift user, transmits the data via an associated storage device, into the lift control device.

A further embodiment of the elevator installation of this invention includes an input device for changing the proposed destination floor, with the input device being located in the region of the recognition device.

In another embodiment of the elevator installation of this invention, a changed destination floor is added to the storage device.

In a differing embodiment of the elevator installation of this invention, at least one recognition device is mounted at each access area.

In yet a further embodiment of the elevator installation of this invention, the recognition device operates without physical contact with the elevator installation.

In yet another embodiment of the elevator installation of this invention, the recognition device reads a key having a code.

In yet a differing embodiment of the elevator installation of this invention, the storage device is mounted on the information transmitter.

In still a further embodiment of the elevator installation of this invention, the storage device is mounted in a processing unit.

In still another embodiment of the elevator installation of this invention, the data is information about the destination floor.

In still a differing embodiment of the elevator installation of this invention, the storage device, in addition to the destination floor, contains further transport requirement information and details about the elevator user.

In yet still a further embodiment of the elevator installation of this invention, the information transmitter reverts to an in at rest mode outside an elevator range and is activated via an external electromagnetic field.

In yet still a differing embodiment of the elevator installation of this invention, the identity of an elevator, allocated to the call, is communicated to the elevator user via one of a display device and an acoustic device.

The advantages achieved by the invention reside in the fact that the desired journey destination is communicated automatically to the elevator control by the information transmitters carried by the elevator users or by the recognition of features of the elevator users without any personal action being required by the passenger. In buildings, security is increased by access authorization for only certain floors.

Via the use of an information storage device, the elevator control, in addition to the desired floor destination, receives still additional transport requirements. With the aid of an input device mounted in the area of the elevator, the passenger can still change the journey destination. Moreover, the entry is acknowledged and the car allocated to the call is communicated to the elevator user either optically or acoustically.

## BRIEF DESCRIPTION OF THE DRAWINGS

The invention will be better understood and objects other than those set forth above will become apparent when

4

5,689,094

3

consideration is given to the following detailed description thereof. Such description makes reference to the annexed drawings wherein throughout the various figures of the drawings, there have generally been used the same reference characters to denote the same or analogous components and wherein:

FIG. 1 is a schematic block diagram of an arrangement of an elevator installation in accordance with the invention; and

FIG. 2 shows an arrangement and a basic lay-out of an installation for using the device of the instant invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

With respect to the drawings it is to be understood that only enough of the construction of the invention and the surrounding environment in which the invention is employed have been depicted therein, in order to simplify the illustrations, as needed for those skilled in the art to readily understand the underlying principles and concepts of the invention.

FIG. 1 shows a schematic block diagram of an arrangement of an elevator installation in accordance with the invention. An information transmitter which can, for example, be executed as card of the credit card type format, is denoted by numeral 1. Information transmitter 1 consists mainly of an aerial or antenna 2 and an electronic transmitter part 3. Electronic transmitter part 3 comprises a transmitting and receiving unit and a storage device having an identification code. A battery, preferably a long life battery, is mounted on information transmitter 1 for supplying electronic system 3. There is also the possibility of executing information transmitter 1 as passive element and supplying same via an electromagnetic field. Electronic transmitter system 3 remains in an at rest mode outside of the usual operating range and is activated by an electromagnetic field 4 radiated by a recognition device 5. Upon an appropriate inquiry by recognition device 5, information transmitter 1 sends data 6 to recognition device 5. Data 6 can contain direct information, for example the floor number, about the desired destination floor or data 6 serves for identification (identification code) of the elevator user and enables access to the information, filed in a storage device 8, about the destination floor. After a predetermined time without communication, information transmitter 1 again returns to its at rest mode. Storage device 8 is mounted in a processing unit 9 of an elevator control 10 and contains the information data about the destination floor. As a variation thereof, storage device 8, containing the destination floor information, could also be mounted directly on information transmitter 1. In the latter case, recognition device 5 directly receives the information about the destination floor. In addition, storage device 8 contains still further individual transport requirements and details of passengers such as the passenger name, details about the required space, solo journey (for example for important persons, hospital beds, foodstuff transports, refuse transport), preferential travel, prolonged door-opening times in the case of restricted mobility, operation for the physically disabled, the operational mode of car cleaning, special modes of operation in hospitals and hotels, and so forth. Recognition device 5 is equipped with one or more aerials 11 or antennas and monitors a specific building part or portion in the access or approach to an elevator installation. Device 5 independently searches the appropriate building part for information transmitters 1 and manages the communication with an electronic part 12. Electronic part 12 consists of a transmitting and a

4

receiving unit as well as a communication management unit. The communication between recognition device 5 and information transmitter 1 occurs via radio frequencies, preferably in the range of 900 megahertz to 6 gigahertz. Storage device 8 on information transmitter 1 or processing unit 9 can be read out and preferably also written or read into via recognition device 5. Recognition device 5 passes the data 6 received from information transmitter 1 into processing unit 9 via a wire line 13. The destination floor is determined in processing unit 9 with the aid of data 6 and a corresponding call 14 is generated by an allocating algorithm 15 for elevator control 10. The obtained allocation 16 can, for example, be combined with the name of the passenger, the destination floor or a transport requirement and be communicated to the passenger. This occurs either by way of a wire line 17 and a display 18 or acoustically, for example via speech synthesis. In the case of an elevator installation with only one elevator, the announcement of an allocation 16 becomes superfluous. As long as processing unit 9 cannot derive a probable destination with the aid of data 6, it requests the passenger, upon his being recognized via display 18 or acoustically, to enter his destination at an input device 19. Processing unit 9 operates either with its own computer or is integrated into elevator control 10. Elevator control 10 operates in a known manner, for example as a destination control, in the manner set forth in European Patent Publication EP 246 395. The entire operation of the call entry takes place hands-free, contactless and independent of the orientation of information transmitter 1, which also means that information transmitter 1 need not be visible for the identification thereof by recognition device 5. The compact mode of construction with a minimum fitting of components enables very inexpensive manufacturing of information transmitters 1.

When the passenger wants to travel to a floor other than that proposed by processing unit 9 or the passenger has no information transmitter 1, the destination floor can be changed or chosen via input device 19. Input equipment 19, which for example is constructed as a ten key keyboard, is mounted in the area of recognition device 5 and is in direct connection 20 with processing unit 9. The new destination floor is augmented or added in storage device 8. This procedure makes it possible that processing unit 5 can now evaluate the usual destination floors of the passenger with the aid of the identified person, the time of day, the day of the week day and the starting floor.

As a variation, recognition device 5 can also be so arranged that it recognizes a passenger with the aid of an individual feature, for example in an optical manner (facial contours, finger prints, iris, etc.) or by reason of the speech thereof. In the case of agreement with features contained in storage device 8, recognition device 5 sends a report to processing unit 9. In this case, an information transmitter 1 is not required. For changing the proposed destination floor, an input device 19 is also required. Processing unit 9 then evaluates the call in the manner of the previously described embodiment.

To assure building security, input equipment 19 may be dispensed with. Thus, the passenger can only reach floors, to which he has authorized access. This access authorization is ascertained with the aid of the information data contained in storage device 8. In a hotel, this can for example be the main stop and the room floor.

Information transmitter 1 can also be mounted on any desired object. In the case of elevators in multistory carparks or parking garages of department stores and airports, the problem exists that it is not known in advance whether the

5,689,094

5

passenger does or does not have a luggage or shopping cart or trolley. The space management in the elevators must thus be planned correspondingly different. Via information transmitters 1 mounted on the carts, it can readily be recognized whether the passenger does or does not have a cart. In multistory carparks, the car driver receives a card with an information transmitter 1 upon arrival. This card serves, at the same time, as the ticket for payment of the parking fee. On his parking floor, the driver also possibly takes a luggage cart. As soon as he approaches the elevator, he and the possible cart are recognized by recognition device 5 and his card (information transmitter 1) is inscribed with the location of the subject floor. The destination, in the case of multistory carparks, is always the main stop of the building so that he immediately receives an optimum elevator allocation which also takes his space requirements into consideration. The passenger is now brought to his destination. When he returns to the main stop, he is brought automatically, with or without cart to the specific floor, where his car is parked. At the check point when leaving the multistory carpark, the car (information transmitter 1) is relinquished. This variation can also be utilized in hotels, where the card (information transmitter 1) additionally serves as the room key. The main stop and the floor, where the corresponding room is situated, are preset as destination floors.

A further variation consists in that information transmitter 1 is not carried along as separate card, but executed as coded key means. For example, in a residential or in an office building, the building key can be provided with information transmitter 1. Recognition device 5 is then mounted at the door lock so that elevator control 10 also receives the destination call upon the opening of the door. In an office building, the process can take place via operation of the time clock for time recordation purposes.

FIG. 2 shows an arrangement the basic layout of an elevator installation 30 for applying the method of this invention. An elevator group with the lifts 31a, 31b and 31c leads from main stop or floor 32, having an entrance or access 33 to the upper floors. At least one recognition device 5 is mounted in the region or area of accesses 33 and 34 of each floor. The transmitting and receiving range of a recognition device 5 comprises the access associated therewith. Recognition devices 5 are spaced a few steps away from elevators 31a, 31b and 31c so that the journey destination is communicated to elevator control 10 early and the allocated elevator arrives at the shaft door, if possible, already before or at the same time as the passenger. Thus, a passenger 35 can be recognized and an elevator 31a, 31b or 31c can be presented and be ready without the passenger having to stand directly in front of recognition device 5. An input device 19, for changing the proposed destination floor, is arranged in the area of recognition device 5. Display devices 18 are situated above or laterally of the floor doors and/or at input equipment 19. Passenger 35 is informed of the allocated elevator and the journey destination, implicitly indicated by information transmitter 1, before elevator 31a, 31b or 31c is situated on the boarding floor. If passenger 35 would now like to choose a different journey destination, he can do this explicitly at input device 19, with the implicitly entered call being annulled thereby. Processing unit 9 notes this change and will, for this passenger 35, retain the new journey destination ready for lift control 10, each time, at the same time of the day. After a certain time, so much statistical material about the passenger 35 accumulates in storage device 8 that, during the maintenance of constant habits, he is automatically brought to the correct journey destination.

6

While there are shown and described present preferred embodiments of the invention, it is to be distinctly understood that the invention is not limited thereto, but may be otherwise variously embodied and practiced within the scope of the following claims and the reasonably equivalent structures thereto. Further, the invention illustratively disclosed herein may be practiced in the absence of any element which is not specifically disclosed herein.

What is claimed is:

1. An elevator installation having a plurality of elevators comprising:

a recognition device for recognizing elevator calls entered at an entry location by an information transmitter carried by an elevator user, initializing the entry location as a starting floor of a journey;

a control device receiving the recognized elevator call and allocating an elevator to respond to the elevator call, through a predetermined allocating algorithm;

a call acknowledging device comprising one of a display device and an acoustic device to acknowledge recognition of the elevator call and to communicate a proposed destination floor to the elevator user;

the recognition device, mounted in the access area in the vicinity of the elevators and spatially located away from elevator doors, actuating the information transmitter and comprising a unit that independently reads data transmitted from the information transmitter carried by the elevator user and a storage device coupled between the unit and the control device:

the recognition device one of transmitting proposed destination floor data, based upon the data transmitted from the information transmitter, to the control device, and, transmitting elevator user specific data. based upon individual features of the elevator user stored in the storage device, to the control device.

2. The elevator installation of claim 1, further including an input device for changing the proposed destination floor, with the input device being located in the region of the recognition device.

3. The elevator installation of claim 1, wherein a changed destination floor is added to the storage device.

4. The elevator installation of claim 2, wherein a changed destination floor is added to the storage device.

5. The elevator installation of claim 1, wherein at least one recognition device is mounted at each access area.

6. The elevator installation of claim 1, wherein the recognition device operates without physical contact with the elevator installation.

7. The elevator installation of claim 1, wherein the recognition device reads a key having a code.

8. The elevator installation of claim 1, wherein the storage device is mounted on the information transmitter.

9. The elevator installation of claim 1, wherein the storage device is mounted in a processing unit.

10. The elevator installation of claim 1, wherein the data is information about the destination floor.

11. The elevator installation of claim 1, wherein the storage device, in addition to the destination floor, contains further transport requirement information and details about the elevator user.

12. The elevator installation of claim 1, wherein the information transmitter reverts to an in at rest mode outside an elevator range and is activated via an external electromagnetic field.

13. The elevator installation of claim 1, wherein the identity of an elevator, allocated to the call, is communicated

6

5,689,094

7

to the elevator user via one of a display device and an acoustic device.

**14.** An elevator installation having a plurality of elevators comprising:

    a recognition device for recognizing elevator calls entered at an entry location by an information transmitter carried by an elevator user, initializing the entry location as a starting floor of a journey;

    a control device receiving the recognized elevator call and allocating an elevator to respond to the elevator call, through a predetermined allocating algorithm;

    a call acknowledging device comprising one of a display device and an acoustic device to acknowledge recog-

8

nition of the elevator call and to communicate a proposed destination floor to the elevator user;

the recognition device, mounted in an access area in the vicinity of the elevators and spatially located away from elevator doors, actuating the information transmitter and comprising a unit that independently reads data transmitted from the information transmitter carried by the elevator user and a storage device coupled between the unit and the control device;

the recognition device transmitting the data through the storage device and to the control device.

\* \* \* \* \*

Leslie J. Harris (LH 1290)
**Buchanan, Ingersoll & Rooney PC**
One Chase Manhattan Plaza, 35th Floor
New York, New York 10005-1417
(212) 440-4400

Attorney for Plaintiffs

S. Alyssa Young (SY 6105)
**Leader & Berkon LLP**
630 Third Avenue
New York, NY 10017
(212) 486-2400

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SCHINDLER ELEVATOR CORPORATION, and INVENTIO AG, | ) ) ) ) ) | Civil Action No. 06-CV-05377 (RCC) |
| Plaintiffs, | ) ) | **STIPULATED PROTECTIVE ORDER** |
| v. | ) ) | |
| OTIS ELEVATOR COMPANY, | ) ) | |
| Defendant. | ) ) ) ) | |

WHEREAS, the Parties hereto are engaged in discovery proceedings with respect to the above-captioned case;

WHEREAS, certain information, documents and things that are subject to discovery may contain sensitive business information relating to, *inter alia*, each Party's respective trade

**8**

secrets, processes, operations, research, know-how or apparatus, customers, amount or source of income, profits, losses, expenditures, technical or developmental information, services, marketing, sales, shipments, purchases, pricing or transfers;

WHEREAS, the Parties expect to be providing confidential information entitled to protection under Fed. R. Civ. P. 26(c)(7);

WHEREAS, each Party agrees that the information, documents and things that contain sensitive information are sufficiently numerous that requiring this Court to determine protected status on a document-by-document basis would unduly interfere with the prompt and efficient disposition of this lawsuit;

WHEREAS, in the ordinary course of their respective businesses, each Party expends significant effort to keep such sensitive information confidential from competitors, customers and the public at large, as disclosure of such sensitive information would impair its value or would place the Party at a competitive disadvantage;

WHEREAS, the exchange of sensitive information between each Party and/or non-parties other than in accordance with this Protective Order may cause unnecessary damage and injury to the respective disclosing party and to others;

WHEREAS, each Party believes that this Protective Order will serve the interests of justice, properly avoid excessive and unnecessary burdens to each respective Party, and facilitate discovery;

WHEREAS, each Party agrees to the terms of this Protective Order; and

WHEREAS, this Court independently finds, in light of the foregoing and all of the facts and circumstances herein, that good cause exists for the entry of this Protective Order with

2

respect to the aforementioned sensitive information, and that the terms of this Protective Order are fair and just;

It is therefore AGREED by and between the Parties and all their respective counsel, and it is hereby ORDERED by this Court as follows:

1.   **Scope of the Protective Order**

1.1     The provisions of this Protective Order shall apply to the named Parties to this lawsuit and to any other person entitled to receive or required to produce Discovery Material in this lawsuit, including Protected Material, as defined in this Protective Order.  Further, the provisions of this Protective Order shall continue until further modified by an Order of this Court.

2.   **Definitions**

2.1     In addition to those terms and phrases defined herein in other parts of this Protective Order, the following terms and phrases shall be defined as follows:

(a)     The phrase "Patent In Suit" means U.S. Patent No. 5,689,094;

(b)     The phrase "Discovery Material" includes, without limitation, information, documents (whether electronic or printed), depositions, deposition exhibits, discovery responses, expert submissions, pretrial and trial testimony and all documents and things derived from such Discovery Material, including, without limitation, copies, summaries or abstracts produced or disclosed by a Party (the "Producing Party") or by a non-party (the "Producing Non-Party") in this lawsuit to another party (the "Receiving Party");

(c)     The phrase "this lawsuit" shall mean the lawsuit pending before the United States District Court for the Southern District of New York, captioned as *Schindler Elevator*

3

*Corporation and Inventio AG v. Otis Elevator Company,* and assigned Civil Action No. 06-CV-05377 (RCC);

(d)   The term "Party," in singular or plural form, shall mean the Plaintiffs and/or the Defendant.  For example, Schindler Elevator Corp. and Inventio AG together constitute one Party.

(e)   The term "person" shall mean and include any natural person, party, organization, firm or corporation, including, without limitation, their affiliates, proprietorships, partnerships, associations and other legal entities, whether or not in the employ of a person; the expression "acts of a person" shall include the acts of directors, officers, owners, members, employees, agents and attorneys acting upon that person's behalf;

(f)   The phrases "Producing Party" or "Producing Non-Party" in singular or plural form, shall mean a Party or non-party, respectively, that produces Discovery Material in the course of this lawsuit.

(g)   The phrase "Protected Material" shall mean any Discovery Material designated by a Party or non-party under this Protective Order as either "Confidential" or "Highly Confidential - Outside Counsel's Eyes Only."

(h)   The phrase "Receiving Party," in singular or plural form, shall mean a Party that receives Discovery Material in the course of this lawsuit.

**3.   Designation of Protected Material**

3.1   Any Producing Party or Producing Non-Party may designate any Discovery Material as "Confidential" or as "Highly Confidential - Outside Counsel's Eyes Only", under the terms of this Protective Order if such Party or non-party or its counsel, in good faith, believes that such Discovery Material contains or reveals information falling within the categories

4

described herein, in this Section 3.  A Party that requests discovery from any Non-Party shall provide such Non-Party with a copy of this Protective Order at the time of such Request.

3.2     The designation "Confidential" may be used for any confidential information which a Party or non-party believes and represents is proprietary to it, is used in its business and is not known or readily accessible to the public.

3.3     The designation "Highly Confidential - Outside Counsel's Eyes Only" shall be reserved for especially sensitive and confidential information,  including, without limitation, trade secrets, research, development and design materials, unpublished pending patent applications, license or commercial agreements, commercial or financial information, planning and strategic materials, and this designation shall be used only if disclosure  to persons other than those designated in Section 6 below could cause substantial harm to the Producing Party or Producing Non-Party.

3.4     The Parties shall retain copies of all Protected Materials which are provided in discovery in this lawsuit in accordance with this Protective Order.

3.5     The designation "Highly Confidential - Outside Counsel's Eyes Only" shall not include:

(a) Any documents or things relating to the advertising and/or promotion for sale of any product covered by the Patent in Suit and/or accused of infringing the Patent in Suit;

(b) Any documents or things that have been shared without an obligation of confidentiality with: (i) any person not employed by the Producing Party or Producing Non-Party or their affiliates; or (ii) any person not under the direction of the Producing Party or Producing Non-Party or their affiliates.

5

4.   **Manner of Designating Protected Materials**

4.1     The designation of Protected Material as "Confidential" or "Highly Confidential -
Outside Counsel's Eyes Only" for purposes of this Protective Order shall be made in the
following manner by the Producing Party:

(a)     In the case of documents, exhibits, briefs, memoranda, discovery responses or
other materials (apart from depositions or other pre-trial or trial testimony): By affixing the
legend "Confidential" or "Highly Confidential - Outside Counsel's Eyes Only", as appropriate, to
each page of each document containing the Protected Material;

(b)     In the case of depositions:

(1) By a statement on the record, by counsel, during such deposition that certain
testimony shall be construed as "Confidential" or "Highly Confidential - Outside Counsel's Eyes
Only"; or

(2) By written notice, designating the portions of the deposition to be treated as
"Confidential" or "Highly Confidential - Outside Counsel's Eyes Only" delivered to all Parties
within ten (10) days after receiving a copy of the transcript thereof, with all depositions to be
treated as "Highly Confidential - Outside Counsel's Eyes Only" until twelve (12) days after
receiving a copy of the transcript thereof;

(c)     In the case of materials provided for inspection by counsel for a Producing Party
or Producing Non-Party: By affixing the legend "Confidential" or "Highly Confidential -
Outside Counsel's Eyes Only" to each page of each document containing the Protected Material
at the time copies of the materials are made after inspection by counsel.  Making documents and
things available for inspection shall not constitute a waiver of any claim of confidentiality, and
all materials provided for inspection by counsel for a Producing Party or Producing Non-Party

6

**13**

shall in the absence of a written agreement to the contrary be treated as "Highly Confidential - Outside Counsel's Eyes Only" at the time of the inspection. If the affixing of such legend is not possible with respect to any such Protected Material, the designation may be made by identifying with sufficient particularity the Protected Material and the appropriate level of confidentiality in writing;

       (d)      In the case of information created or obtained during an inspection of premises or things: By written notice, delivered to all Parties before conclusion of the inspection or within five (5) days thereafter. Counsel for the Producing Party or Producing Non-Party shall be responsible for arranging to have the appropriate confidentiality legend affixed to all drawings, photographs, videotapes or other documents created by the Producing Party or Producing Non-Party which reflect or refer to Protected Material observed or obtained during the inspection; and

       (e)      The Parties may modify this procedure for any particular inspection, deposition or other proceeding, through agreement by written stipulation, without further Order of the Court.

**5.**     **Limitations on Disclosure of "Confidential" Material.**

       5.1      Discovery Material designated "Confidential" may be disclosed, summarized, described or otherwise communicated or made available in whole or in part, for the purposes set forth above, to only the following persons:

       (a)      Attorneys, paralegals and support staff of the outside counsel having entered an appearance on behalf of a Party;

       (b)      The Court, including any Court personnel deemed necessary (*e.g.*, law clerks);

       (c)      Independent Experts or Consultants, and their staff, subject to and conditioned upon compliance with Paragraph 10 of this Stipulated Protective Order;

       (d)      No more than four (4) Designated Employees of a Party provided that:

(1)     Each such Designated Employee is employed by a Party or an affiliate and is either: (a) working as an in-house attorney; or (b) authorized to practice before the European Patent Office;

(2)     Each such Designated Employee is identified to the Producing Party no less that five (5) days before disclosure of any Protected Material; and

(3)     Each such Designated Employee has signed a copy of Exhibit A, attached hereto, confirming that Designated Employee's understanding and agreement to abide by the terms of this Protective Order;

(e)     Independent litigation support services, including, without limitation, court reporters, graphics or design services, non-technical jury or trial consulting services, and photocopy, document imaging and database services that have been retained by outside counsel and are necessary to assist outside counsel with the preparation of materials for presentation at trial or in connection with other proceedings in this lawsuit, provided each such person has signed a copy of Exhibit A, attached hereto, confirming that person's understanding and agreement to abide by the terms of this Protective Order; and

(f)     Any other person upon written stipulation of the Producing Party.

**6.     Limitations on Disclosure of "Highly Confidential - Outside Counsel's Eyes Only" Material.**

6.1     Discovery Material designated "Highly Confidential – Outside Counsel's Eyes Only" may be disclosed only to persons qualifying under Paragraphs 5.1 (a), (b), (c), (e) and (f) above. No Discovery Material designated "Highly Confidential - Outside Counsel's Eyes Only" may be disclosed to anyone who is an employee of a Party or who has been an employee of a Party within the past twelve (12) months.

8

7. **Use of Protected Material.**

7.1     Protected Material, and any information derived therefrom, to the extent such Protected Material is properly discoverable in this lawsuit, shall be used by any Receiving Party solely for purposes of this lawsuit and shall not be used for any other purpose, including, without limitation, any product development, business, proprietary, legal, commercial or any other purpose. Except as permitted by this Protective Order, Protected Material shall not be given, shown, made available or communicated in any way to any person other than as permitted by this Protective Order.

7.2     Any Party that uses Protected Material, or information derived from Protected Material, in an expert submission, pretrial or trial testimony, motion, brief, or any other verbal or written form, whether verbatim or in summary or paraphrased or any other form, shall restrict communication of such verbal or written information pursuant to the requirements herein for Protected Material, and for written documents (including electronic versions of documents, spreadsheets, and the like) shall ensure that each page contains the legend "Confidential" or "Highly Confidential - Outside Counsel's Eyes only," whichever is applicable.

7.3     Every person given access to Protected Material, or any information derived therefrom, shall be advised that the Protected Material is being disclosed pursuant and subject to the terms of this Protective Order and may not be disclosed or used other than in accordance with this Protective Order.

7.4     Protected Material shall not be made available to persons other than those qualifying under Paragraphs 5 and 6, the Producing Party or its past or present employees, or any person or party who is the proprietor or source of the Protected Material or who lawfully received the Protected Material prior to the entry of this Protective Order.

16

7.5     This Protective Order shall not be construed to prevent examination of any person or witness at trial or during a deposition concerning any Protected Material which that person had lawfully received prior to and apart from this lawsuit, provided however that such examination and any Protected Material or information obtained therefrom is still subject to the terms of this Protective Order.

7.6     In the event that any Protected Material is used in any proceeding in this lawsuit, or any appeal therefrom, such Protected Material shall not lose its status through such use, provided however that counsel confers with the Court on such procedures as are necessary to ensure the confidentiality of any documents, information and transcripts used in the course of any proceedings.  The question of whether or not a designated representative from each Party can have access to Confidential or Highly Confidential - Outside Counsel's Eyes Only trial testimony and exhibits shall be decided by the Parties at the time of trial, or by the Court on appropriate motion.  Nothing in this Protective Order shall be construed as affecting the admissibility of any Protected Material.

7.7     Nothing in this Protective Order shall affect or limit the right of a Party to use its own Protected Material in any lawful way it chooses.

8.      **Inadvertent Disclosure.**

8.1     If any Protected Material is inadvertently produced without the appropriate legend, the Producing Party or Producing Non-Party must promptly, upon learning of the inadvertent production, furnish written notice to the Receiving Party designating the inadvertently-produced Protected Material as "Confidential" or "Highly Confidential - Outside Counsel's Eyes Only" along with appropriately labeled copies of the material in question.  In

such circumstances, the Receiving Party shall, at its option and within five (5) days of receiving such notice:

    (a)    Return all copies of the inadvertently-produced Protected Material if the Receiving Party was not entitled to receive said materials; or;

    (b)    Destroy all copies of the inadvertently-produced Protected Material and retain only appropriately labeled disclosed copies if the Receiving Party is entitled to see and keep such Protected Material.

    8.2    The production of any Protected Material, as well as the inadvertent production of Protected Material without an appropriate designation of confidentiality, shall not be deemed a waiver or impairment of any claim of privilege or protection, including, without limitation, the attorney-client privilege, the protection afforded to work product materials or the subject matter thereof, or the confidential nature of any such information. Upon receiving written notice from the Producing Party or Producing Non-Party that privileged material or information has been inadvertently produced, all such information, and all copies thereof, shall be returned promptly to the Producing Party or Producing Non-Party, and the Receiving Party shall not use such information for any purpose until further Order of this Court. The Receiving Party may move this Court for an Order compelling the production of the privileged material and information, but the Motion shall not assert as a ground for entering such an Order the fact or circumstances of the inadvertent production. Any analyses, memoranda or notes which were internally generated based upon such inadvertently-produced material or information shall be destroyed.

**9.**    **Filing with the Court**

    9.1    Documents containing Protected Material shall not be filed with the Clerk of this Court.

11

9.2    Documents containing Protected Material requiring this Court's review shall be submitted to Chambers in a sealed, opaque container or envelope, bearing the following, on the outside thereof:

(a)    The designation "Filed Under Seal;"

(b)    The case heading of this lawsuit - including the caption and the case number;

(c)    The title of the Pleading, Motion or Response to which the submitted Protected Material pertains; and

(d)    The contact information of the counsel submitting the documents.

9.3    The Producing Party shall maintain the original Protected Material, intact, for any further review.

9.4    A copy of the Pleading, Motion or Response redacted of Protected Material shall be filed with the Clerk of Court for the record.

9.5    All Parties shall comply with the applicable provisions of the Local Civil Rules of the United States District Court for the Southern District of New York, and of the United States Court of Appeals for the Second Circuit, relating to the filing of Protected Material.

9.6    In the event a non-party seeks access to Protected Material that has been filed pursuant to this Paragraph 9, the non-party must petition the Court, with notice to all Parties, for modification of this Protective Order upon a showing of good cause.

10.    **Disclosure to Experts**

10.1    All Experts qualified under Paragraphs 5 and 6 may be given access to Protected Material provided that each Expert has been approved for access as follows:

(a)    The Party seeking approval shall provide all Parties with (i) a resume, or *curriculum vitae*, providing the Expert's name, current address and current and recent (within the

past ten (10) years) employment and consultations within the technical field of the subject of the lawsuit, including a brief description of the subject matter of each such employment or consultation, and (ii) a signed copy of Exhibit A, attached hereto, confirming the Expert's understanding and agreement to abide by the terms of this Protective Order; and

(b)     Within ten (10) days after receipt of the materials described in Paragraph 10.1 (a), any Party may object in writing to the Expert having access to the Protected Material. Failure to object during such period shall be deemed approval. The Party must respond in writing to any objection within five (5) business days. If the Parties are unable to reach agreement after receipt of the written objection pursuant to this Paragraph, the Party objecting must file a motion with this Court seeking an Order to deny disclosure to the Expert within seven (7) business days of the failure to reach agreement. No disclosure to the proposed expert of any Protected Material shall occur prior to the end of the time period to object or, if objection is made and not resolved, prior to entry of an Order by the Court permitting such disclosure.

11.    **No Prejudice**

11.1    Entering into, agreeing to and/or producing or receiving Protected Material or otherwise complying with the terms of this Protective Order shall not:

(a)     Operate as an admission by any Party or non-party that any particular Protected Material contains or reflects trade secrets, proprietary or commercially-sensitive information, or any other type of confidential information;

(b)     Prejudice in any way the rights of any Producing Party or Producing Non-Party to object to the production of documents they consider not subject to discovery;

13

(c)     Prejudice in any way the rights of any Party to object to the authenticity or admissibility as evidence of any document, testimony or other evidence subject to this Protective Order;

(d)     Prejudice in any way the rights of a Party to seek determination by this Court whether any Discovery Material should or should not be subject to the terms of this Protective Order;

(e)     Prejudice in any way the rights of any Producing Party or Producing Non-Party to petition this Court for a further protective order relating to any purportedly Protected Material; or

(f)     Prevent the Parties to this Protective Order from agreeing in writing or on the record during a deposition or hearing in this lawsuit to alter or waive the provisions or protections provided for herein with respect to any particular Protected Material.

12.     **Modification**

12.1    Nothing contained herein shall preclude any Party from utilizing, as it wishes, whether or not designated as Protected Material, any documents, materials or information which:

(a)     Was already known to the Receiving Party by lawful means prior to acquisition from, or disclosure by, the Producing Party in this lawsuit; or

(b)     Is or becomes publicly known through no fault or act of the Receiving Party; or

(c)     Is rightfully received by the Receiving Party from a non-party which has authority to provide such Protected Material and without restriction as to disclosure.

13.     **Joinder or Impleader of Additional Parties.**

13.1    In the event additional parties join or are joined in this lawsuit, they shall not have access to Protected Material until the newly-joined party or its counsel has executed and, at the

request of any Party, filed with this Court its agreement to be fully bound by this Protective

Order or an alternative order that is satisfactory to all Parties and this Court.

14.     **Close of this Litigation.**

14.1     Unless otherwise ordered by this Court, the provisions of this Protective Order

shall govern discovery and other pre-trial and trial proceedings in this lawsuit. Nonetheless, each

of the Parties hereto shall be entitled to seek modification of this Protective Order by application

to this Court on notice to the other Parties hereto for good cause. The provisions of this

Protective Order shall, absent written permission of the Producing Party or further Order of the

Court, continue to be binding throughout and after the conclusion of this lawsuit. Within sixty

(60) days after receiving notice of the entry of an Order, judgment, or decree finally disposing of

and concluding this lawsuit, including any appeals therefrom, all persons having received

Protected Material shall destroy or return to counsel for the Producing Party such Protected

Material and all copies thereof and shall destroy all summaries, excerpts, and all other documents

and things, including electronic documents, images, spreadsheets, and other electronic storage

containing, summarizing, or in any way disclosing information from Protected Material of any

other Producing Party or Producing Non-Party. Counsel shall make reasonable good faith efforts

to insure that any Experts they have retained abide by this Paragraph 14. Counsel shall provide a

certification that, pursuant to this Paragraph 14, all Protected Materials have been destroyed or

returned and all documents and things required to be destroyed have been destroyed. All

material returned to the Parties or their counsel by this Court likewise shall be disposed of in

accordance with this Paragraph 14. In the event that any Party is dismissed from or settles out of

this lawsuit before its final and complete resolution, the provisions of this Paragraph 14 shall

apply to that Party within sixty (60) days after such dismissal or settlement from this lawsuit.

15

**15.   Challenges to Designation.**

15.1    During the pendency of this lawsuit, any Party or non-party objecting to the designation of any Discovery Material as Protected Material may, after making a good faith effort to resolve any such objection, move this Court for an Order vacating the designation. While such Motion is pending, the Discovery Material in question shall be treated as if it has been properly designated pursuant to this Protective Order.  No provision of this Protective Order is intended to shift the burden of establishing confidentiality from the Party or non-party asserting or claiming such confidentiality.

**16.   Communication of Protected Material to Client.**

16.1    Nothing herein shall bar or otherwise restrict an attorney who is a qualified recipient of Protected Material under the terms of this Protective Order from rendering advice to his or her client with respect to this lawsuit and, in the course thereof, from generally relying upon his or her examination of Protected Material.  In rendering such advice or in otherwise communicating with the client, the attorney shall not disclose the specific content of any Protected Material of any other person or Party where such disclosure would not otherwise be permitted under the terms of this Protective Order.

**17.   Disclosure to Further Parties.**

17.1    Any Party may petition this Court for a ruling that certain Discovery Material to be produced to any one or more Parties to this lawsuit should not be disclosed to another Party or their counsel, on the grounds that such material is not discoverable by that Party.

16

**IT IS SO ORDERED.**

Dated: _December 12, 2006_

_____
United States District Judge

AGREED TO:

Dated: ~~October~~ _December 1_, 2006

**BUCHANAN INGERSOLL & ROONEY PC**

_____
Leslie J. Harris (LH 1290)
One Chase Manhattan Plaza, 35th Floor
New York, New York 10005-1417
(212) 440-4400

Charles R. Bruton (CB 1273)
Buchanan Ingersoll & Rooney PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985
(215) 665-8700 (tel)
(215) 665-8760 (fax)

Patrick C. Keane (PK 0928)
George A. Hovanec, Jr. (GH 5870)
1737 King Street
Suite 500
Alexandria, VA 22341
(703) 836-6620

_Counsel for Plaintiffs_
_Schindler Elevator Corp. and Inventio AG_

17

24

Dated: October_____, 2006

**LEADER & BERKON LLP**

S. Alyssa Young (SY 6705)
James K. Leader (JL 9417)
630 Third Avenue
New York, NY 10017
(212) 486-2400

**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**

Mark L. Levine
Sean W. Gallagher
Alan E. Littmann
54 W. Hubbard Street
Suite 300
Chicago, IL 60610
(312) 494-4400

*Counsel for Defendant*
*Otis Elevator Company*

18

**25**

**EXHIBIT A**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHINDLER ELEVATOR CORPORATION, and INVENTIO AG, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 06-CV-05377 (RCC) ) |
| v. | ) ) |
| OTIS ELEVATOR COMPANY, | ) ) |
| Defendant. | ) ) ) |

---

## UNDERTAKING TO BE BOUND BY STIPULATED PROTECTIVE ORDER

I, _____, of _____, in

order to be provided access to Protected Material under the Protective Order entered by the

United States District Court for the Southern District of New York in *Schindler Elevator

Corporation, and Inventio AG v. Otis Elevator Company*, Case No. 06-CV-05377(RCC),

represent and agree as follows:

1.      I have read the Protective Order and am familiar with its terms.

2.      I am seeking to view information designated: _____ .

3.      For any and all information designated "Confidential" or "Highly Confidential -

Outside Counsel's Eyes Only" to which I am given access in connection with this lawsuit, I

represent that I am qualified under the Protective Order to have such access, and I agree to be

**26**

bound by the provisions of the Protective Order, including, without limitation, the provisions regarding use and disclosure of Protected Material (as defined in the Protective Order).

      4.      I consent to the exercise of jurisdiction over me by this Court with respect to the Protective Order.

      I declare under penalty of perjury pursuant to the laws of the United States of America that the above is true and correct.

      Executed this _____ Day of _____, _____.

_____
Signature

_____
Printed Name

_____
Title or Position

_____
Employer

2

**27**

# USPTO Patent Full-Text and Image Database

**Home**   **Quick**   **Advanced**   **Pat Num**   **Help**

**Bottom**   **View Cart**

*Searching US Patent Collection...*

**Results of Search in US Patent Collection db for:**
**(IN/"friedli, paul" AND (AN/inventio OR AN/iventio))**: 27 patents.
*Hits **1** through **27** out of **27***

Jump To [        ]

Refine Search [ IN/"friedli, paul" and (AN/inventio OR AN/iventio) ]

| | PAT. NO. | Title |
|---|---|---|
| 1 | 7,370,732 | Method and device for automatic checking of the availability of an elevator installation |
| 2 | 7,338,176 | Elevator installation with information representation on a shaft door |
| 3 | 7,319,968 | Procedures, system and computer program product for the presentation of multimedia contents in elevator installations |
| 4 | 7,319,966 | Method of communicating information for elevator users |
| 5 | 7,266,505 | Procedures, system and computer program product for the presentation of multimedia contents in elevator installations |
| 6 | 7,182,174 | Method and system for emergency evacuation of building occupants and a method for modernization of an existing building with said system |
| 7 | 7,021,428 | Elevator floor call panel having dual operating modes |
| 8 | 6,935,465 | Method for modernization of an elevator installation |
| 9 | 6,892,861 | Destination call control for modernizing elevator installation |
| 10 | 6,868,945 | Method for controlling an elevator utilizing a mobile telephone |
| 11 | 6,801,792 | Method for communication with a transportation system |
| 12 | 6,772,862 | Transportation system operation using identification codes |
| 13 | 6,394,231 | Method of communication of travel destination information between user and a plural vehicle transport system |
| 14 | 6,382,363 | Method for preselecting a destination floor in an elevator installation |
| 15 | 6,315,083 | Transportation system control with user input of travel destination designations |
| 16 | 6,223,160 | Apparatus and method for acoustic command input to an elevator installation |
| 17 | 6,065,570 | Control system for a plurality of groups of lifts with destination call control system |
| 18 | 6,062,346 | Call register and indicating equipment arranged on floors for elevators |
| 19 | 6,011,839 | Control device for a lift |
| 20 | 5,932,853 | Identification system for a lift installation |

21  5,689,094  T  Elevator installation
22  5,305,198  T  Method and apparatus for the immediate allocation of target calls in elevator groups based
                  upon operating costs and variable bonus and penalty point factors
23  4,991,694  T  Group control for elevators with immediate allocation of destination calls
24  4,518,909  T  Set value transmitter for a drive regulation apparatus
25  4,488,220  T  Circuit arrangement for inputting control signals into a microcomputer system
26  4,484,264  T  Multiprocessor system
27  4,434,466  T  Apparatus for controlling the access of processors at a data line

