IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INVENTIO AG,                    :    CIVIL ACTION
                                :    NO. 08-874-ER
          Plaintiff,            :
                                :
          v.                    :
                                :
THYSSENKRUPP ELEVATOR           :
AMERICAS CORPORATION,           :
et al.,                         :
                                :
          Defendants.           :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    OCTOBER 8, 2009


     Presently before the Court is Defendants ThyssenKrupp
Elevator Americas Corp., ThyssenKrupp Elevator Corporation, and
Thyssenkrupp Elevator Manufacturing Incorporated's (collectively
referred to as "Defendants") motion to compel answers to
interrogatory no. 7 and document requests nos. 2, 50, and 51
(doc. no. 33).[1]  Defendants move to compel Plaintiff to produce
certain letters and deposition transcripts generated during
patent infringement litigation involving Plaintiff that is
pending in the Southern District of New York.  Furthermore,
Defendants request that Plaintiff produce all nonprivileged
documents contained in its internal patent prosecution files with

---

[1]     On August 3, 2009, the Court entered an order granting
Defendants' motion only to the extent interrogatory no. 7 is
concerned (doc. no. 46).

respect to the patents-in-suit.  For the reasons that follow, the remainder of Defendants' motion with respect to document requests nos. 2, 50, and 51 will be granted in part, and denied in part.

I.   BACKGROUND

Plaintiff Inventio AG ("Plaintiff") brought the instant action against Defendants for patent infringement.  The two patents in controversy are as follows: (1) United States Patent No. 6,892,861, entitled "Destination Call Control for Modernizing Elevator Installation" ("Patent 861"); and (2) United States Patent No. 6,935,465, entitled "Method for Modernization of an Elevator Installation" ("Patent 465").  Defendants assert counterclaims of non-infringement and invalidity with respect to both Patent 861 and Patent 465.

A.   The Patents-in-Suit

Patent 465 and Patent 861 comprise the method and device, respectively, for the modernization of an elevator system.  The "modernization" of an elevator system involves the exchange of components to incorporate updated technology. (Defs.' App. to Mot. to Comp. p. 142 (citing Patent 861 Abstract.))  This modernization process generally is executed in stages wherein the various components of an elevator system, such as the elevator cars, drives, and floor call transmitters, are updated in staggered phases.  (Id. at 146 (citing Patent 861 col.

2

1:10-20.))  The system for modernization contemplated by Patent 465 and Patent 861 constitutes a type of "retro-fitting" in which the modernization device is integrated into the existing elevator components in order to increase the efficiency of the modernization process.

Patent 861 relates to modernizing the "destination call report" of an elevator system.  A destination call report includes both the boarding floor and the destination floor of the particular passenger.  (Id. (citing Patent 861 col. 2:9-18.)) Patent 861 includes an intermediary function between the "elevator control" and the elevator system "computing unit" by which Patent 861 receives a signal that is processed in accordance with a computer program, which documents the behavior of the various call signals that then are input into "travel time profiles."  (Id. (citing Patent 861 col. 2:40-64.))  Patent 861 then compares an incoming indication signal with the available travel time profiles to determine which profiles agree with the detected signal, thereby allowing the device to assign the appropriate time travel profile to the detected signal.  (Id. at 147 (citing Patent 861 col. 3:1-34.))

B.   The New York Litigation

In July 2006, Plaintiff, along with Schindler Elevator Corporation ("Schindler"), commenced an action for patent infringement against Otis Elevator Company in the United States

3

District Court for the Southern District of New York, <u>Schindler Elevator Corp., et al. v. Otis Elevator Co., et al.</u>, Case No. 06-cv-5377 (S.D.N.Y. 2006) (the "New York Action"), with respect to U.S. Patent No. 5,689,094 ("Patent 094").  Patent 094 relates to elevator installation with a destination dispatching system, and is the equivalent of European Patent EP0699617.

In a destination dispatching system, elevator passengers specify their destination to the elevator system remotely.  Patent 094 constitutes a specific type of destination dispatching system in which the desired destination floor is transmitted automatically without requiring any personal action by the passenger.  This system entails an "information transmitter" that is carried by the passenger and a "recognition device" that is mounted in the elevator system, which sends the information to a "control device."  The control device then uses the pre-programmed information to allocate the appropriate elevator to respond to the elevator call.

C.    <u>Document Request Nos. 50 and 51</u>

On March 31, 2009, Defendants served document request nos. 50 and 51 upon Plaintiff, which requested as follows:

> 50.  All letters (including attachments of exhibits) sent to the Court or opposing counsel that concern Paul Friedli in the case of *Schindler Elevator Corporation and Inventio AG*, Case No. 06-cv-05377 (CM)(THK) previously pending in the United States District Court for the Southern District of New York.

4

51.  A copy of the following deposition transcripts and accompanying exhibits taken in the *Schindler Elevator Corporation and Inventio AG*, Case No. 06-cv-05377 (CM)(THK) previously pending in the United States District Court for the Southern District of New York: Paul Friedli, Hans Bloechle, Sula Moudakis, Edward Nowel, Nicole Saloio, any other deposition that mentions Paul Friedli, and Dr. Andrew Gaussmann.

(<u>Id.</u> at 102-103.)  Plaintiff responded to each document request as follows:

Inventio incorporates its general objections by reference as if fully stated herein.  Inventio further specifically objects to this request on the ground that it calls for the production of documents that are neither relevant, nor likely to lead to admissible evidence.  The referenced lawsuit does not concern the patents or technology at issue in this lawsuit, and thus there is no nexus between the request and the claims and defenses in this lawsuit.  Inventio further specifically objects to this request to the extent that it calls for the production of documents that are subject to a confidentiality order entered into the referenced lawsuit.  Inventio intends to act in accordance with the terms of the confidentiality order entered into the referenced lawsuit.

(<u>Id.</u> at 103.)[2]

Defendants made two additional inquiries to Plaintiff concerning the requested documents, but Plaintiff maintained its refusal to produce the documents on the basis of relevance. (Defs.' Mot. to Comp. 8.)

D.   <u>Document Request No. 2</u>

On March 31, 2009, Defendants served document request

---

[2]    In response to document request no. 50, Plaintiff further stated that "Inventio further specifically objects to the extent that the requested documents were equally accessible to the Defendants."  (<u>Id.</u>)

no. 2 upon Plaintiff, which requested as follows:

> All documents contained in the files relating to the
> patent applications for the Inventio patents and patent
> applications,[3] including all prosecution histories and
> prior art.

(Defs.' Appx. to Mot. to Comp. 106.)  Plaintiff responded as
follows:

> Subject to the General Objections, Inventio will
> produce relevant, non-privileged documents in its
> possession, custody or control, to the extent they
> exist.

(Id.)

Plaintiff responded to this request by producing
incomplete foreign patent application files and only publicly-
filed documents from the U.S. Patent Office with respect to the
U.S. patent applications (the "Patent Office Files").  (Id. at
249-250.) Defendants prompted Plaintiff to disclose all its
internal records with respect to the U.S. patent applications as
well as all non-confidential files concerning the foreign patent

---

[3]     The term "Inventio patents and patent applications" was
defined in Document Request No. 2 as "European patent application
01811233 filed December 17, 2001 and European patent application
01811234 filed December 11, 2002, and any patent application or
patent asserting priority from such European patent applications,
as well as any continuation, continuation-in-part, divisional, or
any other patent or patent application (including rejected,
abandoned, or pending applications) derived in whole or in part
from any of the foregoing applications, and all foreign
counterpart patents or patent applications to any such patent or
patent applications (including rejected, abandoned, or pending
applications)"). (Id. at 243.)

applications.  Plaintiff denied the request for its internal
files concerning the U.S. patent applications, but stated it
would "produce relevant, non-privileged documents shortly,
subject to the protective order." (<u>Id.</u> at 82.)  Subsequent to
the entry of the protective order, Plaintiff did provide certain
documents from its internal patent files along with an associated
privilege log.

II.   ANALYSIS

    A.   <u>Legal Standard</u>

       Rule 26 of the Federal Rules of Civil Procedure governs
the scope of discovery in federal litigation.  Under the
procedures set out under the rule, there are three concentric
circles of discoverable material which direct different
obligations upon the parties depending upon the nature of the
information involved.  First, Rule 26 envisions the exchange by
the parties of information that is integral to the litigation,
such as the identities of individuals likely to have discoverable
information and copies of documents which support a claim or
defense, without the necessity of a discovery request.  Fed. R.
Civ. P. 26(a).[4]  Second, Rule 26 provides for the disclosure of

_____

    [4]   Rule 26(a)(1)(A) provides:

    In General.  Except as exempted by Rule
26(a)(1)(B) or as otherwise stipulated or ordered
by the court, a party must, without awaiting a

nonprivileged information that is "relevant to any party's claim

or defense" upon a request from the party seeking the

discoverable material.  Id. 26(b)(1).[5]  Third, Rule 26 permits a

---

discovery request, provide to the other parties:

> (i) the name and, if known, the address and telephonenumber of each individual likely to have discoverable information – along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

> (ii) a copy - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

> (iii) a computation of each category of damages claimed by the disclosing party - who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

> (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Id. (a)(1)(A).

[5]      Rule 26(b)(1) provides:

> Scope in General.  Unless otherwise

court to order broader discovery of "any matter relevant to the subject matter involved in the action," where such information is likely to lead to the discovery of admissible evidence and the party making the discovery request can establish "good cause" to support the request.  Id.

     For purposes of discovery, relevancy is broadly construed. See Pacitti v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999) (citing In re Madden, 151 F.3d 125, 128 (3d Cir. 1998)); Solae, LLC v. Hershey Canada, Inc., 557 F. Supp. 2d 452, 460 (D. Del. 2008) (noting that Rule 26 provides liberal discovery of nonprivileged facts).  Although the scope of discovery is broad, it is not unlimited.  The probative value of the information requested should be balanced against the costs and burdens imposed upon the producing party.  See Fed. R. Civ. P.

----

          limited by court order, the scope of discovery is
          as follows: Parties may obtain discovery regarding
          any nonprivileged matter that is relevant to any
          party's claim or defense - including the existence,
          description, nature, custody, condition, and
          location of any documents or other tangible things
          and the identity and location of persons who know
          of any discoverable matter.  For good cause, the
          court may order discovery of any matter relevant to
          the subject matter involved in the action.
          Relevant information need not be admissible at the
          trial if the discovery appears reasonably
          calculated to lead to the discovery of admissible
          evidence.  All discovery is subject to the
          limitations imposed by Rule 26(b)(2)(C).

Id.

26(b)(2)(C) (instructing the court to limit discovery if it determines that, inter alia, "the discovery sought is unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit"); State Farm Mutual Auto. Ins. Co. v. New Horizont, Inc., 254 F.R.D. 227, 233 n.3 (E.D. Pa. 2008) (finding that depositions that were overbroad as to both the testimony to be taken and documents to be produced had to be narrowed despite a showing of good cause); see also Emerson Elec. Co. v. Le Carbone Lorraine, S.A., Civ. A. No. 05-6042, 2009 WL 435191, *1 (D.N.J. Fed. 18, 2009) (noting that Rule 26(b)(2)(C) imposes a "rule or proportionality" which requires discovery to be restricted where the burden or expense outweighs the proposed benefit or the information can be obtained from another, less burdensome, source).  Once an objection is raised as to relevancy, the party seeking discovery bears the burden of demonstrating the relevance of the sought information to either the claims, defenses, or the subject matter of the litigation.  See Fed. R. Civ. P. 26(b)(1).

   B.   Overlap between New York Action and patents-in-suit

        First, an immediate connection exists between Patent 094, which is the subject to the New York Action, and the patents-in-suit because both possess a common inventor, Paul Friedli ("Friedli").  Although Friedli's status as the sole inventor of both patents is not dispositive, in each case Friedli

assigned the relevant patent to Plaintiff.  Therefore, information concerning the relationship between Friedli and Plaintiff in the development, implementation, and product sales concerning both patents could lead to the discovery of admissible evidence in this case.  Moreover, as discussed in further detail below, these patents involved tangentially related elevator technology, such that Friedli's unique knowledge with respect to the development of each patent is germane to the instant infringement litigation.

Second, a technological nexus exists between Patent 094 and the patents-in-suit concerning the technology of "recognition devices."  The intersection between Patent 094 and the patents-in-suit involves the concept of "identification codes."  These identification codes allow the elevator to automatically assign a predetermined destination floor without any additional information being input by the passenger.  Identification codes are central to the technology comprising Patent 094 because the identification codes are the individualized data provided by each passenger which is encoded with that passenger's particular destination information.  The recognition device which is at the heart of Patent 094 relies upon the identification codes to allocate the appropriate elevator to the corresponding identification code.

The concept of identification codes is referenced in

11

both Patent 465 and Patent 861.[6]  For the patents-in-suit,

identification codes serve an identical function to the

destination call reports, i.e., conveying the boarding and

destination floors.  (See Defs.' Appx. to Mot. to Comp. 142

(citing Patent 861 Abstract) (the destination call control

includes a floor terminal for the "input destination call reports

or for the recognition of identification codes of users"));

Identification codes are referred to as a proxy for destination

call reports throughout the patents-in-suit.  (See id. at 146

(citing Patent 861 col. 2:10-12) ("A passenger inputs a

destination call at the floor terminal or an identification code

of the passenger is recognized at the floor terminal")); (id.

(quoting Patent 861 col.2 28-33) ("The destination call control

comprises at least one computing unit which evaluates the

destination call reports or unambiguously identifies passengers

on the basis of identification codes and assigns a predetermined

destination floor to identified passengers")); (id. at 148

(citing Patent 861 col. 6:12-59) ("The computer program product

for association of recognized identification codes with

destination floors records a recognition time of a recognized

identification code. . .")).

     Moreover, the specifications of both Patent 465 and

_____

     [6]     The patents for both Patent 465 and Patent 861 contain
essentially identical language and terms of art, therefore
reference is made only to the terms contained in Patent 861.

Patent 861 refer to EP 0699617 ("EP 617"), which is the European equivalent of Patent 094.  The references to EP 617 are intended to show that the concept of using identification codes through a recognition device in an elevator system was known in the prior art.  The fact that EP 617, and by extension Patent 094, is referenced in both applications for the patents-in-suit demonstrates that there is a tangible connection between the technology at issue in each suit to justify a finding of relevance.

C.    Letters from the New York Action (Doc. Request No. 50)

The letters concerning Friedli generated during the New York Action (the "Friedli Letters") are relevant on the following grounds: (1) Friedli is the sole inventor of the patents in the New York Action and the patents-in-suit; (2) Friedli was designated by plaintiff as having information relevant to the present litigation; and (3) the New York Action involved related elevator technology.  The instant litigation focuses on Friedli's development of the patents-in-suit as well as his relationship with Plaintiff in the context of assignment of the patents-in-suit.  Defendants assert that the Friedli Letters contain statements made by or about Friedli which are relevant to Friedli's background and the business relationship between Friedli and Plaintiff, and could relate to claim term meaning and infringement with respect to the patents-in-suit.

13

The mere fact that both the New York Action and the instant litigation involve similar patents is not itself sufficient for a finding of relevancy pursuant to Rule 26. See Wyeth v. Impax Labs., 248 F.R.D. 169, 170-71 (D. Del. 2006) (refusing to a grant discovery request for all documents pertaining to previous patent litigation as overly broad and rejecting the contention that the relevancy standard was satisfied merely because both cases involve the same patents). Here, however, Defendants have made a specified showing that their targeted discovery request with respect to the Friedli Letters has a direct bearing on the claims and defenses asserted in the instant litigation sufficient to satisfy Rule 26(b)(1).

D.   Deposition Transcripts from New York Action (Document Request No. 51)

Document request no. 51 seeks production of the depositions, and the associated exhibits, of Friedli, Hans Bloechle ("Bloechle"), Sula Moudakis ("Moudakis"), Edward Nowel ("Nowel"), Nicole Saloio ("Saloio"), any other deposition that mentions Friedli, and Dr. Andrew Gaussmann ("Gaussmann") (collectively, the "New York Depositions").  As discussed in further detail below, the New York Depositions were designated by Plaintiff as confidential pursuant to a protective order entered in the New York Action and the parties will need to consult with the District Court for the Southern District of New York before

14

any documents are produced.  As such, the Court will not grant immediate access to the New York Depositions, but it can be determined at this stage which of the New York Depositions meet the relevancy threshold.  While there is sufficient overlap between the New York Action and the instant litigation, this is not sufficient to render every deposition produced in the New York Action relevant to these proceedings.  See Wyeth, 248 F.R.D. at 170-71.

   With respect to relevancy under Rule 26, and subject to the protective order in the New York Action, the findings of relevancy as to the New York Depositions are as follows:

   • Friedli Deposition:[7] Friedli's deposition testimony is relevant to his background, his working relationship with Plaintiff, his work involving identification code technology, and terminology and claim construction involving the patents-in-suit. Friedli undoubtedly will be called as a witness in the present action.  Therefore, Defendants have demonstrated that good cause exists pursuant to Rule 26(b)(1) since the Friedli Deposition is relevant to the subject matter in the instant litigation and could lead to admissible evidence in the present case.

   • Saloio Deposition: Saloio is the sales manager for all elevator modernization products at Schindler.  Plaintiff

---

[7]   Defendants' request for any deposition from the New York Action referencing Friedli is overly broad, and no showing has been made that such far-reaching deposition testimony would be integral to the present case.

designated Saloio as a person knowledgeable about products and services sold by Schindler in the current suit.  In the New York Action, Saloio sent e-mails evidencing Friedli's expertise and business relationship with the Plaintiff.  Due to the position held by Saloio, her deposition testimony from the New York Action may reveal important information about Friedli's business relationship with Schindler and Plaintiff.  Plaintiff intends to use information regarding the sales of Schindler products that incorporate the patents-in-suit to rebut Defendants' obviousness defense, and Defendants intend to call Saloio as a witness in this matter.  Thus, this deposition is relevant to the claims and defenses in this case, thereby satisfying the relevancy requirement under Rule 26(b)(1).

     • _Gaussmann Deposition_: Gaussmann serves as vice director of Plaintiff.  Plaintiff designated Gaussmann as an individual knowledgeable concerning the implementation of the subject matter of the patents-in-suit, prosecution of the patents-in-suit and related counterparts, and the information set forth in the answers to Defendants' interrogatories.  Defendants do not allege specifically how Gaussmann's deposition testimony in the New York Action contains information that is directly relevant to the instant litigation, but based upon Gaussmann's supervisory role and his generalized knowledge on the subject matter at issue, his prior deposition testimony could lead to the

16

discovery of admissible evidence.  The nature of Gaussmann's job, and the corresponding critical knowledge he possesses, is sufficient to find that his former testimony could lead to discoverable evidence in this case.  As with Saloio, Defendants expect to have Gaussmann testify in the instant patent infringement litigation.  Accordingly, Defendants have made the necessary showing of good cause to satisfy their burden under Rule 26(b)(1).

   • <u>Moudakis, Nowel and Bloechle Depositions</u>: Defendants allege that the deposition transcripts of Moudakis, Nowel, and Bloechle are all relevant to the business relationship between Friedli and Plaintiff, and specifically contain information with respect to the consulting arrangements between Friedli and Plaintiff.  Defendants fail to make a particularized showing as to the exact relationship between the subject matter of these depositions in the New York Action and the present action.  Most importantly, Defendants do not intend to call any of these individuals to testify in the current proceeding.  Therefore, since the requested information is not relevant to the claims or defenses, but only perhaps to the subject matter of the litigation, Defendants cannot meet the good cause threshold provided by Rule 26 with respect to these matters.  <u>See</u> Fed. R. Civ. P. 26(b)(1).

   E. <u>Scope of New York Action Protective Order</u>.

Plaintiff has indicated that the New York Depositions, and the accompanying exhibits, as well as certain of the Friedli Letters, were designated as confidential and are subject to the stipulated confidentiality order entered in the New York Action (the "Protective Order"). Plaintiff has also asserted that a number of the New York Depositions concern witnesses of Schindler and not the Plaintiff, and therefore, Plaintiff does not have standing or authority to waive Schindler's right to enforcement of the Protective Order.

First, the relationship between Plaintiff and Schindler is not entirely clear with respect to whether Plaintiff can produce the requested documents. Plaintiff and Schindler are separate but related entities, since both are owned by the same parent company, Schindler Holding Ltd. Since Plaintiff and Schindler are distinct entities, the documents requested must be within Plaintiff's custody and control in order to be discoverable. See Fed. R. Civ. P. 34(a)(1) (requiring production of items in "party's possession, custody, or control").

Second, this Court is without authority to alter the Protective Order entered by another court by ordering production of any documents within the scope of the Protective Order. Therefore, the following steps are necessary to determine whether to compel production of the requested documents: (1) Plaintiff shall submit to Defendants a privilege log identifying exactly

18

which documents are subject to the Protective Order; (2) the
parties shall submit this privilege log to the Court to determine
the relevancy of these documents to the instant matter; (3) the
Court shall categorize these documents into confidential and non-
confidential documents on the basis of whether the documents are
subject to the Protective Order; and (4) Plaintiff, or the
parties jointly, shall return before Judge McMahon, who is the
presiding judge over the New York Action, in order to seek relief
from the Protective Order for the documents deemed to be
confidential.

  F. <u>Document Request No. 2</u>

   Plaintiff's argument that it has satisfied its burden
pursuant to Rule 34 by producing copies of the Patent Office
Files in lieu of its internal records is unavailing.  Clearly,
Plaintiff's internal files concerning the patents-in-suit are
relevant to this infringement action and likely could contain
information not available in the Patent Office Files that is
relevant to the present dispute.  In <u>Golden Valley Microwave
Foods, Inc. v. Weaver Popcorn Co., Inc.</u>, the plaintiff in a
patent infringement action requested all documents concerning the
defendant's patent applications.  132 F.R.D. 204, 211 (N.D. Ind.
1990).  The defendant produced only applications actually filed
with the patent office and withheld all other internal documents
related to the patent applications.  <u>Id.</u>  The court granted

19

plaintiff's motion to compel on the basis that the relevancy of
the draft patent applications and related internal documents was
"apparent."  Id. at 212-13.

In this case, Plaintiff seeks to produce only copies of
the Patent Office Files without affording Defendants an
opportunity to review Plaintiff's internal records to discern
whether any additional relevant information is available.
Moreover, Plaintiff fails to explain how its purported
inconvenience of reviewing and redacting its own files is
contradictory to the underlying purpose of Rule 34, since the
discovery system necessitates a party to review its own material
and provide properly revised copies to its adversary.

Similarly, with respect to the foreign patent
application files, Plaintiff cannot demonstrate that these
materials would not be conducive to discovering admissible
evidence in this matter.   Thus, these foreign patent application
files meet the threshold of relevancy required under Rule 26.

Certainly, Plaintiff is free to object to production of
any specific documents contained in its internal files on the
basis of privilege, but a blanket statement that all internal
documents in the patent application files are non-discoverable is
inconsistent with the underlying purpose of Rule 34.

G.     Request for Fees and Expenses

Defendants seek recovery of their relevant fees and

expenses in prosecuting the instant motion pursuant to Fed. R. Civ. P. 37(a)(5) on the grounds that Plaintiff lacked any substantial justification for failure to respond to Defendants' discovery requests.  Here, Plaintiff's refusal to comply with document request nos. 50 and 51 was substantially justified on the good faith basis that the requests were either subject to the Protective Order or not sufficiently relevant to the instant action.  Plaintiff can assert a good faith basis for seeking clarification by the Court on these issues prior to disclosure. Plaintiff's argument with respect to its failure to comply with document request no. 2 is more tenuous, although Plaintiff has provided certain documents in response to document request no. 2 subsequent to Defendants' motion.  Therefore, it is inappropriate to grant the request for fees and expenses pursuant to Rule 37(a)(5).

III. CONCLUSION

        For these reasons, Defendants' motion to compel answers to document requests nos. 2, 50, and 51 will be granted in part, and denied in part.  An appropriate order will issue.

21

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


INVENTIO AG,                    :    CIVIL ACTION

                                :    NO. 08-874-ER

        Plaintiff,              :

                                :

    v.                          :

                                :

THYSSENKRUPP ELEVATOR           :

AMERICAS CORPORATION,           :

et al.,                         :

                                :

        Defendants.             :


**O R D E R**


        **AND NOW**, this **8th** day of **October, 2009,** following a
hearing, Defendants' Motion to Compel Answers to Interrogatory
No. 7 and Document Requests Nos. 2, 50, and 51 (doc. no. 33) is
**GRANTED in part, and DENIED in part**.  It is hereby **ORDERED** as
follows:

        1.    Plaintiff shall produce all nonprivileged

              documents in response to Document Request No. 2

concerning its files relating to the patent applications for the Inventio patents (as defined therein).

2.  Plaintiff shall provide to the Court and Defendants a log of any documents which are responsive to document request nos. 50 and 51 and which were designated as confidential pursuant to the Stipulated Protective Order entered by the District Court for the Southern District of New York in Schindler Elevator Corp., et al. v. Otis Elevator Co., et al., Case No. 06-cv-5377 (S.D.N.Y. 2006) (doc. no. 22) by **Friday, October 23, 2009.**

**AND IT IS SO ORDERED.**

 S/Eduardo C. Robreno

**EDUARDO C. ROBRENO, J.**