# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------

INVENTIO AG, )
)
       Plaintiff )
)     Civil Action No. 1:08-cv-00874 RGA
v. )
)
THYSSENKRUPP ELEVATOR AMERICAS )     Special Master C. J. Seitz
CORPORATION; )
THYSSENKRUPP ELEVATOR CORPORATION, )
and; )
THYSSENKRUPP ELEVATOR )
MANUFACTURING INCORPORATED )
)
       Defendants. )

---------------------------------------------------------------

| |
|---|
| REDACTED<br>PUBLICLY FILED VERSION |

## MEMORANDUM IN SUPPORT OF DEFENDANTS THYSSENKRUPP'S FIFTH MOTION TO COMPEL

Public version filed: February 27, 2013

February 15, 2013

WOMBLE CARLYLE SANDRIDGE &
RICE, LLP
James M. Lennon (#4570)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel: (302) 252-4320
jlennon@wcsr.com

FROST BROWN TODD LLC
David E. Schmit (admitted pro hac vice)
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
Tel: (513) 651-6985
dschmit@fbtlaw.com

Attorneys for Defendants

## TABLE OF CONTENTS

I.  STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ......................... 1

II.  BACKGROUND ................................................................................................................. 1

III.  SUMMARY OF THE ARGUMENT ............................................................................ 3

IV.  ARGUMENT ...................................................................................................................... 3

    A.  The 8/13/2012 Schindler Elevator document subpoena documents (Category 1) – A1-A8 ..................................................................................... 3

    B.  Inventio's amended response to ThyssenKrupp's Interrogatory No. 4 (Category 2) ........................................................................................................ 4

    C.  Inventio's prior interrogatory response "verifications" (Category 3) – A16-A22 ...................................................................................................................... 6

    D.  Inventio's Responses to ThyssenKrupp's Fifth Set of Document Requests Nos. 58-67 (Category 4) A23-A33 ................................................................. 6

    E.  Inventio's Responses to ThyssenKrupp's Sixth Set of Document Request Nos. 68-81 (A23-A33) and Fifth Set of Interrogatories (A34-A37) (Category 5) ..................................................................................................... 12

        1.  Documents relating to the document titled "Schindler Group Transfer Pricing Analysis New IP System," production numbers INV027430-INV027487. A165-A222 ..................................................... 13

    F.  Inventio's Responses to ThyssenKrupp's Seventh Set of Document Request No. 82 (Category 6) A250 – A53 ............................................................. 19

    G.  ThyssenKrupp is Entitled to its fees and Expenses Associated with the Present Motion .................................................................................................... 19

V.  CONCLUSION ................................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

Braley v. Grenoble,
    494 F.2d 466 (3d Cir.1974)...................................................................... 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)................................................ 14, 15, 17

*In re Asbestos Products Liability Litigation (No. VI)*,
    2012 WL 5839023 (E.D. Pa. 2012) .......................................................... 5, 6

In re Madden,
    151 F.3d 125 (3d Cir.1998)....................................................................... 9

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 Fed. Cir. 2009 .................................................................. 14

McDougall v. Dunn,
    468 F.2d 468 (4th Cir.1972) ..................................................................... 5

Pacitti v. Macy's,
    193 F.3d 766 (3d Cir.1999)....................................................................... 9

*Saria v. Massachusetts Mutual Life Insurance* Company,
    228 F.R.D. 536 (S.D. W. Va. 2005)........................................................... 5

Solae, LLC v. Hershey Canada, Inc.,
    557 F.Supp.2d 452 (D.Del. 2008).............................................................. 9

Unzicker,
    2012 WL 1966028 .................................................................................. 5

Villareal v. El Chile, Inc.,
    266 F.R.D. 207 (N.D.Ill.2010)................................................................... 5

**Statutes**

28 U.S.C. §1746................................................................................................. 6

**Rules**

Fed. R. Civ. P. 33(b)(1)(B), (3)........................................................................... 5

Fed. R. Civ. P. 33(b)(3)...................................................................................... 6

Fed. R. Civ. P. 34((b)(2)(E)(i) ........................................................................... 4

Fed. R. Civ. P. 34(b)(E)(ii) ................................................................................ 10

Fed. R. Civ. P. 34(E)..................................................................................................... 1

Fed. R. Civ. P. 37((a)(5)(A)........................................................................................ 20

## I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

This is an action for infringement of the '465 and '861 elevator modernization patents. A revised scheduling order was entered on September 28, 2012. D.I. 187. The document production cutoff is February 15, 2013. Fact discovery closes on March 15, 2015. A trial date has been set for February 24, 2014. All disputes relating to a discovery matter or a protective order must be submitted to Special Master C.J. Seitz. D.I. 187 ¶3(f).

## II.    BACKGROUND

On 8/13/2012, ThyssenKrupp served[1] a document requests on plaintiff Inventio, and a document subpoena on third party Schindler Elevator, a sister company to plaintiff Inventio, and deeply involved in the facts of this case. After considerable stalling and delay, Inventio and Schindler were finally ordered by the Special Master during the telephone hearing of 12/10/2012 to provide a firm date for the production. On 12/12/2012, counsel for Inventio/Schindler represented to the Special Master that Inventio and Schindler should be able to complete document production by January 18, 2013, and will endeavor to provide documents on a "rolling basis" prior to that date, as the documents are collected and "processed". A66. Inventio and Schindler did not produce the documents on a "rolling basis," did not serve any written responses[2] to the document requests until 1/18/2013, and ThyssenKrupp did not actually receive the documents until 1/21/2013.

The documents that were turned over were produced essentially as a "document dump"- they clearly were not produced as required by Fed. R. Civ. P. 34(E), either as kept by Inventio or

---

[1] ThyssenKrupp requested Schindler's counsel (Mr. Yanney) if he would accept service of the subpoena on behalf of Schindler – Mr. Yanney ignored that request, which required ThyssenKrupp to incur additional unnecessary expense and effort in effecting actual service of the subpoena.

[2] In its written responses, Schindler indicated it would be producing the requested documents, subject to a host of non-specific omnibus objections.

1

Schindler in the usual course of business (the documents were produced as a hodge-podge of unrelated subject matters), or labeled to correspond to the particular document request. Consequently, in reviewing the documents, in many cases it was impossible to determine if they were responsive or complete. ThyssenKrupp's attempts to obtain clarification from Inventio/Schindler were largely ignored.

On 2/1/2013, ThyssenKrupp brought to Inventio and Schindler's attention the deficiencies in Categories 1-5 described below (A54-A56), and requested a meet-and-confer at 10:00 a.m. on 2/6/2013. At 9:48 a.m., Inventio's/Schindler's counsel advised: "We will not be able to make the call you had proposed for this morning. We will be in touch shortly to set up an alternate time." A57. ThyssenKrupp responded with a range of possible times over several days. A58. In addition, ThyssenKrupp requested the meet-and-confer to include ThyssenKrupp's Fifth Set of Interrogatories, Sixth Set of Document Requests, and Seventh Set of Document Requests. A58.

Finally, Inventio/Schindler agreed to a telephone conference at noon on Friday, 2/8/2013. However, during the conference Inventio/Schindler deferred Thysenkrupp's questions regarding the discovery disputes in light of a letter that Inventio/Schindler's counsel suggested would answer these questions. Inventio/Schindler sent two letters (A61-A65). However, these letters do not resolve most of the disputes.

Accordingly, as a result of Inventio/Schindler's lack of cooperation, and since the close of document production and discovery is eminent, ThyssenKrupp has no choice but to seek the intervention of the Court through the present Motion.

This Motion addresses deficiencies in responses to the following discovery request Categories:

CATEGORY 1 - Schindler Elevator Corporation's response to Document Subpoena dated 8/13/2013, Appendix A1-A8;

CATEGORY 2 - Inventio's amended response to ThyssenKrupp's Interrogatory No. 4, A9-A15;

CATEGORY 3 - Inventio's "verifications" to prior interrogatory answers, A16-A22;

CATEGORY 4 - Inventio's Response to ThyssenKrupp's Fifth Set of Document Requests, A23-A33;

CATEGORY 5 - Inventio's Response to ThyssenKrupp's Sixth Set of Document Requests, A38-A49, and Inventio's Response to ThyssenKrupp's Fifth Set of Interrogatories, A34-A37;

CATEGORY 6 - Inventio's Response to ThyssenKrupp's Seventh Set of document Requests, A50-A53.

## III.   SUMMARY OF THE ARGUMENT

Plaintiff Inventio and its sister company Schindler (both represented by the same counsel) continue to obstruct and be uncooperative in discovery. For the specific reasons stated below, Inventio and Schindler should be ordered to respond to the discovery requests of Categories 1-5 above. ThyssenKrupp also seeks its fees and expenses in connection with this Motion.

## IV.   ARGUMENT

### A.   The 8/13/2012 Schindler Elevator document subpoena documents (Category 1) – A1-A8

ThyssenKrupp seeks the following information, in order to determine if Schindler has complied with the document subpoena:

**Document Request No. 2**[3] – Once Schindler's/Inventio's myriad general "objections" are stripped away, it appears that certain responsive documents may have been produced. A3. However, because of the haphazard way Schindler produced the documents, it is impossible to

---

[3] Request No. 2.- Documents created by Inventio, or anyone working on behalf of Inventio, used by Schindler Elevator Corporation to produce car call interfaces used in connection with elevator modernizations." A2-A3.

identify which, if any, of the produced documents is responsive to this Request. A54. Accordingly, ThyssenKrupp requested Schindler to either state that the requested documents do not exist or have not been produced, or if they were produced, to indicate the Bates Number(s) of the document(s). A54.

In its continued spirit of non-cooperation, Schindler (SEC) refused these reasonable requests, asserting that "SEC has produced all relevant, responsive, non-privileged documents it was able to locate in its possession, custody or control," and that it was not required to provide the Bates numbers. A61. Since Schindler did not produce its documents as they were kept in the normal course of business, it was required to "organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34((b)(2)(E)(i). Further, since Schindler claims to have only produced "relevant" documents,[4] it is impossible to determine what relevancy filter it has applied.

ThyssenKrupp requests that Schindler be ordered to either state that the requested documents do not exist or have not been produced, or if they were produced, to provide the Bates Number(s) of the document(s) responsive to Document Request No. 2.

**Document Request No. 3**[5] - This Request raises the same issue as Request No. 2, and for the same reasons, ThyssenKrupp requests that Schindler be ordered to either state that the requested documents do not exist or have not been produced, or if they were produced, to provide the Bates Number(s) of the document(s) responsive to Document Request No. 3.

**B.    Inventio's amended response to ThyssenKrupp's Interrogatory No. 4 (Category 2)**

---

[4] It should be noted that in arguments relating to Requests 2 and 3, Schindler claims to have produces all "relevant" documents, but it doesn't use the relevancy term is addressing production for Request Nos. 5 and 7. A61.

[5] Request No. 3 - Documents created by Inventio, or anyone working on behalf of Inventio, used by Schindler Elevator Corporation to produce car call interfaces used in connection with elevator modernizations. A3.

4

The response[6] to this Interrogatory was signed by Pierre Yanney, counsel for Inventio, and was not verified as required by Fed. R. Civ. P. 33(b)(1)(B), (3). A14. This has been a common practice of Inventio in this litigation -- providing invalid unverified interrogatory responses by counsel – which has required ThyssenKrupp to unnecessarily spend time and effort in obtaining proper verified responses.

Unverified interrogatory answers, even if signed by counsel, are no answers at all. *See In re Asbestos Products Liability Litigation (No. VI)*, 2012 WL 5839023, at * 7 (E.D. Pa. 2012):

> As we held in *Unzicker*, interrogatory responses not verified by the Plaintiff are not valid responses. 2012 WL 1966028, at * 2 (citing *Braley v. Grenoble*, 494 F.2d 466 (3d Cir.1974)); *see also McDougall v. Dunn*, 468 F.2d 468, 472 (4th Cir.1972) (rejecting the validity of interrogatory answers signed by counsel rather than the party and recognizing that the rule requiring client verification should not "be relaxed merely because of difficulties relating to the availability of the party"). Such verification is essential for establishing the truth of the answers so that they may be relied on by the parties during the litigation and at trial. *See Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D.Ill.2010) (finding that "requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses"); *Saria*, 228 F.R.D. at 538–539 (holding that since "interrogatory responses may be used at trial, they are nothing short of testimony.

Also, by signing the interrogatory, counsel has made himself a witness in this case. *See Saria v. Massachusetts Mutual Life Insurance* Company, 228 F.R.D. 536, 538-9 (S.D. W. Va. 2005) ("When responses are only signed by an attorney, and not by the client, the attorney has effectively been made a witness"), quoted with approval in *In re Asbestos Products Liability Litigation*, 2012 WL 5839023, at * 7. Inventio has not responded to the question (A55) of how it intends to handle the counsel/witness problem in this case, and has not provided a proper verification or even any indication that it will provide such a verification. *See* A63. Accordingly, ThyssenKrupp seeks a valid verification to this Interrogatory.

---

[6] Even though ordered by the Special Master and the Court to answer this Interrogatory, Inventio continues to be evasive, as can be seen by the lack of substance to its response. *See* A63.

**C.    Inventio's prior interrogatory response "verifications" (Category 3) – A16-A22**

All of Inventio's previous responses to Defendants' Interrogatories, including those ordered by the Special Master, were signed by Dr. Gaussmann, on behalf of Inventio. A16-A22. It is ThyssenKrupp's understanding that Dr. Gaussmann signed the verifications in Switzerland. Accordingly, the verifications are invalid because they don't include the language required by 28 U.S.C. §1746 for unsworn declarations made outside of the U.S.:

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).(Signature)".

Dr. Gaussmann's "verifications" omit the "under the laws of the United States of America" language, required for declarations signed outside the United States, and are therefore invalid. ThyssenKrupp is entitled to properly verified interrogatory answers as required by Fed. R. Civ. P. 33(b)(3) (each interrogatory must be answered "fully in writing under oath.") As they presently stand, all of Inventio's interrogatory answers supported by the improper Gaussmann declarations and invalid, and are no answers at all. *In re Asbestos Products Liability Litigation (No. VI)*, 2012 WL 5839023, at * 7. While Inventio vaguely claims it will provide a substitute verification "shortly," it has not done so.

**D.    Inventio's Responses to ThyssenKrupp's Fifth Set of Document Requests Nos. 58-67 (Category 4) A23-A33**

**Document Requests 59 – 61**[7] - A24-A27.

---

[7] Request No. 59 - Communications with Kone Corporation or any company related to Kone Corporation, or their representatives concerning the '465 or '861 patents or any patent or patent application related to the '465 or '861 patents.

Request No. 60 - All communications with Kone Corporation or any company related to Kone Corporation, or their representatives concerning patent EP1319624 or patent EP1319625.

Request No. 61 - Communications with Kone Corporation or any company related to Kone Corporation, or their representatives concerning any opposition or litigation involving patent EP1319624 or patent EP1319625.

In November 2008, third-party Kone Corporation filed an opposition against the European patent EP1319624, which corresponds to the U.S. '465 patent involved in the present litigation. It is reasonable to believe that there were a variety of communications between Kone and Inventio relating to this matterand/or the opposition. While Inventio has produced one such document related to the opposition (INV021879-93), it has not produced any other documents relating to that proceeding.

**Document Request No. 62**[8] - A third-party, Otis Elevator, has requested *inter partes*[9] reexamination of the two patents-in-suit. It is reasonable to believe that there have been a variety of communications between Otis and Inventio relating to these patents. However, Inventio has not produced such documents.

Document Request Nos. 61 and 62 were originally served on August 13, 2012. After a series of delaying tactics by Inventio, and intervention by the Special Master, on 11/28/2012, Inventio finally served written responses. A23-A33. However, while indicating documents would be forthcoming, no documents were produced. On 12/12/2012 Inventio represented to the Special Master that "Inventio and Schindler should be able to complete document production by January 18, 2013, and will endeavor to provide documents on a 'rolling basis' prior to that date, as the documents are collected and processed." A66. Inventio gave no indication that there was any problem in investigating whether the documents existed. Further, Inventio did not produce documents on a "rolling basis," or even at all.

---

[8] Request No. 62 - Communications with any company other than ThyssenKrupp or Kone Corporation, or their representatives, concerning the '465 or '861 patents or any patent or patent application related to the '465 or '861 patents.

[9] This is a proceeding in the U.S. Patent Office where both the requester (Otis) and the patent owner (Inventio) participate.

On 2/1/2013, ThyssenKrupp again sought to obtain the requested documents. A55-A56. Inventio continued to be uncooperative. Finally, on 2/8/2013, six months after the Requests were served, and three weeks after Inventio represented it would complete production of the documents, Inventio revealed for the first time that it was merely "investigating" whether the requested documents existed. A64. Moreover, Inventio gave no explanation why it even had to "investigate" the existence of the documents – they clearly exist.

Rather than produce the documents, Inventio once again vaguely states that it "will produce all relevant, responsive, non-privileged documents in its possession, custody or control that Inventio is able to locate and produce."[10] Inventio's delay tactics notwithstanding, production of these documents, requested more than six months ago, is long over due.

ThyssenKrupp seeks either immediate production of the requested documents, or sworn verification that they do not exist and an explanation of what happened to them.

**Document Request Nos. 65 and 66**[11] – ██████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████ It is reasonable to believe that prior art information in that database relevant to the patents-in-suit exists. Such information would be responsive to Requests 65 and 66. ThyssenKrupp has previously attempted to get discovery of that database, but has been continuously thwarted by Inventio.

---

[10] ThyssenKrupp also does not know what self-determined "relevancy" filter Inventio is applying to these documents.

[11] Request No. 65- All documents in Inventio's B66B database that relate to elevator modernization or overlays used with elevators.

Request No. 66 - For each document produced in response to Document Request 65, documents sufficient to show (1) when that document was added to the B66B database, and (2) who entered the item in the database.

[12] "B66B" is the international patent classification which includes elevators.

In Requests 65 and 66, ThyssenKrupp has narrowed its requests in an effort to reach agreement with Inventio. However, as can be seen from the written responses to these Requests, Inventio continues to stonewall discovery.

████████████████████████████████████████████████████████

████████████████ First, by Inventio's own admission, the two patents-in-suit relate to modernization of elevators:

> Mr. Yanney: The two patents that we have are the ones on the method and one is the corresponding apparatus. And they relate to the modernizing of elevators. 1/22/2013 Markman Hearing Tr., at 9.

The patents themselves state: "The present invention relates generally to a device and system for the modernization of an elevator installation." '861 patent, col. 1, lines 6-7. "The present invention relates generally to a method and a computer program product for the modernization of an elevator installation '465 patent, col. 1, lines 6-8.

Consequently, since these Requests seek documents in the database relating to elevator modernization, those documents are clearly relevant to the patents in the present action. For purposes of discovery, relevancy is broadly construed. *See Pacitti v. Macy's,* 193 F.3d 766, 777-78 (3d Cir.1999) (citing *In re Madden,* 151 F.3d 125, 128 (3d Cir.1998)); *Solae, LLC v. Hershey Canada, Inc.,* 557 F.Supp.2d 452, 460 (D.Del. 2008) *381 (noting that Rule 26 provides liberal discovery of nonprivileged facts). D.I. 73, Order, at 9.

Second, these Requests also seek documents in the database relating to "overlays used with elevators." A part of ThyssenKrupp's invalidity defense is that it would have been obvious

---

[13] Inventio's counsel represented that this database contains "over 60,000 entries;" and that "99% of it is totally irrelevant to anything having to do with any of the issues in this case." 6/4/2012 Hearing Tr., at 101. Accordingly, by Inventio's own admission, the database contains at least 600 entries (60000 x 1%) that are relevant to issues in this case.

to use a prior art overlay to arrive at the subject matter of the patents-in-suit. *See* A74-A139.[14] Consequently, prior art in Inventio's database dealing with overlays used with elevators is also highly relevant to issues in the present case.

Inventio is required to produce electronically stored information, which includes the B66B database, in the form in which it is ordinarily maintained. Fed. R. Civ. P. 34(b)(E)(ii) – that is, the entire B66B database, since that is the form in which it is maintained. However, Inventio has refused to produce the database.[15] During the 2/8/2013 meet-and-confer, ThyssenKrupp attempted to resolve this issue extra-judicially with Inventio; Inventio's counsel's position was basically (to paraphrase) "let the Special Master decide the issue."

As one further attempt to resolve the matter, ThyssenKrupp proposed using full text search terms to narrow the number of documents produced from the database. A140. Surprisingly, Inventio hasn't investigated previously whether such a search is even feasible. A228. This begs a question regarding the reliability of Inventio's representation that "99% of [the database] is totally irrelevant to anything having to do with any of the issues in this case." 6/4/2012 Hearing Tr., at 101. In any event, it is clear Inventio's delayed production of these documents will not take place until after the document production cutoff.

This discovery issue relating to Inventio's database has previously been before the Special Master, but has never been resolved. *See* A155-A156. The last discussion on this subject with the Special Master was on <u>6/4/2010</u>. *See* A159-A164. The discussion ended with the following instructions to Inventio, as Inventio notes in its written response to this Request:

SPECIAL MASTER: So will you do this, Mr. Yanney: Will you get some

---

[14] This is an excerpt from ThyssenKrupp's interrogatory answer describing its obviousness defense and the use of overlays in connection with that defense.

[15] There are no confidentiality issues, because there is a Protective Order in place, limiting disclosure of non-public information, which would not appear to include the database at all.

10

information on how searchable this electronic database might be and how portable it is? In other words, is this     something that you can send to me on a disk?

* * *

SPECIAL MASTER: So could you get us information on that so we can follow up on this point?

MR. YANNEY: I'll find that out.

A163-A164.

Inventio's present vague position is that it will provide this information to the Special Master "in due course." A64. For 2 ½ years, Inventio has not responded to the Special Master's instructions, and is now using its own failure to justify its objection to this document Request.

In point of fact, it is a trivial matter to make a copy of the B66B database and send it to ThyssenKrupp's outside counsel for review under the strict confidentiality provisions of the Protective Order. It is estimated that this database contains on the order of 100 gigabytes of data, or so. A 1 terabyte portable hard drive (holding 1000 gigabytes of data, ten times the size of the B66B database), can be purchased for under $100. *See, e.g.,* http://www.newegg.com/Product/Product.aspx?Item=N82E16822136996. Using the lowest published transfer rates of 480 mb/s (USB 2.0) (*Id.*), all of the data in the Inventio database could be easily and readily transferred to the portable hard drive in less than 5 minutes. The very small size and light weight of the portable hard drive makes it easily transportable by overnight mail. Inventio's counsel's undue delay is compounded by their refusal to articulate how production of the database will unreasonably burden Inventio. In truth, it will not.

11

### E.   Inventio's Responses to ThyssenKrupp's Sixth Set of Document Request Nos. 68-81[16] (A23-A33) and Fifth Set of Interrogatories[17] (A34-A37) (Category 5)

---

[16] <u>Request No. 68</u> - All license agreements reviewed during the creation of the document entitled "Transfer Pricing Analysis New IP System," produced by Inventio under production numbers INV027430- INV027487.

<u>Request No. 69</u> - All drafts, final versions and revisions of the document "Transfer Pricing Analysis New IP System," produced by Inventio under production numbers INV027430-INV027487.

<u>Request No. 70</u> - All appendices to the document "Transfer Pricing Analysis New IP System," produced by Inventio under production numbers INV027430-INV027487.

<u>Request No. 71</u> - All agreements of the type described in the last paragraph of document INV027471 which continues on the top of document INV027472 relating to elevator modernizations using destination dispatch.

<u>Request No. 72</u> - All documents, including financial documents, for R&D work performed by Inventio AG relating to modernization using destination dispatch.

<u>Request No. 73</u> - All documents showing how the patent royalties were calculated in the document "Transfer Pricing Analysis New IP System," produced by Inventio under production numbers INV027430-INV027487.

<u>Request No. 74</u> - All license agreements between Inventio and KG's of the type described in document INV027472, under subheading (b).

<u>Request No. 75</u> - All license agreements between Inventio and KW's of the type described in document INV027471, under subheading (a).

Request No. 76 - All documents reviewed during the preparation of the document "Transfer Pricing Analysis New IP System," produced by Inventio under production numbers INV027430-INV027487, or any drafts, final versions, or revisions of such document.

<u>Request No. 77</u> - All correspondence relating to the document "Transfer Pricing Analysis New IP System," produced by Inventio under production numbers INV027430-INV027487, or any drafts, final versions, or revisions of such document.

<u>Request No. 78</u> - All documents reviewed during the preparation of the document "Internal Memo," produced by Inventio under production numbers INV027494-INV027497.

<u>Request No. 79</u> - All documents sent to or received from any patent office (U.S. or foreign) in connection with IP No. IP1048, listed on document INV027512.

<u>Request No. 80</u> - All documents sent to or received from any foreign patent office in connection with IP No. IP1670, listed on document INV027512.

<u>Request No. 81</u> - All documents sent to or received from any foreign patent office in connection with IP No. IP1777, listed on document INV027512.

[17] <u>Interrogatory No. 13</u> - Identify each entity and individual that contributed to the preparation of the document entitled "Transfer Pricing Analysis New IP System," produced by Inventio under production numbers INV027430-INV027487, or any draft , final version or revision to such document(s), such identification to include at least the name of the entity and individual, the address of the entity and individual, the contribution of the entity and individual to such document(s), and an identification of the individuals that had primary responsibility for preparation of the document(s).

1.    **Documents relating to the document titled "Schindler Group Transfer Pricing Analysis New IP System," production numbers INV027430-INV027487. A165-A222**

On 12/21/2012, Inventio produced a document identified by INV027430-INV027487. A165-A222. For years, Inventio had falsely taken the position that this document was privileged, but finally was forced to produce the document when its non-privileged character was exposed by the Special Master. On 1/3/2013, ThyssenKrupp requested various documents and information relating to this document through Document Request Nos. 68-71 and 73-77, and Interrogatory No. 13. A34-A41. In each instance, Inventio refused to produce the requested discovery "because it is not reasonably calculated to lead to the discovery of relevant, admissible evidence," asserting that the information pertains only to European tax issues and has nothing to do with any issues in this case. *Id.*[18] These Requests ask for some of the relevant information used to create the "Transfer Pricing" document, *e.g.,* IP license agreements (Request No. 68), agreements relating to elevator modernizations using destination dispatch (Request No. 71), calculation of patent royalties (Request No. 73), IP license agreements (Request Nos. 74, 75), etc.

The "Transfer Pricing" document, and the requested documents that relate to it, are highly relevant to at least the damages issues in this case. Inventio states it intends to seek a "reasonable royalty" as damages in this case. A10. To calculate that "reasonable royalty," Inventio asserts "[t]he reasonable royalty rate is the royalty rate upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began. This is known as the 'hypothetical negotiation,' the result of which is a 'hypothetical license.'" A12

---

[18] Oddly, however, while making this blanket objection, Inventio says it will produce documents responsive to related Document Requests 71, 74 and 75. A42, A43, A44. However, Inventio does not say when the documents will be produced.

(internal cites and quotes omitted). Inventio further asserts that to determine the terms of the "hypothetical license," it is necessary to conduct an analysis of the fifteen *"Georgia-Pacific* factors,"[19] as set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).[20] A13.

> The "Transfer Pricing" document is ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

---

[19] These *"Georgia Pacific* factors" include:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

[20] Inventio also objects to this discovery because documents reviewed in the preparation of this tax analysis, over eight years ago, could not possibly bear any relation to any issue in this case." A39. The "IP system" described in the "Transfer Pricing" document was to have become effective January 2005. A215. A "reasonable royalty" is to be determined just before the infringement began. *Lucent Technologies, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1325 Fed. Cir. 2009. Here Inventio asserts the alleged infringement began in 2007. Accordingly, the information in the documents at issue is close enough in time to be relevant for a damages expert addressing the reasonable royalty issue.

14

█████████████████████████████████████████████████████ The following exemplary subjects of the "Transfer Pricing" document are relevant to at least the following *Georgia Pacific* "reasonable royalty" factors and the related discovery requests:

| "TRANSFER PRICING" DOCUMENT SUBJECT | GEORGIA-PACIFIC FACTORS | THYSSENKRUPP DOCUMENT REQUEST |
|---|---|---|
| ██████████████████ | 1, 3, 6 | 71 |
| ██████████████████ | 2 | 68, 73, 74, 75 |
| ██████████████████ | 3, 4 | 68, 70, 73, 74, 75 |
| ██████████████████ | 2 | 68, 74, 75 |
| ██████████████████ | 1 | 73 |
| ██████████████████ | 1, 2, 12 | 73 |
| ██████████████████ | 8, 12 | 73 |

---

[21] Contrary to Inventio's assertion, there is no evidence, either within or without this document, that it is directed to

███████████████████████████████████████████████

| | | |
|---|---|---|
| | | |
| | 8, 12 | 73 |
| | 8, 12 | 73 |
| | 1, 2 | |
| | 1, 2 | 73 |
| | 5 | |
| | 9, 10 | |
| | 5 | |
| | 4, 6, 9 | |
| | 4, 6 | |
| | 6 | |
| | 5 | |
| | 5 | 76 |

16

Basically, the "Transfer Pricing" document, and the documents relied upon to create it[22], all relate to ██████████████████████████████ *See* A215. In short, a damages expert would find the "Transfer Pricing" document, and the licenses, agreements and other documents used to create it, very useful in assessing how Inventio views the calculation of a "reasonable royalty" using the *Georgia-Pacific* analysis in the present case. Also, information about who was involved in the creation of the document (Interrogatory No. 13), and other drafts, final versions and correspondence relating to the document, are relevant to shed light on its preparation and final form. *See* Document Request Nos. 69, 70, and 77.

**Document Request No. 72. A42.**

Inventio has stonewalled its response to this Request by claiming, without any supporting evidence, that "Inventio AG does not perform R&D work." A42. However, a document produced by Inventio in this case belies that representation and clearly shows that ████

████████████████████████████████████████████████████████████████

████████████████████████ A223. Consequently, Inventio has no justifiable basis for withholding the requested documents.

**Document Request No. 73. A42 – A43.**

Inventio has stonewalled its response to this Request by claiming the "Transfer Pricing" document "does not list any "patent royalties," or include any "calculations" thereof." A43. This is a specious objection. As shown above, the "Transfer Pricing" document clearly discusses

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[22] The underlying documents are relevant to at least Document Requests 68, 71, 73, 74, 75, and 76.

**Document Request No. 78. A46.**

Inventio has stonewalled its response to this Request by claiming this document "could not possibly bear any relation to any issue in this case." A46. However, this document refers to ███████████████████████████████████████████████████████ A224. Consequently, these license agreements, and other documents used to prepare the "Internal Memo," appear relevant to the calculation of the reasonable royalty damages sought by Inventio, as described above.

**Document Request No. 79. A46 – A47.**

Inventio objects to the production of the requested documents because "IP1048" ███████████████████████████████████████████ "does not involve destination dispatch technology," and the documents allegedly are publically available. A47. First, according to a document produced by Inventio, IP1048 ██████████████████████ ███████████████████████████████████████████████████████████████████ (A227) (and therefore may not be publically available), and is not sufficiently identified to be located even if it is in the public record. In any event, while Inventio says it will produce documents responsive to this request (A47), it does not say <u>when</u> the documents will be produced.

**Document Request No. 80. A47.**

Inventio has stonewalled its response to this Request by claiming the requested documents cannot be prior art to the Patents-in-Suit, have no relation to any of the issues in this case, and are publically-available from patent office records. A47-8. Whether the documents may be available from various patent offices around the world is irrelevant; if Inventio has them, it

must produce them. Likewise, whether this application itself is prior art to the patents-in-suit is also irrelevant. These documents may disclose relevant prior art, or may contain statements by Inventio characterizing the prior art or the patents-in-suit. Further, these documents relate to ███████████ (A227), the same technology as the patents-in-suit, as discussed above. Accordingly, these documents are relevant to at least the patent validity issues in the present case, and may lead to the discovery of admissible evidence.

**Document Request No. 81. A48.**

Inventio has stonewalled its response to this Request for the same reasons as Request No. 80. A48. Clearly, these documents ████████████████████ ███ (A227) ████████████████████████████ Accordingly, these documents should be produced for the same reasons as those in Request No. 80.

**F.    Inventio's Responses to ThyssenKrupp's Seventh Set of Document Request No. 82 (Category 6) A250 – A53**

Inventio has stonewalled its response to this Request for the same reasons as Request Nos. 80 and 81. A51 – A52. Clearly, this Request seeks documents relating to elevator modernization using destination dispatch, the same technology as the patents-in-suit, as discussed above. These documents should be produced for the same reasons as those in Request No. 80.

**G.    ThyssenKrupp is Entitled to its fees and Expenses Associated with the Present Motion**

As demonstrated above, Inventio's failure to properly answer ThyssenKrupp's discovery was unjustified. Accordingly, ThyssenKrupp respectfully requests that it be awarded its fees and

expenses associated with the present Motion pursuant to Fed. R. Civ. P. 37((a)(5)(A)[23].

Further, the Order of Appointment of the Special Master in this case provides:

Unless otherwise determined by the Special Master, all costs incurred by the Special Master and those assisting him in connection with any disputed discovery issue shall be paid by the non-prevailing party as to that issue. For purposes of this Order, the term "disputed discovery issue" shall mean a specific document request, interrogatory, interrogatory response, deposition objection, or other discrete issue that is disputed by the parties and presented to the Special Master for adjudication. It is understood that a discovery motion may pertain to one or more disputed discovery issues. D.I. 122, ¶5.

Accordingly, ThyssenKrupp also requests that Inventio be required to pay the costs of the Special Master in connection with the discovery issues addressed above.

## V.     CONCLUSION

For the reasons stated above, ThyssenKrupp respectfully requests that Inventio be required to:

1.     Provide complete and proper responses to discovery Categories 1-6; and

2.     Pay ThyssenKrupp's fees and expenses associated with the present Motion, including the costs of the Special Master.

February 15, 2013                              Respectfully submitted,

                                              WOMBLE CARLYLE SANDRIDGE &
                                              RICE, LLP

                                              /s/ James M. Lennon
                                              James M. Lennon (# 4570)
                                              222 Delaware Avenue, Suite 1501
                                              Wilmington, DE 19801
                                              Tel: (302) 252-4320
                                              Fax: (302) 661-7726
                                              Email: jlennon@wcsr.com

---

[23] "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

Of Counsel:

FROST BROWN TODD LLC
David E. Schmit
2200 PNC Center, 201 E. 5th Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Email:  dschmit@fbtlaw.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of February, 2013, the foregoing was filed with the clerk of the Court by using the CM/ECF system and that a true and correct copy of the foregoing will be served on the following counsel for Plaintiff through the CM/ECF system:

Donald E. Reid
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Chase Manhattan Centre
1201 North Market St., P.O. Box 1347
Wilmington, DE 19899-1347
Tel: (302) 685-9200
dreid@MNAT.com

Pierre R. Yanney
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038-4982
Tel: (212) 806-5858
pyanney@stroock.com

Stephen Underwood
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
sunderwood@stroock.com

/s/ James M. Lennon
James M. Lennon (#4570)

22

WCSR 7657446v2