IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTIO AG, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 08-874-RGA |
| THYSSENKRUPP ELEVATOR AMERICAS CORPORATION, et al., | : |
| Defendants. | : |

MEMORANDUM ORDER

As the parties settle into the sixth year of trench warfare in this case, the Court must consider various objections that have been made to decisions of the Special Master, Collins J. Seitz, Jr., Esq. Objections to either factual findings or legal conclusions are reviewed *de novo*. Fed. R. Civ. P. 54(f)(3) & (4).

The Special Master filed a decision on Defendants' Challenges to Plaintiff's Designations of Privilege or Work Product in its Third Amended Privilege Log. (D.I. 139). Plaintiff filed Objections and Motion to Modify a Decision by the Special Master. (D.I. 203). The documents asserted to be privileged were provided *ex parte in camera*. (*See* D.I. 202). For reasons irrelevant to the present decision, the Court entered an order for rebriefing (D.I. 241), and thus Plaintiff's original briefing (D.I. 204) is not considered. Re-briefing followed. (D.I. 246, 251).[1] Various appendices have been submitted. (D.I. 205, 206, 217, 253-55).

---

[1] The Court has considered Defendants' original briefing (D.I. 216) as it seems clear that Defendants' re-briefing was more in the nature of supplemental briefing.

-1-

Plaintiff does not object to any of the Special Master's statements of the law relating to privilege, and further does not object to any of the Special Master's statements about which country's privilege law applies to any of the thirty documents at issue. Defendants do object (rather conclusorily), stating that under the "touch base" test, Swiss law applies because Plaintiff is a Swiss company. (D.I. 216, p. 4). If Defendants were correct, the "touch base" test would be pretty meaningless, since once citizenship was determined, that would be the end of the analysis. I think the Special Master's analysis (D.I. 139, pp. 3-4) is persuasive, and I adopt it. One thing to bear in mind is that Plaintiff has the burden of proof of showing that a privilege applies.

Since there is no way to decide *de novo* the factual questions other than to review the *ex parte in camera* documents, I have reviewed them. My conclusions follow.

Doc. 16. Not privileged. This is a communication between two non-lawyers on which a lawyer is copied. The document itself does not suggest to me that it was sent "for the purpose of obtaining or providing legal advice." (D.I. 246 at 19).

Doc. 36. Not privileged. This is a communication from an employee of SEC to, among others, Inventio's attorney (D.I. 246 at 7), with whom there was no attorney-client relationship.

Doc. 57. Not privileged. This is a communication between SEC's lawyer and an Inventio business person. There was no attorney-client relationship.

Doc. 66. Not privileged. This is a communication between SEC's lawyer and Schindler corporate personnel as a result of some communication between the lawyer and Inventio corporate personnel. It is copied to about five people whose reasons for getting copies is not explained. The emails are therefore not privileged.

Docs. 82, 86, 88, 89, 90, 192, 219, 222, 225-27. Privileged. These are bills from Butzel

Long, Inventio's lawyers, to Inventio, for legal services rendered. The Special Master recommended production as there was no detailed description of the services rendered. The bills identify specific attorneys billing for legal work, the patents involved, the date of the work, and the general nature of the work. The legal advice given is not recited. I think the description is sufficiently detailed so that one of two things is possible. One, it could be connected up with other discovery so that the attorney's advice could be inferred. Or, two, it cannot be connected up, and it would be hard to imagine what relevance the billing records would have.[2] In any event, I believe the documents are privileged, and therefore they will be protected from disclosure. *See Montgomery County v. Microvote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) (finding billing records privileged).

Docs. 155, 165, 175-77, 236-40. Privileged. These are bills from the Singapore lawyers to Inventio. My conclusion is the same as for the Butzel Long documents, *supra*.

Docs. 146, 184-87, 259-61. Privileged. These are bills from the Japanese lawyers to Inventio.[3] My conclusion is the same as for the Butzel Long documents, *supra*.

Docs. 164, 166-69, 205-10. Privileged. These are bills from the Australian lawyers to Inventio. My conclusion is the same as for the Butzel Long documents, *supra*.

Docs. 174, 217, 218, 244-46. Privileged. These are bills from the New Zealand lawyers to Inventio. My conclusion is the same as for the Butzel Long documents, *supra*.

---

[2] In other words, if I did not find the documents privileged, I would upon timely request still not order them produced because I do not see that their production would be reasonably calculated to lead to the discovery of admissible evidence.

[3] The Japanese have the least informative bills of the five nationalities involved, and, even then, some of the bills directly reveal privileged communications. For example, Doc. 185 describes the communication with the client that is the subject of the bill.

The Special Master filed a twenty-six page single-spaced Report and Recommendation on Defendants' Motion to Reclassify as Non-confidential Information Designated by Plaintiff as Highly Confidential and/or Limited Modification of the Protective Order. (D.I. 264). Part of the Report and Recommendation was adopted without objection. (D.I. 287). Defendants filed a Motion to Modify and Objections to the Special Master's Report. (D.I. 273). Briefing followed. (D.I. 274, 296, 305) and there is an Appendix. (D.I. 275).

The procedural background to the issues that resulted in the Special Master's Report and Recommendation are set forth in the Report. For present purposes, there remain two disputes. One, are four categories of deposition excerpts (identified as Categories 3, 14, 23, and 31) properly marked as "highly confidential"? Two, should the Special Master's discussion concerning modifying the protective order be reviewed?

As to the first, I consider the Categories in turn. Category 3 (D.I. 275, at 3-9) contains Dr. Friedli's description of a method that sounds exactly like what I heard at the *Markman* hearing. I therefore do not believe it should be designated highly confidential. Category 14 is Dr. Friedli's analysis about whether the elements of the patent are in a piece of Schindler's prior art product. (D.I. 275, at 10-12). I think it is reasonable to conclude that the features of Schindler's product are indeed non-public technical information. Thus, I believe Category 14 is correctly designated highly confidential. Category 23 is Ms. Saloio's testimony about the Marriott modernization. (D.I. 275, at 13-16). The first two pages do not contain any confidential information. It only contains information that was also in a publication. (D.I. 275, at 28-33). Thus, I do not uphold the highly confidential designation of these two pages. The third and fourth pages, however, contains non-public technical information. I will maintain its highly

confidential designation. Category 31 is a page of a patent application. (D.I. 275, at 17). The way I read the protective order, the burden is on Defendants to show that the application is public.[4] Defendants have not done so, and therefore I will uphold the "highly confidential" designation.[5]

As to the second, I believe the present objections are without merit. The Special Master concluded after a thorough analysis that the protective order should not be modified. (D.I. 264, pp. 15-24). Defendants do not agree with his analysis, but they also do not object to it. (D.I. 305, p.6). Thus, I will not modify the protective order. Defendants, however, want the Special Master's discussion about what the PTO will consider during a reexamination[6] to be vacated. There is no reason to do this. The Special Master's Report does not purport to tell any party what information to submit or to withhold from the PTO. As Plaintiff states, Defendants can submit whatever they want to the PTO (so long as, among other things, doing so is not in violation of the protective order) in connection with the reexam proceedings, and the PTO will be the judge of what use the PTO makes of it. (D.I. 296, p.13).

The Special Master took no action in regard to Defendants' Motion to Compel Response to Damages Interrogatory No. 4. (D.I. 220). Briefing on the motion was not completed. On the date the answering brief was due, Plaintiff served discovery responses including "Plaintiff

---

[4] There is something perplexing about extensive arguments to two different factfinders that a document is a public document and should be reclassified as such when it would be a lot cheaper and easier to go and get the public document, assuming that it actually is public.

[5] Of course, if I am wrong about this, there should be no harm to the Defendants.

[6] According to Defendants, Plaintiff is losing the war on this second front. (D.I. 346, p. 11, n.15).

Inventio AG's Amended Response to Interrogatory No. 4." (D.I. 237). Thus, all indications are that Defendants' Motion has been mooted (*see also* D.I. 384), and that motion will be dismissed as moot.

The Special Master filed a Report and Recommendation on (1) Thyssenkrupp's Fifth Motion to Compel, (2) Defendants' Motion to Compel and For Leave to Take Additional 30(b)(6) Deposition of Plaintiff Inventio and Related Third-Party Schindler Elevator Corporation, (3) Inventio's Motion to Compel, and (4) Inventio's Motion to Extend. (D.I. 333). Plaintiff filed objections (D.I. 339), which have been briefed (D.I. 339, 346, 352) with appendices. (D.I. 340, 341, 347, 348, 349).

Plaintiff's objections are limited. Plaintiff objects to being denied discovery on "new jobs." Plaintiff also objects to being ordered to produce the Transfer Pricing Analysis, stating that it should only have to produce the portion relating to the United States. Plaintiff also seeks an extension of discovery.

There are only three accused jobs. (*See* D.I. 346, p.2 n.2). Therefore, while I agree that discovery on new jobs would be permissible under the rules, there is also little harm to Plaintiff in not having such discovery. The trial will not be about whether any jobs other than the three accused jobs infringe. Defendants state that willfulness is not alleged in the operative complaint, and Plaintiff does not argue otherwise in its reply.[7] Commercial success will be determined by reference to Schindler's performance of the patented methods. Copying either will or will not exist in the three accused jobs. In terms of whether Plaintiff needs to bring another lawsuit, that

---

[7] Indeed, I looked at the Complaint (D.I. 1) and it clearly does not allege willfulness, so I do not understand why Plaintiff would be alleging willfulness was an issue. (*See* D.I. 339, p.10).

is its choice, but I expect that if Plaintiff is successful at trial, the parties and the Court will be able to account for other infringing jobs. Thus, Plaintiff has little need at this time for the discovery, and, as the Special Master noted, this is an extremely old case with a trial date in February 2014, and it would be impossible to keep the trial date and to proceed with Plaintiff's proposed discovery schedule (with or without taking into account the extra time it has taken me to address this). Even assuming that it is not Plaintiff's fault that it did not get the discovery before and that it is acting in good faith, the lack of actual prejudice to the Plaintiff and the inherent prejudice to the system of never-ending litigation means that on balance I do not think that discovery should be extended.

I cannot say that the complete Transfer Pricing Analysis is not relevant or reasonably calculated to lead to discoverable evidence. Plaintiff is to produce it within one week from the date of the accompanying order.

The Special Master's most recent Report and Recommendation (D.I. 381) was filed July 29, 2013. Objections to it are not due until August 22, 2013. If there are objections to it, I will decide them in due course.

In view of the above, NOW THEREFORE this 15th day of August 2013, IT IS HEREBY ORDERED that:

1. Plaintiff's Objections and Motion to Modify a Decision by the Special Master (D.I. 203) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is to **PRODUCE** documents 16, 36, 57, and 66, no later than one week from the date of this Order.

2. Defendants' Motion to Modify and Objections to the Special Master's Report (D.I. 273) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is to **RECLASSIFY** the disputed discovery consistent with this Memorandum Order.

3. Plaintiff's objections (D.I. 339) are **OVERRULED**. Plaintiff is to **PRODUCE** the complete Transfer Pricing Analysis no later than one week from the date of this Order.

4. The Special Master's Reports (D.I. 139, 264, 333), to the extent not inconsistent with the above, are **ADOPTED** as Decisions and Orders of this Court.

5. The Motion to Compel (D.I. 220) is **DISMISSED AS MOOT**.

6. The other pending motions (D.I. 197, 279, 292, 298) that are the subject of the Special Master's Reports are **RESOLVED** as set forth in the Special Master's Reports as adopted and modified by this Order.

*Richard G. Andrews*
United States District Judge