IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTIO AG, | : |
|             Plaintiff, | : |
| v. | :   Civil Action No. 08-874-RGA |
| THYSSENKRUPP ELEVATOR AMERICAS CORPORATION, et al., | : |
|             Defendants. | : |

**MEMORANDUM ORDER**

Defendants have moved to preclude Plaintiff's assertion of willful infringement. (D.I. 392). The motion has been fully briefed. (D.I. 393, 421, 443). For the following reasons, the motion (D.I. 392) is **GRANTED.**

First, the Complaint (D.I. 1) does not actually allege "willful infringement." The words "willful," "willfully," "objectively unreasonable," "knowledge of the patent," or any similar construct, do not appear in the Complaint.[1] Plaintiff argues that it put Defendants on notice by seeking as relief a "declaration that this is an exceptional case pursuant to 35 U.S.C. § 285." (D.I. 1 at 4, ¶E; *see* D.I. 421 at 10 (Defendants were on notice that Plaintiff "might assert willful infringement" because of this demand for relief)). A demand for relief is not a factual assertion. There is no factual assertion, or anything approaching a factual assertion, of willfulness in the Complaint.

Second, Plaintiff states it ought to be able to amend its complaint to assert willfulness

---

[1] The Court noted this in August 2013. (D.I. 385, at 6 n.7). Plaintiff took no action in response.

now. Its primary argument is based on block quotes from a pleading filed by a party in another case, which Plaintiff incorrectly and inexplicably attributes to me. (D.I. 421 at 10-13; *see* D.I. 443 at 4). Further, as Defendants point out, Plaintiff's motion to amend incorrectly relies solely upon Rule 15 of the Federal Rules of Civil Procedure. The operative deadline for amending a pleading was nearly a year ago. (D.I. 187, ¶2 – setting a date of October 15, 2012). Failure to meet the deadline requires a showing of good cause. Fed. R. Civ. P. 16(b)(4); *see Cloud Farm Associates, L.P. v. Volkswagen Group of America, Inc.*, 2012 WL 3069390, *2 (D.Del. July 27, 2012). Good cause requires a showing of diligence. *Id.* Nothing approaching diligence has been alleged, much less shown.

Third, Plaintiff has proffered no evidence from which pre-filing willful infringement could be found. As the Federal Circuit has held:

> [T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.

*In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)(citations omitted). The parties dispute the evidence concerning the first prong. In my view, I do not need to decide that issue (which, ultimately, is a question of law for the court), because I do not think there is any evidence from which a jury could conclude the risk "was either known or so obvious that it should have been known" to the Defendants. Defendants deny any pre-suit knowledge of the patents. Plaintiff relies upon two arguments in opposition. One, Plaintiff cites the testimony of Mr. McClendon. (D.I. 421 at 14-16). When Mr. McClendon was asked in 2013 when he first became aware of the two patents-in-suit, he said he did not recall. Then, when asked to

"approximate" it, said, "late 2007, 2008, perhaps." (D.I. 421, at 15).[2] Such hazy testimony cannot establish that Defendants had any knowledge of the patents before suit was filed in late 2008, particularly in light of the fact that Mr. McClendon also explained that the knowledge of the patents was obtained after suit was filed. (D.I. 443, at 8-9). Two, Plaintiff cites Defendants' "Mission Impossible" caper in New York in January 2007, in which Defendants saw that Schindler's elevator repair operations included "overlay interface boxes" marked with five patents. (D.I. 421 at 19-22). As Plaintiff admits, however, none of the five patents are asserted in this lawsuit, and there is no evidence that Defendants' elevator modernizations infringed any of those patents. Further, Plaintiff asserts that one of the patents claimed a RFID card reader, and is "closely related" to the patents-in-suit, which also claim a card reader or something akin to a card reader. This does not help Plaintiff, since, as was conceded at the summary judgment arguments on November 15, 2013, Defendants' accused products or method do not include a card reader. Thus, there is insufficient proffered evidence to make pre-filing willfulness a disputed issue.[3]

Fourth, Plaintiff has not made out a case for it being allowed to pursue post-filing willfulness. In *Seagate*, the Federal Circuit noted:

[I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation

---

[2] Plaintiff continues with a portion where Mr. McClendon corrects counsel's reference to "late '97" with "late 2007," which has no weight at all, since the transcript makes evident that all Mr. McClendon was doing was correcting counsel's misstatement.

[3] Plaintiff says Defendants copied the New York Schindler elevator modernization. That Defendants studied it seems indisputable. Studying Schindler's products is not the same thing, however, as copying them, and, since the evidence is that Schindler's product was marked as being protected by five patents, none of which are asserted, it appears the studying did not result in any copying of the patented aspects of the Schindler product. It is also worth noting that "legitimate design-around efforts should always be encouraged as a path to spur further innovation." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) (en banc).

> conduct. It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct. By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness.
>
> We fully recognize that an accused infringer may avoid a preliminary injunction by showing only a substantial question as to invalidity, as opposed to the higher clear and convincing standard required to prevail on the merits. However, this lessened showing simply accords with the requirement that recklessness must be shown to recover enhanced damages. A substantial question about invalidity or infringement is likely sufficient not only to avoid a preliminary injunction, but also a charge of willfulness based on post-filing conduct.
>
> We also recognize that in some cases a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced. In that event, whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case.

*Seagate*, 497 F.3d at 1374 (citations omitted). Plaintiff concedes that it did not move for a preliminary injunction. It offers one justification – that it did not know Defendants were engaged in any post-filing infringement until receiving discovery.[4] When discovery was received, the post-filing infringement had ceased. (D.I. 421 at 23-24). Plaintiff's argument makes no sense. One, its Complaint[5] alleges the opposite. It says the Defendants "have been and still are directly infringing" the two patents. (D.I. 1, ¶¶ 12 & 16). Two, even now, Plaintiff states that "there was

---

[4] Plaintiff does not argue that its status as a patent-holding company inhibited its ability to seek a preliminary injunction. In other aspects of this litigation, it asserts that the related Schindler companies are direct competitors of Defendants.

[5] Upon review, the Complaint is an interesting document. It describes no accused product, method, or anything else. It says Defendants directly infringe, without giving the slightest hint how or with what.

some period of time after [Plaintiff] filed its complaint when [Defendants] continued using its infringing [method or apparatus] at all three jobs." (D.I. 421, at 23). It seems hard to believe that Plaintiff, having learned that its competitor was infringing its patents by renovation projects that would take some period of time to complete, did not know (without the need for discovery) that the infringement was, as it alleged, continuing.

Thus, procedurally and substantively, Plaintiff cannot pursue willful infringement. The Defendants' motion is therefore granted.

11-20-13
Date

_/s/ Richard G. Andrews_
United States District Judge