IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**INVENTIO AG,**

                    Plaintiff,

          v.                                          Civil Action No. 08-00874-RGA

**THYSSENKRUPP ELEVATOR
AMERICAS CORPORATION, et. al.,**

                    Defendants.

MEMORANDUM OPINION

Michael J. Flynn, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Pierre R. Yanney, Esq. (argued), Stroock & Stroock & Lavan LLP, New York, NY; Stephen E. Underwood, Esq., Stroock & Stroock & Lavan LLP, New York, NY, Attorneys for the Plaintiff.

James M. Lennon, Esq., Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE; David E. Schmit, Esq. (argued), Frost Brown & Todd LLC, Cincinnati, Ohio, Attorneys for the Defendants.

December 13, 2013

ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently before the Court for disposition are Defendants' Motion for Summary

Judgment of Invalidity of U.S. Patent No. 6,935,465 and 6,892,861 ("'465 Patent" and "'861

Patent" respectively) (D.I. 394), and Plaintiff's Motion for Partial Summary Judgment of No

Invalidity for Indefiniteness, Written Description, and Best Mode.  (D.I. 413).  These motions

have been fully briefed (D.I. 414, 441, 466, 395, 402, 420, 444, 446) and the Court held oral

argument on November 15, 2013.  (D.I. 492, "Tr.").  For the reasons set forth herein, the

Defendants' motion is **DENIED** and the Plaintiff's motion is **GRANTED IN PART AND**

**DENIED IN PART**.

## BACKGROUND

On November 21, 2008, Inventio ("Plaintiff") filed this patent infringement action against

ThyssenKrupp Elevator Americas Corp., ThyssenKrupp Elevator Corp., and ThyssenKrupp

Elevator Manufacturing, Inc. ("Defendants").  (D.I. 1).  Plaintiff asserts claims 1, 2, 3 and 10 of

the '465 patent, and claims 1, 2, 3, and 11 of the '861 patent.  (D.I. 65 at 14).

Claim 1 of the '465 Patent is representative of the '465 Patent and reads:

A method of modernizing an elevator installation having at least one elevator
controlled by at least one elevator control by way of at least one call report,
comprising:

    a.  installing at least one floor terminal at each floor served by an elevator
controlled by an elevator control for at least one of the input of
destination call reports and for recognition of identification codes of
users;

    b.  installing at least one computing unit and connecting the at least one
computing unit to said floor terminals for at least one of evaluating the
destination call reports and association of destination floors with
recognized [ones] of the identification codes and for the output of at
least one destination signal; and

1

    c. installing at least one modernizing device and connecting the at least one modernizing device to said floor terminals and said at least one computing unit for reading the destination signal, for converting the destination signal into at least one call report and for controlling the elevator control by way of the call report.

U.S. Patent No. `465 col. 11: 6-25. Claim 1 of the `861 Patent is representative of the

`861 Patent and reads:

A device for temporarily operating an elevator installation during modernization, the elevator installation having at least one elevator and at least one elevator control for controlling the elevator in response to call reports generated by [hall] call transmitters and car call transmitters, comprising:

    a modernizing device temporarily connected to the elevator control controlling the elevator in response to the call reports, the elevator control being disconnected from the [hall] call transmitters and the car call transmitters of the elevator installation; and

    at least one computing unit connected to said modernizing device for generating at least one destination signal to said modernizing device, said modernizing device converting said destination signal into a call report and generating said call report to the elevator control for controlling the elevator.

U.S. Patent No. `861 col. 11: 6-21.

## DISCUSSION

### I. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). However, "the burden on the moving party may be discharged" if it can show "that there is an absence of evidence to support

2

the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   The court

will "draw all reasonable inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence."   *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the

nonmoving party then "must set forth specific facts showing that there is a genuine issue for

trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita*, 475 U.S.

at 587.   The mere existence of some evidence in support of the nonmoving party, however, will

not be sufficient for denial of a motion for summary judgment.   *Anderson*, 477 U.S. at 249.

Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find

for it on that issue.   *Id.*   If the nonmoving party fails to make a sufficient showing on an

essential element of its case with respect to which it has the burden of proof, the moving party is

entitled to judgment as a matter of law.   *See Celotex Corp.*, 477 U.S. at 322.

## II.   Decision

The Defendants move the Court to find that the `861 and the `465 Patents are indefinite

and fail to meet the written description requirement.   Conversely, the Plaintiff moves the Court

to find that the `861 and the `465 Patents are not indefinite, satisfy the written description

requirement, comply with the best mode requirement, and that the Court does not have subject

matter jurisdiction regarding the term "advance selector."

### A.   Indefiniteness

A patent claim must "particularly point[] out and distinctly claim[] the subject matter

which the inventor or a joint inventor regards as the invention."   35 U.S.C. § 112.   A patent

claim that fails to comply with this requirement is indefinite and therefore invalid.   *Personalized*

3

*Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998). "The test for definiteness is whether one skilled in the art would understand the bounds of the claim when read in light of the specification. If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more." *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993) (internal citation omitted). "Because a claim is presumed valid, a claim is indefinite only if the 'claim is insolubly ambiguous, and no narrowing construction can properly be adopted.'" *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003) (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). "A determination of claim indefiniteness is a legal conclusion that is drawn from the [C]ourt's performance of its duty as the construer of patent claims." *Personalized Media Commc'ns, LLC*, 161 F.3d at 705.

## "Modernization"

The Defendants argue that claims 1 through 9[1] of the '861 Patent are indefinite because "claim 1 requires that the hall call and car call transmitters must still be physically present and functionally connected as a 'necessary claimed component of the claimed invention,' since their output, 'the call reports,' are being used elsewhere by other components in the body of the claim," while at the same time the claim requires that the elevator control be disconnected from the hall call and car call transmitters. (D.I. 395 at 14). In opposition, the Plaintiff argues the preamble to claim 1 of the '861 Patent "refers to the state of the existing elevator system, prior to modernization, before the patented interface equipment has been installed. Meanwhile, the body of the claim refers to the state of the elevator system after the patented interface equipment

---

[1] The Defendants in their brief argue that claims 1 through 9 of the '861 patent are invalid as indefinite; however, the Plaintiff has only asserted claims 1, 2, 3, and 11 of the '861 Patent. The Court opines only about the asserted patent claims.

4

has been installed. . . ." (D.I. 414 at 12 (emphasis omitted)). Furthermore, the Plaintiff contends that, "The claim clearly contemplates those two different timeframes – pre-installation of the patented interface equipment (preamble) and post-installation of the patented interface equipment (body)." *Id.* The Court agrees with the Plaintiff.

Both the plain reading of the patent claims and the patent specification support the Court's finding that the claims 1, 2, and 3 of the `861 patent are not indefinite.[2] The Court interprets the preamble to claim 1 of the `861 Patent as referring to the state of the elevator prior to modernization, while the body of the claim describes the specific modernizing device that the patentee seeks to capture. U.S. Patent No. `861 col. 11: 6-21. This conclusion is supported, not only by the plain reading of the claim language, but by the patent specification. The specification, in Figures 1 and 2, lays out the difference between the preamble and the body of the claim. First, Figure 1 of the `861 Patent, labeled "Prior Art," corresponds with the preamble of claim 1 and depicts an elevator prior to modernization. Second, Figure 2 of the `861 Patent, which is described in the specification as "show[ing] the portion of the elevator installation according to FIG. 1 at the conclusion of preparatory operations for modernization including installing the device according to the present invention . . . ," depicts the claimed invention. *Id.* at col. 3: 64-67. Thus, claim 1 of the `861 Patent is not insolubly ambiguous.

The Defendants argue that, "The actions of Inventio before the United States Patent Office (USPTO) further show that the preamble portion of the claim requires the continued presence of the hall call transmitters and the car call transmitters." (D.I. 395 at 9). The Defendants argue that the patentee's actions in front of the USPTO created prosecution history estoppel. *Id.* at 12. The Court disagrees. The purpose of the amendment was to emphasize

_____

[2] Claims 2 and 3 are dependent claims of claim 1.

that the device claimed was to be temporarily attached, as compared with the prior art reference

asserted by the patent examiner, U.S. Patent No. 5,260,526, which discussed the addition of

permanent controls.   (D.I. 402-2 at 62).   Thus, as a disavowal of claim scope "must be both

clear and unmistakable to one of ordinary skill in the art," *Elbex Video, Ltd. v. Sensormatic*

*Electronics Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) (quoting *Omega Eng'g, Inc, v. Raytek*

*Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003)) (internal quotation marks omitted), the Plaintiff's

actions in front of the USPTO do not estop the Plaintiff from arguing that the preamble to the

claim term represents the state of the elevator system prior to modernization.

"Elevator Installation"

The Defendants argue that all of the claims of the `465 Patent and the `861 Patent are

invalid as the Court has construed "elevator installation" to be "a group of elevators that convey

passengers in a building . . . ," while "at the same time, each of the independent claims of the

Inventio patents also requires 'at least one elevator.'"   (D.I. 395 at 17-18).   In other words, the

Defendants argue that, "[T]he claim requirement that the 'elevator installation' must have more

than one elevator is insolubly inconsistent with the co-existing claim requirement that only one

elevator is necessary."   *Id.* at 18.   The Plaintiff argues that when the Court construed "elevator

installation" it "was not determining a specific number of elevators that must be present in the

installation.   Rather, the issue was whether the claims required 'each elevator to be controlled by

its own elevator control,' or if 'one elevator control for the group of elevators' would suffice."

(D.I. 414 at 14 (emphasis and brackets omitted)).   The Court agrees with the Plaintiff.   The

Court's construction of "elevator installation" addressed whether each elevator required its own

elevator control, not whether the claim term required multiple elevators.   (D.I. 135 at 34-38).

6

Furthermore, to the extent that there is one claim limitation requiring a group (i.e., two or more) of elevators and a second claim limitation requiring at least one elevator, the claim does not become insolubly ambiguous. For example, a building that has exactly one elevator could not meet both limitations, but a building that has two elevators could meet them both.

## "Hail Car" vs. "Hall Car"

The Defendants additionally argue that the patent claims' initial use of the word "hail" rather than "hall"[3] prevent the patent from being enforced prior to the issuance of the Certificate of Correction. (D.I. 395 at 11-13). The Defendants cite to *Southwest Software, Inc., v. Harlequin, Inc.*, as support for their argument, stating that *Southwest Software* establishes that "a certificate of correction is only effective for causes of action arising after it was issued." (D.I. at 16 (quoting *Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280, 1294-95 (Fed Cir. 2002). The Plaintiff responds that the "erroneous word 'hail,' rather than the correct word 'hall,['] was an 'obvious typographical error,' which any person of ordinary skill in the art would have recognized." (D.I. 414 at 16).

"A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). Here the word "hail" is a clear typographical error. Other than the two instances in claim 1 of the `861 Patent, "hail" appears nowhere else in the patent specification. Additionally, the use of the term "hail" instead of "hall" was the result of an error on the part of the USPTO, not the Patentee. (D.I. 414-1 at 277).

---

[3] Inventio filed a request for a Certificate of Correction to change "hail" to "hall" in two places in Claim 1 of the `861 patent on October 10, 2008. (D.I. 402-2 at 96). The Certificate of Correction was granted and issued on November 18, 2008. (D.I. 402-1 at 47).

Furthermore, this Court has previously found that, "[T]he term 'hall call' constituted a standard industry term whose meaning would be apparent to a person of ordinary skill in the art." (D.I. 135 at 89). And, finally, this Court found that the inclusion of the term "hail" instead of "hall" would have been immediately apparent as a mistake to a person of ordinary skill in the art.[4]  *Id.* at 88.  Therefore, Claims 1, 2, and 3 of the `861 Patent are not invalid as indefinite because of the use of the term "hail" prior to November 18, 2008.

### B. Written Description Requirement

A patent "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same . . . ."  35 U.S.C. § 112.  For the written description to be sufficient it must "clearly allow persons of ordinary skill in the art to recognize that [the patentee] invented what is claimed."  *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991).  "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."  *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).  The Federal Circuit has determined that the test for possession "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed."  *Id.*  Compliance with the written

---

[4] The Defendants point the Court's attention to the Court's previous ruling on June 15, 2010 in which the Court stated that the term "hail call" was indefinite.  (D.I. 135 at 87-88).  However, the court made this statement in its determination that the claim term had not been improperly broadened by the Certificate of Correction.  *Id.*  In context, what was meant was that "hail call" has no meaning, just as a misspelled word has no meaning.  Once the obvious typo is corrected, the term has meaning.

8

description requirement is a question of fact. *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1332 (Fed. Cir. 2008).

## "Reading"

The Defendants contend that claim 11 of the `861 Patent and claim 1 of the `465 Patent are invalid because they fail to properly describe the term "reading." (D.I. 441 at 7). The Defendants argue that, "The only description in the Inventio patents relating to 'reading' the destination signal is 'for example, the destination signal is transmitted to the device 36, 36' in accordance with at least one communication protocol of the data bus 37 and is read by the device 36, 36'." *Id.* (quoting Patent `861 col. 7: 53-56) (brackets omitted). Conversely, the Plaintiff contends that the specification makes clear that the "'modernizing device . . . reads the destination signal' simply means that the modernizing device receives (i.e., 'gets') the destination signal." (D.I. 466 at 4 (brackets omitted)). The Court agrees. It is evident from the four corners of the patent that the written description provides sufficient description of the term "reading" to be understandable to one skilled in the art and to demonstrate that the patentee had in fact invented the claim in question.[5]

## "Destination Signal"

The Defendants argue that the written description does not sufficiently describe the term "destination signal" and is therefore invalid. (D.I. 395 at 19). Specifically, the Defendants argue that, as per the Court's claim construction of the term "destination signal,"[6] the written

---

[5] While the parties discuss several expert reports, they are irrelevant to the decision, as it is apparent from the four corners of the patent that the term "read" was meant by the patentee to mean receive or get, which would be obvious to a POSA. However, even if the Court were to consider the expert reports, both parties' expert reports provide further confirmation that there is no genuine dispute of fact. (D.I. 414 at 18).

[6] The Court adopted the "Plaintiff's proposed construction that 'destination signal' means 'a data signal providing passenger conveying information that identifies the boarding floor and/or the destination floor.'" (D.I. 135 at 72).

9

description does not describe "the full scope of the 'destination signal,'" which would require a description of "(1) the boarding floor, or (2) the destination floor, or (3) the boarding floor and the destination floor." (D.I. 395 at 19). Conversely, the Plaintiff responds that "the claims do not require a single destination signal that has both pieces of information," but instead only that "the computing unit outputs at least one destination signal." (D.I. 414 at 19 (internal quotation marks, emphasis, and brackets omitted)).

The written description is adequate to show that the patentee had possession of the "destination signal" at the time of patenting. Specifically, the patentee properly described both a destination signal that contained a boarding floor and a destination signal that included a destination floor. (D.I. 395 at 19). While the patentee did not describe a destination signal that contained both a boarding floor and destination floor at the same time, this is not needed as a matter of law when each of the components is concededly described. Here, the claim itself is satisfied by the disjunctive "or" and thus the patentee sufficiently described the claim term "destination signal."

## Timing Relationship

The Defendants argue that both the `465 and the `861 Patents are invalid as they do not disclose the "timing relationship between the first and second destination signals in the modernizing device." (D.I. 395 at 22) The Defendants cite to Plaintiff's technical expert, Dr. Koopman, as evidence that the specification must describe the "timing relationships." *Id.* at 17 ("Inventio, through its technical expert, Dr. Koopman, . . . has taken the position that 'convert,' as used in the Inventio patent claims, means that the modernizing device must be able to 'convert' the destination signal in such a way that the call reports . . . are coordinated and occur in a certain carefully orchestrated time sequence."). However, as the Plaintiff properly points

10

out (D.I. 414 at 19-20), the patent claims do not refer to any such timing requirement and thus, as

a matter of law, there is no violation of the written description requirement.

*C. Best Mode*

A patentee must set forth the best mode of his/her invention.[7]  *Eli Lilly & Co. v. Barr*

*Labs., Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001). "The best mode requirement creates a statutory

bargained-for-exchange by which a patentee obtains the right to exclude others from practicing

the claimed invention for a certain time period, and the public receives knowledge of the

preferred embodiments for practicing the claimed invention." *Id.* In order to determine

whether the best mode requirement is met the Federal Circuit has laid out a two-prong inquiry.

> First, the factfinder must determine whether, at the time of filing the application,
> the inventor possessed a best mode for practicing the invention. Second, if the
> inventor possessed a best mode, the factfinder must determine whether the written
> description disclosed the best mode such that one reasonably skilled in the art could
> practice it. The first prong involves a subjective inquiry, focusing on the inventor's
> state of mind at the time of filing. The second prong involves an objective inquiry,
> focusing on the scope of the claimed invention and the level of skill in the art.

*Id.* (internal citations omitted). "Whether a [patentee] has complied with the best mode

requirement . . . is a question of fact . . . ." *Bayer AG v. Schein Pharm., Inc.*, 301 F.3d 1306,

1312 (Fed. Cir. 2002).

First, the Plaintiff argues that there is "absolutely no evidence that the inventor, Dr.

Friedli, had a subjective preference for one mode of implementing the modernizing device over

all others." (D.I. 414 at 20). The Plaintiff supports this claim with citations to the inventor's

testimony. *Id.* at 20-21. Second, the Plaintiff argues that Dr. Friedli selected the components

---

[7] The "best mode" requirement was eliminated as a basis for challenging validity as of September 16, 2011. 35
U.S.C. §282(b)(3)(A). There is no suggestion that inventors can retroactively claim the benefit of this change in the
law.

that he used to make the prototype, because he "already had these components," along with the relevant quality records regarding their use, and "they were the cheapest components available to perform the required functions . . . ."  (D.I. 414 at 22) (internal quotation marks omitted).  The Defendants counter by arguing that the patentee did have a subjectively preferred best mode, as indicated by his creation of a prototype.  (D.I. 441 at 12-14).  The patentee's testimony could be read as suggesting he had a best mode, and is therefore sufficient to create a genuine issue of material fact.

### D. Subject Matter Jurisdiction

The Plaintiff argues that the Court does not have subject matter jurisdiction over whether there is a best mode violation regarding the term "advance selector" as found in claims 9 and 13 of the '465 Patent and claims 6 and 9 of the '861 Patent.  (D.I. 414 at 23).  The Defendants conceded at oral argument that the Court does not have subject matter jurisdiction over these claims as they are not at issue in this case.  (Tr. 72-74).  The Court agrees.  Claims 6 and 9 of the '861 Patent and claims 9 and 13 of the '465 Patent have not been asserted in this case and therefore the Court lacks subject matter jurisdiction over them.

### CONCLUSION

For the reasons above, the Court will **DENY** Defendants' Motion for Summary Judgment of Invalidity and **GRANT IN PART AND DENY IN PART** Plaintiff's Motion for Summary Judgment of No Invalidity for Indefiniteness, Written Description, and Best Mode.  Plaintiff will be granted summary judgment on indefiniteness and written description, and denied summary judgment on best mode.  Best mode arguments relating to "advance selector" are not properly before the Court, and will not be further considered.  A separate order will be entered.

12