IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTIO AG,<br><br>        Plaintiff,<br>v.<br><br>THYSSENKRUPP ELEVATOR AMERICAS CORPORATION, THYSSENKRUPP ELEVATOR CORPORATION, and THYSSENKRUPP ELEVATOR MANUFACTURING INCORPORATED<br><br>        Defendants. | Civil Action No. 08-874-RGA |

MEMORANDUM OPINION

Michael Flynn, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Pierre R. Yanney, Esq., Stroock & Stroock & Lavan LLP, New York, NY, Attorneys for the Plaintiff.

James M. Lennon, Esq., Young Conaway Stargatt & Taylor, Wilmington, DE; David E. Schmit, Esq., Frost Brown Todd LLC, Cincinnati, OH, Attorneys for the Defendants.

January 14, 2014

*/s/ Richard G. Andrews*

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before this Court is the issue of claim construction of various disputed terms found in U.S. Patents Nos. 6,935,465 and 6,892,861.

## I. BACKGROUND

The Court *sua sponte* ordered the parties on November 18, 2013 to reargue various claim terms as a result of the Court becoming more familiar with the technology at issue in this case. The Court previously construed the claim terms on June 14, 2010. (D.I. 135). Much of the arguments presented to the Court simply rehash the previous arguments, and therefore will not be redundantly addressed in this opinion.

On November 21, 2008, Inventio AG ("Plaintiff") filed this patent infringement action. (D.I. 1). The Defendants are ThyssenKrupp Elevator Corporation, ThyssenKrupp Elevator Americas Corporation, and ThyssenKrupp Elevator Manufacturing Incorporated ("Defendants"). The Patent-in-suits are U.S. Patents Nos. 6,935,465 and 6,892,861 ("the '465 Patent" and "the '861 Patent" respectively).

The Court has considered the Parties' letters. (D.I. 500 and 501).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415

1

F.3d at 1324). When construing patent claims, a matter of law, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotations and citations omitted).

Furthermore, "the words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," in order to assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Id.* at 1317-19 (internal quotation marks and citations omitted). However, extrinsic evidence is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

2

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

Finally, the Court is allowed to construe claims "during various phases of litigation" and not solely following a *Markman* Hearing. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). The Federal Circuit has held that a district court "may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Id.* (internal quotation marks omitted).

### III. CONSTRUCTION OF DISPUTED TERMS

A. *"elevator control"*

1. *Plaintiff's proposed construction*: "an existing device that controls the operation of an elevator before modernization, and is reused (with or without modifications) during modernization"

2. *Defendants' proposed construction*: "an unmodified device that controls the operation of the elevator and was already in place prior to the modernization process"

3. *Court's Construction*: "an existing device that controls the operation of an elevator before modernization, and is reused (with or without modifications) during modernization"

The Defendants argue that the "elevator control" should be construed consistently with the patent specification, prosecution history, and the Plaintiff's admissions, which all indicate

3

that the phrase means the "'existing' elevator control that was in place prior to modernization." (D.I. 501 at 7). The Defendants contend that by focusing on the word "existing" during the prosecution of the patent, "it has by implication surrendered protection for installations that do not re-use the existing elevator controls." *Id.* at 8.

The Plaintiff argues that "[n]othing in the specification or the claims requires that the 'elevator control' be 'unmodified.' Rather, the specification and the claims simply state that the 'elevator control' is the existing elevator control in place prior to modernization, as opposed to the new elevator control that will be installed in the modernization." (D.I. 500-1 at 1 (emphasis omitted)). The Plaintiff further contends that the specification uniformly refers to the elevator control as the existing elevator control, not an unmodified elevator control. *Id.* at 2

The Court is persuaded by Plaintiff's arguments. Not only do the Patents' claims not require that the elevator control be unmodified, but also the Patents' specifications do not require an unmodified elevator control. Furthermore, the Court is not convinced that Inventio has made any disclaimer that the term "existing" means "unmodified." Finally, it is apparent to the Court that the extent to which an elevator control may be modified, so as to remain the "existing" elevator control unit, is a question of fact for the jury.

B. *"at least one of [A] and [B]"*

    1. *Plaintiff's construction*: "[A] or [B]"

    2. *Defendants' construction*: "having the capability of performing both [A] and [B]"

    3. *Court's construction*: "[A], [B], or [A] and [B]"[1]

---

[1] The Court's construction should be applied equally to the following disputed phrases:

4

The Defendants argue that the phrase requires the presence of both "a and b" as per the Federal Circuit's holding in *Superguide Corp. v. DirecTV Entm't, Inc.*, 358 F.3d 870 (Fed. Cir. 2004). The Defendants argue that the Federal Circuit "found that the ordinary meaning of the phrase 'at least one of [A], [B], [C], and [D]' 'connotes a conjunctive list' because '[t]he phrase 'at least one of' precedes a series of categories of criteria, and the patentee used the term 'and' to separate the categories of criteria.'" (D.I. 501 at 18 (brackets in original)). The Defendants further argue that this construction is not inconsistent the Patents' specification. *Id.* at 20. Finally, the Defendants argue that the "clearest proof of the conjunctive interpretation" derives from the prosecution history, in which the Plaintiff "specifically amended the claim to eliminate the alternative language . . . and replaced that alternative language with the conjunctive requirement. . . ." *Id.* at 26.

The Plaintiff argues that "the specification expressly states that the floor terminals have 'at least [A] . . . or at least [B]," which "plainly and unambiguously shows that Inventio understood . . . that there is no requirement that [the invention] have both." (D.I. 500-1 at 5 (emphasis omitted)). The Plaintiff supports this argument by pointing out that every embodiment in the specification is phrased disjunctively. *Id.* Furthermore, the Plaintiff contends that the prosecution history supports its proposed construction. The Plaintiff argues that the

---

"floor terminal . . . operative for at least one of input of destination call reports and recognition of identification codes of passengers"

"floor terminal . . . for at least one of the input destination call reports and for recognition of identification codes of users."

"computing unit . . . for at least one of evaluating the destination call reports and association of destination floors with recognized ones of the identification codes"

5

amendment did not surrender any claim scope but instead was only a "formalistic amendment, made to overcome the Examiner's formalistic objection to the 'alternative' word 'or.'" *Id.* at 12. The Court agrees.

Here, every embodiment of the claim in the specification uses only one of [A] or [B], not both [A] and [B]. Furthermore, it is evident from the prosecution history that the claim language was changed to overcome a formalistic objection made by the examiner. (D.I. 422-2 at 31). Counsel for the Defendants discussed at the recent summary judgment hearing that it had been the previous practice of the Patent and Trademark Office to reject some claims that included the word "or." (D.I. 492 at 41). The Court asked Defense Counsel, "Everybody seems to be agreed that back in the mid 2000[s], or whenever exactly . . . these patents were being considered, patent examiners, for no apparent reason, did not like the word [']or,['] right?" *Id.* To which the Defendants' attorney stated, "Some didn't, that's correct."[2] *Id.* Furthermore, it is evident to the Court that the plain meaning of the disputed phrase means the presence of [A], [B], or [A] and [B].

The Court disagrees with the Defendants' interpretation of *SuperGuide*. In *SuperGuide*, every disclosed embodiment of the invention contained each element of the "at least one of" clause. *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 887 (Fed. Cir. 2004).

---

[2] It is noteworthy that a recent Patent Trial and Appeal Board ("PTAB") decision in *Ex Parte John Nicholas Gross* further supports this contention. 2013 WL 6907805 (Patent Tr. & App. Bd., Dec. 31, 2013). In *Gross*, the PTAB determined that the phrase "and/or" means "having element A alone, element B alone, or elements A and B taken together." *Id.* The PTAB further stated in a footnote, "Should there be further prosecution, we note that the preferred verbiage to claim 'at least' clauses of elements A and B would be 'at least one of A and B' and not 'at least one of A and/or B.' *Id.* This indicates that the phrase, "at least one of A and B" also means, "having element A alone, element B alone, or elements A and B taken together." *Id.* While a PTAB decision is not binding, the PTAB's decision helps the Court understand the context in which the examiner's objections and the patentee's responses were made.

6

Additionally, the Federal Circuit found that a figure in the specification explicitly indicated that each element of the "at least one of" clause must be present in the invention. *Id.* This is vastly dissimilar from the facts of this case, as discussed above.

C. *"interrupting at least one existing car call transmitter line between at least one car call transmitter and the elevator control"*

    1. *Plaintiff's construction*: "causing the elevator control to operate based on input from the modernizing device instead of based on input from the car call transmitter"

    2. *Defendants' construction*: "the act of physically detaching at least one wire connecting the car call transmitters to the elevator control during the installation of the modernizing device"

    3. *Court's construction*: "causing the elevator control to operate based on input from the modernizing device instead of based on input from the car call transmitter"

The Defendants argue that phrase should be construed consistent with the car call transmitter line being physically disconnected as the "interrupting step[ is] part of the procedure for mechanically installing and connecting up the new modernizing device equipment." (D.I. 501 at 44 (internal quotation marks omitted)). The Defendants direct the Court's attention to the specification, which describes the interrupting procedure "as part of the preparatory acts of removing and adding equipment during modernization of the elevator installation." *Id.* at 45.

The Plaintiff argues that "nowhere does the specification indicate that the existing car call buttons must be physically disconnected from the elevator control. Rather, the entire focus of the specification is on changing the operative input from which the elevator control takes its instructions." (D.I. 500-1 at 15 (internal emphasis removed)). The Court agrees. The patent

7

claims and specification do not discuss a specific method for interrupting the car call transmitter line and it would be inappropriate to construe the phrase to incorporate a method that would impose a limitation on the claim not found in the claim language itself. Therefore it remains a question of fact as to whether the method utilized by the Defendants interrupts the signal.

    D. *"interrupting at least one existing electrical floor call transmitter line between at least one floor call transmitter and the elevator control"*

        1. *Plaintiff's construction*: "causing the elevator control to stop operating based on an input from at least one floor call transmitter"

        2. *Defendants' construction*: "the act of physically detaching at least one wire connecting the car call transmitters to the elevator control during the installation of the modernizing device"

        3. *Court's construction*: "causing the elevator control to operate based on input from the modernizing device instead of based on input from the car call transmitter"

    The issue here is the same issue that the Court discussed in Section C above,[3] and therefore the Court adopts its prior findings here.

    E. *"the elevator control being disconnected from the hall call transmitters and the car call transmitters of the elevator installation."*

        1. *Plaintiff's construction*: "the elevator control ceases operating based on input from the car call transmitters of the elevator installation"

---

[3] The Defendants discuss the contested terms at issue in section C, D, and E together. (D.I. 501 at 42-50).

  2. *Defendants' construction*: "during modernization, there are no longer any wires connecting the floor call transmitters and car call transmitters to the existing elevator control"

  3. *Court's construction*: "the elevator control ceases operating based on input from the car call transmitters of the elevator installation"

  The issue here is the same issue that the Court discussed in Section C above, and therefore the Court adopts its prior findings here.

F. *"modernized"* and *"modernizing"*

  1. *Plaintiff's construction*: "exchanging components of an elevator installation for newer components"

  2. *Defendants' construction*: "a more or less complete exchange of components in an elevator installation"

  3. *Court's construction*: "a more or less complete exchange of components in an elevator installation"

  The Defendants argue that the Plaintiff expressly defined the terms as "a more or less complete exchange of components in an elevator installation. . . ." (D.I. 501 at 51). The Defendants cite as evidence the Inventio Patents, which state:

> If after such a length of time a general overhaul of the elevator installation is needed, the components of the elevator installation are often old in terms of technology, which obliges a more or less complete exchange of components. Such an exchange of components of an elevator installation is termed a "modernization" in the following.

'861 Patent, col 1: 10-16.

  The Plaintiff contends that Inventio intended the term "to have its standard meaning in the industry – i.e., any exchange of old components for new components." (D.I. 500-1 at 18

9

(emphasis omitted)). Inventio states, "It is black letter law that a claim term must be given its standard, ordinary meaning in the relevant field of art, unless it is unequivocally clear from the specification that the patentee intended a different meaning." *Id.* at 19 (emphasis omitted). Inventio then cites as evidence multiple extrinsic sources, including the ASME A17.1 standard, the Vertical Transportation Handbook, and various other patents. *Id.*

The Court is unpersuaded by the Plaintiff's arguments. The inventor of the Patents at issue specifically defined the term "modernize" in the second paragraph of the patent as being a "more or less complete exchange of components." `861 Patent, col 1: 10-16. As the patentee may act as its own lexicographer, and did so here, the Court will adopt the patentee's own claim definition as found in the patents.

G. *"elevator installation"*

This term was brought to the Court's attention by the Defendants; however, it appears that the parties did not confer and agree to present this term to the Court for resolution. Therefore the Court provides no further opinion regarding the construction of this term.

IV. **CONCLUSION**

Within three days the parties should submit a proposed agreed form of order consistent with the Court's original *Markman* Opinion (D.I. 135), as modified by this opinion, suitable for submission to the jury. The parties should make any necessary supplementation of their expert reports by the close of business on January 22, 2014. The parties then have until the close of business on January 25, 2014 to reply to any amended expert report. The parties are also to file simultaneous letters to the court on January 22, 2014 indicating how the pending Motion for Summary Judgment of Non-Infringement (D.I. 396) is affected, if at all, by this opinion.