IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**INVENTIO AG,**

                    Plaintiff,

          v.                                              Civil Action No. 08-00874-RGA

**THYSSENKRUPP ELEVATOR
CORPORATION,**

                    Defendant.

MEMORANDUM OPINION

Michael J. Flynn, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Pierre R. Yanney, Esq. (argued), Stroock & Stroock & Lavan LLP, New York, NY; Stephen E. Underwood, Esq., Stroock & Stroock & Lavan LLP, New York, NY, Attorneys for the Plaintiff.

James M. Lennon, Esq., Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE; David E. Schmit, Esq. (argued), Frost Brown & Todd LLC, Cincinnati, Ohio, Attorneys for the Defendant.

February $\underline{3}$ , 2014

ANDREWS, UNITED STATES DISTRICT JUDGE:

The Defendant[1] filed a Motion for Summary Judgment of Non-Infringement of the `465 and the `861 Patents.[2] (D.I. 396). The motion is fully briefed. (D.I. 397, 398, 399, 400, 401, 402, 422, 445, 446, 533, 534). The Court heard oral argument on November 15, 2013. (D.I. 492). For the reasons set forth herein, the Defendant's motion is **DENIED in part and DISMISSED AS MOOT in part**.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by demonstrating that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 325.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to

---

[1] The only remaining defendant is ThyssenKrupp Elevator Corporation.

[2] The patents-in-suit are U.S. Patent Nos. 6,892,861 and 6,935,465 ("the `861 patent" and "the `465 patent" respectively).

particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED.R.CIV.P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## Background

During oral argument the Court ordered the parties to reargue various claim terms. The Court subsequently re-construed several terms and ordered the parties to submit letters to the Court concerning how the Court's revised claim constructions altered the original arguments made by the parties concerning this Motion for Summary Judgment. (D.I. 525).

## Mooted Arguments

The Defendant originally made the following two arguments:

None of the asserted claims of the '465 and the '861 patents is infringed because the accused installations did not contain an unmodified "elevator control" as that term has been construed by the Court.

Claim 1 of the '861 patent is not infringed because the elevator control was not "disconnected" from the car call transmitters in the accused installations.

3

(D.I. 397 at 5).  The parties agree that these two arguments are now moot and the Court agrees.

(D.I. 533 at 3, 10; D.I. 534 at 1, 4).

### At least one of [A] and [B]

The Defendant originally argued:

Claim 1 of the `465 patent and claim 11 of the `861 patent are not infringed
because the accused installations did not contain "identification codes,"
"recognition" or "identification codes," or "association" of "identification codes,"
as those terms have been construed by the Court.

(D.I. 397 at 5).

The Court had originally construed "at least one of [A] and [B]" to require the ability to

perform both [A] and [B]; however, the Court re-construed the terms to mean "[A], [B] or [A]

and [B]."  (D.I. 525 at 4).  This revised construction applies to the claimed "floor terminal"[3] and

the claimed "computing unit."[4]  (D.I. 397 at 7-16).  As the Defendant (understandably, given the

then extant claim construction) did not address whether the accused device and method contains

[A] alone, Defendant's Motion for Summary Judgment concerning the aforementioned issues

must be denied.

### Installation Order

The Defendant argues that Claim 1[5] of the `465 method patent recites a specific order in

which the elevator modernization must be completed in order to infringe the `465 patent.  The

Plaintiff disagrees.

---

[3] In reference to the "floor terminal," [A] is the "input of destination call reports" and [B] is "recognition of
identification codes."
[4] In reference to the "computing unit," [A] is the evaluation destination call reports and [B] is the association of
destination floors with recognized ones of the identification code.
[5] Claim 1 of the `465 patent reads:

    1. A method of modernizing an elevator installation having at least one elevator controlled by at
    least one elevator control by way of at least one call report, comprising:

4

**Legal Standard**

"Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one. However, such a result can ensue when the method steps implicitly require that they be performed in the order written." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001) (internal citations omitted). The Federal Circuit has indicated that there is a two-part test to be followed in determining whether the steps of a method claim that do not recite an order, "must nonetheless be performed in the order in which they are written." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003). First, the Court "look[s] to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written. . . ." *Id.* at 1369. Second, the Court "looks to the rest of the specification to determine whether it directly or implicitly requires such a narrow construction. . . ." *Id.* at 1370 (internal quotation marks omitted). If the claim does not require a narrow construction, then "the sequence in which such steps are written is not a requirement." *Id.*

---

> a. installing at least one floor terminal at each floor served by an elevator controlled by an elevator control for at least one of the input of destination call reports and for recognition of identification codes of users;
>
> b. installing at least one computing unit and connecting the at least one computing unit to said floor terminals for at least one of evaluating the destination call reports and association of destination floors with recognized once of the identification codes and for the output of at least one destination signal; and
>
> c. installing at least one modernizing device and connecting the at least one modernizing device to said floor terminals and said at least one computing unit for reading the destination signal, for converting the destination signal into at least one call report and for controlling the elevator control by way of the call report.

`465 Patent, col 11: 6-25.

**Discussion**

The Defendant argues that because Claim 1 of the `465 method patent connects subsequent steps with the phrase "to said [previous object]," the Claim "provides an order of installation: first the floor terminal, then the computing unit, then the modernizing device." (D.I. 397 at 17). Furthermore, the Defendant contends that it is a "matter of logic, the computing unit couldn't be connected to the floor terminals unless the floor terminals were already there; and the modernizing device couldn't be connected to the floor terminals and the computing unit unless both these parts were already there." *Id* (internal quotation marks omitted).

The Plaintiff argues that neither logic nor grammar dictates that the steps in Claim 1 require a specific order. The Plaintiff contends that, "Logically, it does not matter what order the floor terminals, computing unit and modernizing devices are installed in, because until all three have been installed, and all three have been connected together, the patented overlay system cannot function at all." (D.I. 422 at 21(internal quotation marks and emphasis omitted)). This is because "until all three components have been connected together, the interface system cannot operate, because all three components must be up and running together . . . ." *Id*. (internal quotation marks and emphasis omitted). The Plaintiff further argues that the Claim's grammatical structure does not require any specific order. *Id*. Specifically the Plaintiff argues that the Claim language makes no reference to a particular time in which the steps must be conducted. *Id*. at 22. Finally, the Plaintiff argues that the specification "makes it clear that no particular order of installation is required." *Id*.

The Court finds that the Claim 1 of the `465 patent does not require that the three steps occur in a specific order. As an initial matter, the Court recognizes that the Claim does not

6

provide an explicit requirement that the steps in Claim 1 occur in a specific order. The Court

must therefore turn to the two-part test as laid out in *Interactive Gift*. Looking first to part one

of the test, the Court finds that neither as a matter of logic or grammar does Claim 1 implicitly

require a specific order. While the steps are interconnected through self-referential language,

"said," this is used by the inventor not to delineate an order but as a method of identification.

Furthermore, unlike in *Mantech Environmental Corp. v. Hudson Environmental Services, Inc.*,

152 F.3d 1368, 1376 (Fed. Cir. 1998), where the Federal Circuit found that there was an

implicit order of the claim terms,[6] here there is no implicit logical order. Specifically, unlike in

*Mantech* where the Federal Circuit found that it was logically necessary to drill the well before

injecting the well with chemicals, *Id.*, here it is not necessary that the parts referenced in Claim

1 of the `465 patent be installed in a particular order.

Turning to part two of the test, the Federal Circuit directs the district court to look to the

specification to determine if a narrowing construction is necessary. Here the specification

states, "The preparatory operations for modernization of the elevator installation consist in

---

[6] Claim 1 of the patent at issue in the Federal Circuit case read:

    1. A method for remediating a hydrocarbon-contaminated region of a subterranean body of groundwater to destroy or reduce the initial concentration levels of hydrocarbon contaminants, comprising the steps of:

        (a) providing a plurality of mutually spaced wells intersecting said groundwater region;

        (b) providing a treating flow of acetic acid from one or more of said wells into said groundwater region, to establish acidic conditions therein;

        (c) introducing a turbulent flow of an aqueous solution of ferrous ion into said groundwater region, for mixing with said acidified groundwater, thereby providing a catalyst for disassociation of hydrogen peroxide; and

        (d) providing a treating flow of hydrogen peroxide solution from one or more of said wells into said groundwater region, said hydrogen peroxide undergoing a Fenton-like reaction in the presence of said acidic conditions and said ferrous ion to generate hydroxyl free radicals for oxidizing said contaminants.

*Mantech Envtl. Corp.*, 152 F.3d at 1376.

7

mounting at least one floor terminal and installing at least one computing unit as well as at least one device." `465 patent, col. 10: 11-14. The Defendant argues that, because this sentence lists the necessary elevator installation components in the same order as Claim 1, it supports a narrow reading of the Claim. (D.I. 445 at 10). The Court disagrees. Simply listing the parts necessary for the installation does not narrow a claim. Therefore, the Court finds that Claim 1 of the `465 Patent does not require a specific order of installation. Thus, as the installation need not occur in a specific order, the Defendant's Motion for Summary Judgment regarding this issue is denied.

## Connection of the Modernizing Device

The Defendant argues that "Claim 1 of the `465 patent is not infringed because the asserted modernizing device was not connected to the asserted floor terminals in the accused installations." (D.I. 397 at 5 (internal quotation marks omitted)). The Defendant argues that because the floor terminal and the modernization device are not *directly* connected, they are not connected. (D.I. 397 at 18). Conversely, the Plaintiff argues that because the Claim can be satisfied by an *indirect* connection, summary judgment is not appropriate. (D.I. 422 at 22, 23). The Court has not been asked to construe the term "connected" as part of Claim 1 of the `465 method patent and does not choose to do so now. It is a question of fact for the jury as to whether or not the two components are connected in a way sufficient to meet the claim term. Summary judgment as related to this issue is denied.

## Doctrine of Equivalents

The Defendant argues that the Plaintiff should be precluded from putting forth any Doctrine of Equivalents ("DOE") argument as the Plaintiff did not assert its DOE theory in a timely manner. (D.I. 397 at 12-13). The Plaintiff contends that its complaint made "[a] simple

8

claim of patent infringement[,]" which was "sufficient to put [the Defendant] on notice that it may rely upon the doctrine of equivalents." (D.I. 422 at 18 (original brackets and quotation marks omitted)). The Defendant notes that its contention interrogatories regarding both literal and DOE infringement contentions were answered solely with allegations of literal infringement, on March 15, 2013 (D.I. 402-1 at 1-14), and on February 27, 2009 (D.I. 402-1 at 48-60). Inventio's opening expert infringement report also was based solely on literal infringement. (D.I. 402-1 at 135-179). The first mention of DOE theories was in the reply expert infringement report on May 24, 2013. (D.I. 402-1 at 65-120). Therefore, the Court finds that the Plaintiff did not timely disclose its DOE theory. The Plaintiff offers no explanation for ignoring its obligations. While the Plaintiff argues DOE is not a separate cause of action, but instead an alternative means of proving infringement, that, however, is irrelevant because the Defendant does not argue that DOE had to be in the complaint.

Nevertheless, as there is no evidence that the late disclosure materially prejudices the Defendant, the Defendant's request to preclude the DOE theory is denied.[7] While the Defendant argues that it will be forced to defend against a DOE theory without being able to pursue its underlying factual basis, the Defendant fails to point the Court to any additional piece of evidence that it may have sought if it had known about the DOE theory earlier. (D.I. 397 at 13). In fact, not only has the Defendant not sought leave for any additional discovery into this "new" theory, but it has responded to the Plaintiff's DOE theory in its supplemental expert report and deposed the Plaintiff's expert on the DOE theory. (D.I. 422 at 19).

---

[7] After the trial is over, if Defendant wants to seek sanctions, and the question of a dollar amount cannot be resolved by agreement, Defendant may file an appropriate motion.

9

The Defendant cites *Walker Digital LLC v. Google Inc.*, 2013 WL 2949109 (D. Del. June 14, 2013), and *Hochstein v. Microsoft Corp.*, 2009 WL 2498481 (E.D. Mich 2009), for the premise that the "Plaintiff cannot create a new infringement theory in its expert report after the discovery deadline has passed. . . ." (D.I. 397 at 13 (quoting *Hochstein*, 2009 WL 2498481 at *3). However, unlike both of the aforementioned cases, where the new infringement theory also accused new devices and thus there was additional discovery that would have needed to be conducted by the defendants, here the Plaintiff's infringement theory does not accuse any new devices and only provides an alternate theory of infringement that does not appear to require any additional discovery.

Therefore, as the Defendant has failed to show that it would be materially prejudiced by the introduction of the DOE theory, the Court denies the Defendant's request to preclude Plaintiff's DOE theory.

## Conclusion

For the reasons above, the Court will **DENY in part and DISMISS AS MOOT in part** Defendants' Motion for Summary Judgment of Non-Infringement. A separate order will be entered.