IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTIO AG,<br><br>        Plaintiff,<br>v.<br><br>THYSSENKRUPP ELEVATOR<br>CORPORATION,<br><br>        Defendant. | Civil Action No. 08-874-RGA |

## MEMORANDUM ORDER

The Court now takes up the Defendant's Motion for Expedited Clarification of the Court's Memorandum Opinion and Memorandum Order (D.I. 509), the Defendant's Motion to Exclude the Testimony of Plaintiff's Damage Expert Thomas Britven (D.I. 435), the Defendant's Motion to Strike the Supplemental Expert Report by Thomas Britven (D.I. 518), and the Plaintiff's Motion to Preclude the Proposed Expert Testimony of the Defendant's Damages Expert Daniel McGavock (D.I. 415). The motions are fully briefed. (D.I. 416, 419, 439, 465, 436, 469, 480, 509, 516, 517, 519, 531, 541). The Motions are **DENIED in part, GRANTED in part, and DISMISSED AS MOOT in part** for the reasons stated below.

### DEFENDANT'S MOTION FOR CLARIFICATION (D.I. 509)

The Defendant moves the Court to clarify its Memorandum Opinion concerning "advance selector" (D.I. 503) and its Memorandum Order concerning damages (D.I. 505).

**Advance Selector (D.I. 503)**

The Court found that it did not have subject matter jurisdiction regarding the term "advance selector" in connection to Claims 9 and 13 of the '465 Patent and Claims 6 and 9 of the

'861 Patent. (D.I. 503 at 12). The Defendant seeks clarification of "whether the Court's holding is simply that the four unasserted claims are not in the case, or whether ThyssenKrupp cannot assert a best mode violation relating to the 'advance selector' for the claims that have been asserted." (D.I. 509 at 2). The Court's holding was simply that the Court did not have subject matter jurisdiction over unasserted claims. However, as the Defendant indicates that there is a disagreement between the parties regarding whether best mode can be raised regarding the presence of an "advance selector," for the asserted claims, the Court will address this issue.

The term "advance selector" appears nowhere in the asserted claims. Additionally, the Court has not construed any term in the asserted claims to require an advance selector. Despite the Defendant's claim that a modernizing device contains an advance selector, the Court has construed this claim to mean "an electrical circuit that interfaces between a computer and an elevator control." (D.I. 297 at 4). "Subject matter outside the scope of the claims also falls outside the scope of the best mode requirement." *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1246 (Fed. Cir. 2007). The asserted claims do not require an advance selector. There can therefore be no best mode violation based on the presence or absence of an advance selector.

**Damages (D.I. 505)**

The Defendant seeks clarification regarding the Court's damages memorandum. (D.I. 509 at 3). The Defendant understood the Court's order "to mean that Plaintiff is limited in this case to damages in the range of $194,985 to $263,004, reflecting a reasonable royalty of $6,093 to $8,219 per elevator per overlay modernization project." *Id.* This is incorrect. The Court did not limit the Plaintiff to a specific amount of damages, but instead held that the royalty base may not include the services contract revenues.

2

# DEFENDANT'S MOTIONS TO EXCLUDE PLAINTIFF'S DAMAGES EXPERT (D.I. 435 & D.I. 518)

The Defendant has brought two motions regarding the Plaintiff's Damages expert, Mr. Britven. The Court will address these in turn.

Rule 702 permits a qualified witness to testify as an expert provided that the expert's knowledge will be helpful to the trier of fact, the testimony is "based on sufficient facts or data," and the testimony is the result of reliable principles and methods that were reliably applied by the expert. FED. R. EVID. 702.

**Defendant's Motion to Exclude the Testimony of Plaintiff's Damages Expert (D.I. 435)**

The Defendant raises many of the same issues in its Motion to Exclude the Testimony of Mr. Britven as it raised in its Motion to Strike Relating to Damages. (D.I. 431). Those issues that have already been addressed by the Court are now moot.[1] The Defendant raises three other issues and they will be addressed in turn.

<u>Evidence from other installations</u>

The Defendant argues that "Mr. Britven's method of calculating a reasonable royalty based on other jobs, *i.e.*, evidence that has already been excluded by the Court, is unreliable and

---

[1] The Defendant raised the following arguments in both this Daubert Motion and its motion to strike damages.

> Mr. Britven's method of calculating a reasonable royalty based on revenues from ThyssenKrupp's service contracts for the accused installations is unreliable and inadmissible.
>
> Mr. Britven's method of calculating a reasonable royalty based on the economic impact to other Schindler companies, not directly related to Inventio, is unreliable and inadmissible.
>
> Mr. Britven's reasonable royalty damages opinions are irreconcilably inconsistent with Inventio's sworn interrogatory answers setting forth its damages position, and therefore their admission would be unfairly prejudicial under FED. R. EVID. 403.

(D.I. 436 at 4, 5; D.I. 505). As the Court already ruled on these issues they are now moot and will not be further discussed.

3

inadmissible." (D.I. 436 at 5). The Defendant argues that because the Court held that only the three accused jobs are subject to discovery requests, evidence concerning other jobs was excluded. D.I. 436 at 12. The Plaintiff argues that, "It is abundantly clear that Mr. Britven's final damages calculation is based solely on the 32 elevator units at the three Accused Projects . . . ." (D.I. 469 at 23). Mr. Britven's Expert Report indicates that he uses the 90 bids that the Defendant is referring to (87 bids that are not related to the elevator installations in suit) as an alternate method for calculating damages. (D.I. 437-4 at 22). Finally, Mr. Britven provides no opinion as to whether these additional installations infringe.

The Court's previous order did not exclude any evidence, but instead acted to limit further discovery into the unaccused elevator modernization projects. (D.I. 385 at 6, 7). Thus, it is appropriate for Mr. Britven to testify regarding these other bids in order to provide context regarding the accused projects and the related financial issues. The Defendant is free to object at trial if Mr. Britven testifies about issues in which he is not an expert.

Untimely Produced Documents

The Defendant argues that "Mr. Britven's Opinions are based on documents untimely produced after the close of fact discovery for which ThyssenKrupp did not have the opportunity to conduct discovery, any opinions based on these documents should be excluded under FED. R. CIV. P. 37 (c)(1)." (D.I. 436 at 5). The Defendant further argues that because the documents being relied upon appear to be from a third party, Schindler Elevators, the Defendant "has been deprived of the opportunity to question Schindler Elevator personnel about them." *Id.*, at 13. The Plaintiff argues that the only "arguably – late document on which Mr. Britven relied was a six-page financial summary of SEC's maintenance information," which "was produced as Attachment IV to Mr. Britven's April 12, 2013 Report . . . ." (D.I. 469 at 11). The Plaintiff

4

argues that this report was not required to be produced on an earlier date because it did not exist until Mr. Britven realized that it was necessary for the completion of his Supplemental Expert Report and requested that Schindler create it. *Id.*

A Daubert Motion is not the proper vehicle to raise a possible discovery violation. Therefore, the Defendant's motion regarding this issue is dismissed without prejudice.

Other Topics of Testimony

The Defendant additionally argues that Mr. Britven should not be permitted to discuss six other topics, which the Defendant claims are outside of Mr. Britven's expertise. (D.I. 436 at 13, 14). With the exception of one topic the Court disagrees.

The Defendant argues that the Plaintiff's expert should not be permitted to discuss the size and revenues of the overall ThyssenKrupp companies as it is a "clear attempt to unfairly portray the Defendants as huge companies." *Id.* While the Plaintiff argues that Mr. Britven uses this information to help render his conclusions, the Plaintiff fails to point the Court to any conclusion that actually uses this information. Therefore the Court finds that the overall revenues are irrelevant to the expert's conclusion and is therefore inadmissible for the purposes of this trial. Alternatively, and consistent with Federal Circuit decisions in various cases, the evidence would be excluded under Rule 403 as the prejudice to ThyssenKrupp substantially outweighs its probative value.

As for the other issues, the Court takes the Plaintiff at its word that "Mr. Britven has not been retained to provide expert opinions on these issues." (D.I. 469 at 13). The Defendants are free to object at trial if Mr. Britven is asked about things not related to his expert testimony. Therefore, with the exception of the overall revenue of ThyssenKrupp, the Defendant's motion on this topic is denied.

5

**Defendant's Motion to Strike the Supplemental Expert Report Of Mr. Britven (D.I. 518)**

The Defendant moves to strike the Supplemental Expert Report of Mr. Britven ("Supplemental Report") arguing that the Supplemental Report is prohibited by the Court's Scheduling Order, the Report is in violation of FED. R. CIV. 26(e), and that the Supplemental Report should be excluding under the Third Circuit's *Pennypack* factors. (D.I. 519 at 7, 8). The Plaintiff responds that the Supplemental Report contains only "concepts, methods, and data" that are present in either the Original or Reply Expert Reports, Mr. Britven's October 3, 2013 deposition testimony, and the memoranda of law submitted in connection with prior motions. (D.I. 531 at 5). Furthermore, the Plaintiff argues that, "All of the arguments that Defendants make in support of their motion to exclude the Supplemental Report flow from the same incorrect premise that the Supplemental report contains a new approach to the calculation of damages, and thus they fail." (D.I. 531 at 5, 6).

Upon review of the Supplemental Report (D.I. 516-1 at 1-9), the Court concludes that the Supplemental Report did not add any new material and instead is clarifying the role that maintenance contracts play in the royalty base calculations. Therefore, the Court denies the Defendant's motion to exclude it.

**Plaintiff's Motion to Preclude the Proposed Testimony of Mr. McGavock on Damages (D.I. 415)**

The Plaintiff moves the Court to exclude Mr. McGavock's testimony on two grounds. First, that "Mr. McGavock's proposed testimony . . . is based on a non-comparable umbrella license" and second that his testimony "is based on a single, non-comparable license agreement, and he does not explain why other, potentially-comparable agreements were not considered." (D.I. 416 at 4). The Defendant argues that "to the extent Mr. McGavock's damages opinions

6

considered the prior [umbrella] license agreement," it did so properly and that "Inventio's motion is largely moot, because Mr. McGavock's Supplemental Report, prepared in response to Mr. Britven's 9/17/2013 Report . . . analyzes Mr. [Britven's] calculation to provide a potential damages figure without consideration of the [umbrella] license." (D.I. 439 at 4).

Rule 702 permits a qualified witness to testify as an expert provided that the expert's knowledge will be helpful to the trier of fact, the testimony is "based on sufficient facts or data," and the testimony is the result of reliable principles and methods that were reliably applied by the expert. FED. R. EVID. 702.

The umbrella license that this motion revolves around is a license between Inventio and Schindler Elevator Corporation ("SEC"). SEC and Inventio are sister companies. The license covers all of Inventio's U.S. intellectual property, "including all patents, Know-how, Designs, Domain Names and Trademarks . . . ." (D.I. 416 at 7). Because of the license, "SEC pays [a] license fee to Inventio based on essentially all of SEC's sales and revenue in the U.S., not merely its sales of destination dispatch overlay." *Id.* at 8 (emphasis omitted). Furthermore, the license includes the patents-in-suit. (D.I. 439 at 6).

The relevant portions of Mr. McGavock's report states:

In the hypothetical negotiation, Inventio would have been constrained by its existing licenses of the patents-in-suit and its position as a non-practicing entity. Andreas Gaussmann, Inventio's patent counsel, testified that when it is setting royalty rates for patent licenses, Inventio considers the market, the position of the licensee, the value of the licensed object, the duration of the license, and future developments of the licensed object. At the time of the hypothetical negotiation, Inventio had already reduced the royalty rate on its agreement with Schindler in order to allow the Schindler companies to realize a "routine return." In addition, Schindler's Manager for Modernization Sales and Marketing, Kris Sundberg, testified that he prices systems based on considerations such as recent trends in the particular market and competitive influences. In recent years, the economy has greatly impacted margins on phased modernization jobs.

7

(D.I. 419-2 at 88 (footnotes omitted)). Furthermore, the Report states:

> Given these facts and circumstances, Inventio could not reasonably seek a royalty any higher than the rates in the Schindler agreement (i.e. 0.5% to 2.5%), applied to TKE's accused modernization contract revenue. Further, as a prudent licensor, Inventio would recognize that a significant downward adjustment to this royalty rate would be warranted to account for a vastly different bundle of rights conferred in the Inventio/Schindler agreement compared to the hypothetical negotiation.

(D.I. 419-2 at 90). Mr. McGavock's expert report indicates that while he use an "umbrella license" as part of his damages calculations, he took this into account during his analysis, thus satisfying the requirements of Rule 702.

The Plaintiff argues that this Court should follow its decision in *AVM Technologies, LLC v. Intel Corp.*, 2013 WL 126233 (D. Del. Jan. 4, 2013). That case presented the Court with key differing facts. In *AVM* the licenses at issue did not include the patent-in-suit. *AVM Technologies*, 2013 WL 126233, at *1. Here, the license in question includes the patents-in-suit. Additionally, this case is dissimilar from both *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990) and *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010). Unlike the aforementioned two cases, Mr. McGavock at least minimally connects the license in question to the patents-in-suit and rather than simply extract a royalty rate from the previous license, uses the license as only a single component of his entire analysis.[2]

Finally, the Court finds the Plaintiff's argument that Mr. McGavock does not discuss other potentially comparable licenses as unpersuasive. The only other license that Mr. McGavock appears to discuss is a license between Kone and Inventio. (D.I. 419-2 at 69). This license appears to have arisen from litigation and is a lump sum license agreement, unlike the

---

[2] To the extent that the Plaintiff raises the new argument in its Reply Brief that Mr. McGavock's Supplemental brief should be struck as being untimely, (D.I. 465 at 10), raising this issue in a Reply Brief is neither the time nor the place to raise such an issue. Therefore the Court expresses no opinion concerning that issue.

royalty based license agreement that Mr. McGavock is calculating. (D.I. 419-3 at 1). Furthermore, this license agreement is mentioned by Mr. McGavock in his analysis. (D.I. 419-2 at 69). The Plaintiff is free to cross the expert regarding this license agreement if the Plaintiff so wishes.

Therefore, the Court agrees with the Defendant and finds Mr. McGavock's use of the license is appropriate under Rule 702.

Entered this 6th day of February, 2014.

Richard G. Andrews
United States District Judge